JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
RACHEL RAGNI LARRENAGA (241061)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: rragni@murraylaw.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Cases Jointly Administered |
| **COMMUNITY TOWERS I, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 75-2456729, | Case No. 11-58944-SLJ-11 |
| **COMMUNITY TOWERS II, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 75-2560662, | Case No. 11-58945-SLJ-11 |
| **COMMUNITY TOWERS III, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 32-0065635, | Case No. 11-58948-SLJ-11 |
| **COMMUNITY TOWERS IV, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 77-0379075, | Case No. 11-58949-SLJ-11 |
| | **Disclosure Statement Hearing** Date: March 1, 2012 Time: 1:30 p.m. |
| Debtor(s). | |
| 111 W. Saint John Street, Suite 705 San Jose, California 95113 | **Hearing on Plan Confirmation** Date: May 31, 2012 Time: 1:30 p.m. Place: United States Bankruptcy Court 280 S. First St., Room 3099 San Jose, CA 95113 Judge: Honorable Stephen L. Johnson |

## DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

JWM/RRL:cc:mw
K:\Community Towers\Pl\Comm. Towers I, LLC\Plan and DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

Case: 11-58944    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:49:19    Page 1 of 58

# <u>TABLE OF CONTENTS</u>

Page

ARTICLE I. EXECUTIVE SUMMARY OF TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN ..............................................................1

ARTICLE II. INTRODUCTION ...............................................................................4

ARTICLE III. DEFINITIONS ...................................................................................5

ARTICLE IV. OVERVIEW OF THE CHAPTER 11 PROCESS AND SUMMARY OF THE PLAN TREATMENT OF CLAIMS AND INTERESTS ..........................6

    **4.1.**    The Chapter 11 Process. ...............................................................6
    **4.2.**    Liquidation Analysis. ....................................................................6

ARTICLE V. THE BANKRUPTCY FILING ..........................................................7

ARTICLE VI. HISTORY AND DESCRIPTION OF THE DEBTORS' BUSINESS ....7

    **6.1.**    Nature of the Debtors' Business. ..................................................7
    **6.2.**    Events Leading to Debtors' Bankruptcy Cases. ...........................9

ARTICLE VII. SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES .....10

    **7.1.**    Retention of Professionals. ..........................................................10
    **7.2.**    Appointment of Responsible Individual. ......................................10
    **7.3.**    Real Property Leases. ...................................................................10
    **7.4.**    Other Bankruptcy Administration Matters. ..................................10

ARTICLE VIII. THE DEBTORS' ASSETS AND LIABILITIES ..............................11

    **8.1.**    Balance Sheets; Financial Reporting. ..........................................11
    **8.2.**    Cash on Hand. ..............................................................................11
    **8.3.**    Assets. ...........................................................................................11
    **8.4.**    Liabilities. .....................................................................................11

ARTICLE IX. THE PLAN OF REORGANIZATION ...............................................11

    **9.1.**    Overview of the Plan. ...................................................................11
    **9.2.**    Claims and Interests and Treatment under the Plan .....................12
    **9.3.**    Summary of Claims and Interests; Treatment. .............................12

        9.3.1    Administrative Expense Claims - Description ...................12
        9.3.2    Administrative Expense Claims – Estimate. .....................12
        9.3.3    Administrative Expense Claims – Treatment. ...................13
        9.3.4    Administrative Expense Claims – Deadline for Requests for Payment. ...........................................................................13
        9.3.5    Deadline for Objections. ....................................................13
        9.3.6    United States Trustee Fees .................................................13
        9.3.7    Tax Claims. ........................................................................14
        9.3.8    Class 1 (Santa Clara County Tax Collector) – Unimpaired .........14
        9.3.9    Class 2 (CIBC) – Impaired. ...............................................14
        9.3.10    Class 3 (Priority Claims) – Unimpaired ...........................16

JWM/RRL:cc:mw
S:\Command\Solvex\PI\Conf\Doc4\weel1.C\Plan.drafts.bhs\d\s.work\Plan
v8.docx

Case: 50944   Doc# 123   Filed: 03/27/12   Entered: 03/27/12 04:12:10   Page 2 of
58

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

| | 9.3.11 | Class 4 (Pre-Paid Rent Claims) – Unimpaired. | 16 |
|---|---|---|---|
| | 9.3.12 | Class 5 (Lease Deposit Claims) - Impaired. | 16 |
| | 9.3.13 | Class 6 (General Unsecured Claims) -Impaired. | 17 |
| | 9.3.14 | Class 7 (General Unsecured Claims of John and Rosalie Feece)- Impaired. | 17 |
| | 9.3.15 | Class 8 (Interest Holders) - Unimpaired. | 18 |
| **9.4.** | Implementation of the Plan of Reorganization. | | 18 |
| | 9.4.1 | Subject Property. | 18 |
| | 9.4.2 | Payments On The Effective Date | 19 |
| **9.5.** | Distributions. | | 19 |
| | 9.5.1 | Distribution Account. | 19 |
| | 9.5.2 | Distribution Addresses. | 20 |
| | 9.5.3 | Withholding Taxes. | 20 |
| **9.6.** | Responsible Person. | | 20 |
| **9.7.** | Disbursing Agent. | | 21 |
| **9.8.** | De Minimis Distributions. | | 21 |
| **9.9.** | Unclaimed Distributions. | | 22 |
| **9.10.** | Tax Returns, Payments and Refunds. | | 22 |
| **9.11.** | Further Orders. | | 22 |
| **9.12.** | Post Confirmation Employment of Personnel. | | 22 |
| **9.13.** | Post-Confirmation Compensation and Reimbursement of Professionals. | | 22 |
| **9.14.** | Post-Confirmation Notice. | | 23 |
| **9.15.** | Revesting of Property of the Estates. | | 24 |
| **9.16.** | Post-Confirmation Reports, Fees and Final Decree. | | 24 |
| | 9.16.1 | United States Trustee Fees. | 24 |
| | 9.16.2 | Post-Confirmation Reports. | 24 |
| | 9.16.3 | Final Decree. | 25 |

ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................... 25

| **10.1.** | Treatment of Executory Contracts and Unexpired Leases. | 25 |
|---|---|---|
| **10.2.** | Effect of Assumption of Executory Contracts and Unexpired Leases. | 25 |
| **10.3.** | Adding and Removing Executory Contracts and Unexpired Leases. | 26 |
| **10.4.** | Defaults. | 26 |
| **10.5.** | Rejection of Executory Contracts and Unexpired Leases. | 26 |
| **10.6.** | Rejection Claims. | 26 |

ARTICLE XI. PROOFS OF CLAIM; OBJECTIONS ........................................ 26

| **11.1.** | Time for Filing Proofs of Claim. | 26 |
|---|---|---|
| **11.2.** | Ownership and Transfers of Claims. | 27 |
| **11.3.** | Amendments to Claims. | 27 |
| **11.4.** | Claim Objections. | 27 |
| **11.5.** | Disallowance of Claims. | 28 |
| **11.6.** | Reserve Accounts. | 29 |
| **11.7.** | Distributions. | 29 |

ARTICLE XII. DEFAULT ........................................................................ 29

Case 2:10-bk-59944 Doc# 123 Filed 03/27/12 Entered: 03/27/12 Page 3 of 58
JWM/RRL:cc:mw
S:\...\Plan and Disclosure\Disclosure Statement v8.docx
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

ARTICLE XIII. PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS .................................................................................................................30

    13.1.    All Retained Claims and Avoidance Actions and Rights are Preserved. ...................30

ARTICLE XIV. RETENTION OF JURISDICTION .................................................................31

ARTICLE XV. EFFECT OF CONFIRMATION ........................................................................32

    15.1.    Binding Effect of Plan. ............................................................................................32
    15.2.    Full Satisfaction of Claims and Interests. ...............................................................32
    15.3.    Judgments Null and Void. ........................................................................................32
    15.4.    Injunction. ................................................................................................................32
    15.5.    Reservation of Powers. ............................................................................................33
    15.6.    Preservation of Insurance. .......................................................................................33

ARTICLE XVI. CONDITIONS PRECEDENT .........................................................................33

    16.1.    Conditions Precedent. ..............................................................................................33
    16.2.    Waiver of Conditions. ..............................................................................................33

ARTICLE XVII. OTHER PLAN PROVISIONS ......................................................................33

    17.1.    Exemption from Stamp, Transfer and Other Taxes. ................................................33
    17.2.    No Admissions. ........................................................................................................34
    17.3.    Revocation of the Plan. ............................................................................................34
    17.4.    Successors and Assigns. ...........................................................................................34
    17.5.    Nonconsensual Confirmation. .................................................................................34
    17.6.    Destruction of Records. ...........................................................................................34
    17.7.    Saturday, Sunday and Legal Holiday. .....................................................................35
    17.8.    Plan Interpretation. ..................................................................................................35
    17.9.    Setoff/Recoupment. .................................................................................................35
    17.10.  Notices. ....................................................................................................................35
    17.11.  Reservation of Rights. .............................................................................................36
    17.12.  Exhibits. ...................................................................................................................36

ARTICLE XVIII. RISK FACTORS ..........................................................................................36

    18.1.    Additional Claims Risks. .........................................................................................36
    18.2.    Estimation of Claims and Distribution Risks. .........................................................37
    18.3.    Bankruptcy Risks. ....................................................................................................37

ARTICLE XIX. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ........38

    19.1.    Introduction. .............................................................................................................38
    19.2.    IRS CIRCULAR 230. ..............................................................................................39
    19.3.    Consequences to the Debtors. ..................................................................................40
    19.4.    Consequences to Interest Holders. ..........................................................................40
    19.5.    Consequences to Creditors Generally. ....................................................................41
    19.6.    Backup Withholding. ...............................................................................................42

ARTICLE XX. VOTING PROCEDURES ................................................................................43

    20.1.    Definition of Impairment. ........................................................................................43

JWM/RRL:cc:mw

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

\\...\Columbine\Powers PI\Count 04\...\...\C\Pleadings\DS\...(3/21/12) v8.docx

ARTICLE XXI. CONFIRMATION PROCEDURES; OBJECTIONS TO
CONFIRMATION ............................................................................................................46

    **21.1.**   Confirmation Hearing. ................................................................................46
    **21.2.**   Requirements for Confirmation of the Plan.............................................47
    **21.3.**   Compliance with Confirmation Requirements. ........................................48
    **21.4.**   Cramdown. ...............................................................................................49

ARTICLE XXII. BEST INTERESTS TEST ...............................................................49

ARTICLE XXIII. POST-CONFIRMATION MANAGEMENT.................................51

JWM/RRL:cc/mw
...\Croxton Avenue\PI\Court Cover...LLC\Plan\Disclosure\Disclosure Stmt
v8.docx

Case 8:10-bk-13044-ES   Doc 123   Filed 03/27/12   Entered 03/27/12 16:42:16   Page 5 of
58

## TABLE OF EXHIBITS

**EXHIBIT A**      **DEBTORS' JANUARY 2012 MONTHLY OPERATING REPORT**

**EXHIBIT B**      **DEBTORS' PROJECTED CASH FLOW AND BUSINESS PLAN**

**EXHIBIT C**      **DEBTORS' LEASE ASSUMPTIONS**

**EXHIBIT D**      **DEBTORS' HISTORICAL PERFORMANCE**

# ARTICLE I.

## EXECUTIVE SUMMARY OF TREATMENT OF CREDITORS AND INTEREST HOLDERS UNDER THE PLAN[1]

| CLASS | DESCRIPTION | TREATMENT |
|-------|-------------|-----------|
| Class 1 | Allowed Secured Claim of the Santa Clara County Tax Collector | The Allowed Secured Claim of the Santa Clara County Tax Collector arising on or before the Effective Date will be paid in full when due. Pursuant to Section 1129(b)(2)(A)(i), the Santa Clara County Tax Collector shall retain its liens securing its Claim(s) on the Subject Property, to the extent not avoidable and to the extent of the Allowed amount of such Claim(s). |
| Class 2 | CIBC | CIBC shall retain all liens, security interest and other encumbrances affecting property of the Debtors and the Reorganized Debtors granted in favor of CIBC prior to the Effective Date to the extent of the Allowed Secured Claim of CIBC. CIBC and the Reorganized Debtors will modify the existing loan between CIBC and the Reorganized Debtors as described in the Loan Document Modifications, Exhibit A to the Plan, which provides that the principal amount plus the allowed accrued interest of the Allowed Secured Claim of CIBC will be paid over (10) years from the Effective Date together with per annum interest at the Prime Rate, or such other rate as may be determined by the Court, adjusted annually and subject to a three and one quarter percent (3 1/4%) floor as follows: (1) for the first five (5) years following the Effective Date, CIBC will receive monthly payments of interest only, commencing on the first day of the first calendar month following the Effective Date, and (ii) for years 6 through 10 following the Effective Date, CIBC will receive monthly payments of principal and interest, based on a thirty (30) year amortization schedule. CIBC's Allowed Secured Claim may be paid in full at any time without penalty, and will be paid in full in all events no later than ten (10) years following the Effective Date.  The Subject Property may be transferred subject to CIBC's Allowed Secured Claim. |
| Class 3 | Priority Claims | Creditors holding Allowed Class 3 Claims, if any, will be paid on the Effective Date of the Plan. |

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012).

JWM/RRL:cc:mw
K:\Community\Tishman\PT\Comm. Tower 2\DS\C\PleadingDS\DS\March\Stmt v8.docx

1

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

Case: 10-58944    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:42:10    Page 7 of 58

| | | | |
|---|---|---|---|
| Class 4 | Pre-Paid Rent Claims | | Creditors holding Allowed Class 4 Claims will receive on the Effective Date, a credit in an amount equal to their Allowed Claim to be honored in the normal course of business and pursuant to the Lease Agreements. |
| Class 5 | Lease Deposit Claims | | Creditors holding allowed Class 5 Claims will receive on the Effective Date, a credit in an amount equal to their Allowed Claim to use in the normal course of business and pursuant to the terms of the Tenant's Lease Agreement; provided, however, that if any holder of a Class 5 Claim is entitled, pursuant to the terms of its Lease Agreement, to a refund of any deposit at the expiration of its Lease Agreement, such refund shall be paid, together with interest at the Legal Rate, in twelve (12) monthly installments commencing on the first day of the first month following the date such refund is otherwise due pursuant to the terms of the Lease Agreement. The Claims of Class 5 claimants may be paid in full at any time without penalty. |
| Class 6 | General Unsecured Claims | | Creditors holding allowed Class 6 Claims will be paid in full, plus interest at the Legal Rate in twelve equal monthly installments commencing on the first day of the first month following the Effective Date. |
| Class 7 | General Unsecured Claims' of John and Rosalie Feece | | Creditors holding Class 7 Claims will be paid over (10) years from the Effective Date together with interest at the Prime Rate, adjusted annually and subject to a three and one quarter percent (3 1/4%) floor as follows: (1) for the first five (5) years following the Effective Date, John and Rosalie Feece will receive monthly payments of interest only, commencing on the first day of the first calendar month following the Effective Date, and (ii) for years 6 through 10 following the Effective Date, John and Rosalie Feece will receive monthly payments of principal and interest, based on a thirty (30) year amortization schedule. John and Rosalie's Feeces' Allowed General Unsecured Claims may be paid in full at any time without penalty, but not before the Allowed General Unsecured Claims in Class 6 have been paid in full. If the Debtors experience a cash shortfall in any given month that prevents them from making all payments pursuant to the Plan, the payment due to the Class 7 Creditors shall be reduced by the amount of the shortfall and paid only at such time as the Debtors have sufficient cash to make up the shortfall deferral. John and Rosalie Feeces' claims will be paid in full in all events no later than ten (10) years following the Effective Date. |

Line numbers 1-28 along left margin.

JWM/RRL:cc:mw
X:\Communicor\CCC\Pl Communitywest CCC\Pleadings\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

| | | |
|---|---|---|
| Class 8 | Interests | The Interests of the Debtors' members remain unaltered. |

JWM/RRL:cc:mw
S:\Communications\PJ Comm\Tyler\...\C\PJ Filed\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012)

Case 11-58944    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:49:19    Page 9 of 58

# ARTICLE II.

## INTRODUCTION

Community Towers I, LLC ("**Community I**"), Community Towers II, LLC ("**Community II**"), Community Towers III, LLC ("**Community III**"), and Community Towers IV, LLC ("**Community IV**"), (collectively, the "**Debtors**") hereby submit their DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012) (the "**Disclosure Statement**") in connection with the solicitation of acceptances of the DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012), (the "**Plan**").

Chapter 11 of the Bankruptcy Code sets forth the rules and procedures under which financially distressed entities may be reorganized or liquidated pursuant to a plan presented to Creditors and equity security holders for consideration and approval. Confirmation (approval) of the Plan is the culmination of that process.

The Effective Date of the Plan will be a date designated by the Debtors and will be no less than 15 calendar days and no more than 60 calendar days following the Confirmation Date or, in the event that the Effective Date of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than 30 calendar days following expiration of such stay or injunction.

The Plan sets forth the Debtors' proposal for the restructuring of their finances and the satisfaction, discharge and/or cancellation of all Claims against the Debtors. Creditors and Interest Holders should thoroughly review both the Plan and the Disclosure Statement before deciding whether to accept or reject the Plan. The purpose of the Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtors' books and records, that would enable a hypothetical reasonable investor typical of holders of Claims and Interests of the relevant class to make an informed judgment about the Plan.

Before the Debtors' Disclosure Statement may be used in connection with an acceptance or rejection of the Plan, the Bankruptcy Court, after a noticed hearing, must have approved the Disclosure Statement as containing adequate information to enable Creditors, Interest Holders and parties in interest to make an informed judgment on whether or not to accept or reject the Debtors'

JWM/RRL:cc:mw
K:\Community Towers\PLDG\Draft Plan\PLDG\LC\Final
DS\DS\March\Stmt v8.docx

4

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (DATED MARCH 27, 2012)

Plan.

The Bankruptcy Court's approval of the Disclosure Statement, however, does not constitute an endorsement of the Plan by the Court.

Creditors and Interest Holders should read this Disclosure Statement and the Plan in their entirety prior to voting by way of the enclosed Ballot, which must be completed and returned.

No solicitation of votes may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. In voting on the Plan, Creditors and Interest Holders should not rely on any information relating to the Debtors other than that contained in this Disclosure Statement, the Plan, and all exhibits hereto and thereto, and such other materials approved by the Bankruptcy Court.

The Plan's objective is to effect a reorganization of the Debtors' financial affairs and to maximize the value of the Debtors' assets for the benefit of Creditors. The Debtors believe that the restructuring contemplated by the Plan will yield a recovery to Creditors and Interest Holders at least as much as could be achieved through other restructuring alternatives or liquidation under Chapter 7 of the Bankruptcy Code. The Plan divides Creditors and Interest Holders into classes based on their legal rights and interests, and provides for the satisfaction, cancellation or disallowance of Claims and Interests.

## ARTICLE III.

## DEFINITIONS

All definitions contained in Article I of the Plan are incorporated herein by reference. Other terms are defined herein for convenience only. If a capitalized term is not defined herein or in the Plan, but is defined in the Bankruptcy Code or Bankruptcy Rules, such term will have the meaning given to that term in the Bankruptcy Code or Bankruptcy Rules unless the context of the Disclosure Statement clearly requires otherwise. References to a code section are references to the Bankruptcy Code, except as otherwise stated.

/ / /

/ / /

/ / /

JWM/RRL:cc:mw
K:\Commun\58944\APl\Drag_Track\DS\DLC\Filed\
DS\DS\March\Stmt v8.docx

5

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

Case 5:8944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 11 of 58

# ARTICLE IV.

## OVERVIEW OF THE CHAPTER 11 PROCESS
## AND SUMMARY OF THE PLAN TREATMENT OF CLAIMS AND INTERESTS

### 4.1.    The Chapter 11 Process.

Chapter 11 of the Bankruptcy Code contains numerous provisions, the general effect of which is to provide the Debtors with "breathing space" within which to propose a restructuring of their obligations to third parties. The filing of a Chapter 11 bankruptcy petition creates a bankruptcy "estate" comprised of all of the property interests of a debtor. Unless a trustee is appointed by the Bankruptcy Court for cause (no trustee has been appointed in these Cases), a debtor remains in possession and control of its assets as a "debtor in possession." The debtor may continue to operate its business in the ordinary course on a day to day basis without Bankruptcy Court approval. Bankruptcy Court approval is only required for various enumerated transactions (such as certain financing transactions) and transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition gives rise to what is known as the "automatic stay" which, generally, enjoins creditors from taking any action to collect or recover obligations owed by a debtor prior to the commencement of a Chapter 11 case. The Bankruptcy Court can, however, grant relief from the automatic stay under certain specified conditions or for cause.

A Chapter 11 debtor may propose a plan providing for the reorganization of the debtor. A plan may either be consensual or non-consensual and provides, among other things, for the treatment of the claims of creditors and interests of equity security holders.

### 4.2.    Liquidation Analysis.

The Debtors operate the Subject Property, a 305,000 square foot office complex located at 111 West Saint John Street and 111 North Market Street, San Jose, California (the "**Subject Property**"). Currently, the Subject Property is 93% occupied. The Debtors have submitted the Declaration of Donn L. Byrne in support of the MOTION FOR INTERIM AND FINAL ORDERS APPROVING USE OF CASH COLLATERAL. Mr. Byrne is an MAI certified appraiser and has appraised of the Subject Property. Based on his full appraisal (the "**Appraisal**"), he has concluded that the Subject Property has a market value of $41,000,000 as of October 31, 2011. It is true that the

JWM/RRL:cc:mw
\\Commun5894\WAP\Docs\Haws\LLC\Filed\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

Case: 5894    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:42:19    Page 12 of
58

Debtors initially valued the Subject Property at $50,000,000 for purposes of the value in their Schedules; however, the Debtors have utilized this appraised value in the Monthly Operating Reports ever since the Appraisal was received.

In these cases, the Debtors believe that the Subject Property will remain valuable if the Debtors are able to continue the profitable operation of their commercial property by leasing space to their Tenants. If the cases were converted to cases under Chapter 7, the Debtors believe that CIBC would eventually commence foreclosure proceedings and there would be no assets from which to pay Pre-Paid Rent Claims, Lease Deposit Claims or General Unsecured Claims. The Debtors believe that it is also very doubtful that the Subject Property would retain the same lease revenues if a Chapter 11 Trustee was appointed or if a Chapter 7 Trustee continued to operate the Subject Property.

**ARTICLE V.**

**<u>THE BANKRUPTCY FILING</u>**

On September 26, 2001 (the "**<u>Petition Date</u>**"), the Debtors filed their Voluntary Petitions. The Debtors continue to operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Each case is pending in the United States Bankruptcy Court for the Northern District of California, San Jose Division.

This Disclosure Statement and the accompanying Plan constitute the Debtors' proposal for an orderly reorganization of the Debtors' financial affairs and payment to the Creditors in accordance with the relevant provisions of the Bankruptcy Code.

**ARTICLE VI.**

**<u>HISTORY AND DESCRIPTION OF THE DEBTORS' BUSINESS</u>**

**6.1. <u>Nature of the Debtors' Business</u>.**

Each of the Debtors is a limited liability company formed under the laws of the State of Delaware on June 1, 2006 for the purpose of acquiring the Subject Property.

Community I is wholly owned by L'Atriums on the Creek I, Limited Partnership, a Texas limited partnership, which is owned by general partner L'Atriums on the Creek, Inc., a Texas corporation, as to a one percent (1%) interest and by limited partners John and Rosalie Feece as to a

JWM/RRL:cc:mw
K:\Communi58944\APl\Comm'tys#3LC\Filed\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

ninety-nine percent (99%) interest.  John and Rosalie Feece are the sole shareholders of L'Atriums on the Creek, Inc.  John L. Feece is the president of L'Atriums on the Creek, Inc.

Community II is wholly owned by Steppes Apartments, Ltd., a Texas limited partnership, which is owned by general partner Baxter Holdings, Inc., a Texas corporation, as to a ten percent (10%) interest and by limited partners John and Rosalie Feece as to a ninety percent (90%) interest.  John and Rosalie Feece are the sole shareholders of Baxter Holdings, Inc.  John L. Feece is the president of Baxter Holdings, Inc.

Community III is wholly owned by Bristol Court, LP, a Texas limited partnership, which is owned by general partner Bristol Court Management, LC, a Texas limited liability company, as to a one percent (1%) interest and by limited partner John L. Feece as to a ninety-nine percent (99%) interest.  John L. Feece is the sole member of Bristol Court Management, LC.

Community IV is wholly owned by L.G. Main Street, Inc., a California corporation.  John and Rosalie Feece are the sole shareholders of L.G. Main Street, Inc.  John L. Feece is the president of L.G. Main Street, Inc.

John L. Feece is the president and chief executive officer of each of the Debtors.

Community Towers Management, LLC, ("Community Management") a California limited liability company, is the management company for the Subject Property who collects rents and pays expenses on behalf of the Debtors.  John and Rosalie Feece are the sole members of Community Management.  Community Management receives a monthly management fee of 4% of gross rents, which typically amounts to approximately $17,000 per month, for the services it provides to the Debtors.  Of this $17,000, typically only $2,000 goes to the Feeces by way of a salary paid to Rosalie Feece.

These are single asset real estate cases.  The Subject Property is owned by the Debtors as tenants in common with Community Towers I owning an undivided 54.4% interest, Community Towers II owning an undivided 17.9% interest, Community Towers III owning an undivided 12.7% interest, and Community Towers IV owning an undivided 15% interest.  The multiple entities and ownership interests reflect prior investment projects of Mr. and Mrs. Feece, the proceeds of which were invested in the Subject Property.  The Debtors own no property other than the Subject Property

JWM/RRL:cc:mw
K:\Communit...\Pl\Disc...\Tw...\LC\Hidden
DS\DS\March\Stmt v8.docx

8

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
...TION (March 27, 2012)

Case: 5:89944    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:42:19    Page 14 of
58

and personal property related thereto.

## 6.2.  Events Leading to Debtors' Bankruptcy Cases.

To facilitate the acquisition of the Subject Property, the Debtors' borrowed $33,500,000 from CIBC. Each Debtor was formed in 2006 at the request of CIBC in connection with obtaining the initial loan. At that time, standard loans typically had ten year terms. Since extensive renovations to the building were required, and since the building was only 65% occupied at the time, the initial loan in this transaction had an initial three year term and required payments of interest only based on LIBOR plus 2% with a 7% floor.[2]

The Debtors contend that CIBC represented to the Debtors that if the contemplated repairs and renovations were completed and if the Subject Property was leased to at least 85% capacity, CIBC would refinance the loan for a ten year period. CIBC denies that it made any such commitment. It did, however, agree to a two year extension.

In August 2011, after nearly 2 years of discussions, negotiations broke down and CIBC declared a default, recorded a notice of default, filed a complaint for judicial foreclosure and moved for the appointment of a receiver. This led to the commencement of the Bankruptcy Cases.

The Debtors are in the process of reviewing their claims and evaluating the merits of commencing an adversary proceeding against CIBC asserting various claims (the "**CIBC Action**").

The Debtors scheduled CIBC for a Class 2 Claim in the amount of $38,905,806.00 (listed as disputed). CIBC has filed a proof of Claim alleging a Secured Claim in the amount of $34,100,000.00 and an unsecured Claim of $6,437,780.00 based on CIBC's belief that the Subject Property is worth $34,100,000.00. The Debtors will object to the claims filed by CIBC. The Allowed Secured Claim is dependent on the resolution of the CIBC Action, to the extent the Debtors commence such an action, and the objection to the claims filed by CIBC. The Debtors have also proposed additional modifications to the CIBC loan as outlined in the Loan Document Modifications attached as **Exhibit "A"** to the Plan.

/ / /

/ / /

---

[2] The rate was increased to Libor plus 4% when the loan terms were revised in 2009.

JWM/RRL:cc:mw
K:\Common\5894-2\PLD\org\Tower LLC\Final
DS\DS\March\Stmt v8.docx
9
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

# ARTICLE VII.

## SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES

### 7.1.    Retention of Professionals.

The Debtors have retained the following professionals to assist it in these cases: (i) Murray & Murray, A Professional Corporation as their general bankruptcy counsel; (ii) Law Offices of Eric Mogensen as their special corporate and real estate counsel; and (iii) Gattey Law Office as their special litigation counsel.

### 7.2.    Appointment of Responsible Individual.

Pursuant to this Court's Order of October 7, 2011, John L. Feece has been appointed as the Debtors' Responsible Individual.

### 7.3.    Real Property Leases.

The Debtors will assume the Lease Agreements in the Plan.  Each Lease Agreement is identified in **Exhibit "B"** to the Plan.

### 7.4.    Other Bankruptcy Administration Matters.

The Debtors' Statements of Financial Affairs and Schedules ("**Schedules**") were initially due to be filed on or before October 10, 2011.  The Debtors filed their Ex Parte Motion By Debtors For Order Authorizing Extension Of Time To File Schedules And Statements Of Financial Affairs.  On October 7, 2011, the Court entered its order extending the filing deadline to October 24, 2011.  The Statement of Financial Affairs and Schedules were filed with the Court on October 24, 2011.  Certain amendments to the Statement of Financial Affairs and Schedules were filed with the Court on November 15, 2011.  The Debtors are current on their Monthly Operating Reports.

The Debtors have responded to information requests by the United States Trustee and have attended meetings as requested.

The Debtors submitted their Chapter 11 Status Conference Statement on October 27, 2011, and attended the Chapter 11 status conference before this Court on November 2, 2011.

///

///

JWM/RRL:cc:mw
X:\Company\...\PI\...\\LC\...\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

Case 5:11-... Doc# 123   Filed: 03/27/12   Entered: 03/27/12 16:49:19   Page 16 of 58

# ARTICLE VIII.

## THE DEBTORS' ASSETS AND LIABILITIES

### 8.1. Balance Sheets; Financial Reporting.

The Debtors have filed Monthly Operating Reports in these Cases reporting all receipts and disbursements during the pendency of these cases. Attached hereto as **Exhibit "A"** is the most recently filed Monthly Operating Report (January 2012).

### 8.2. Cash on Hand.

The Debtors' January 2012 Monthly Operating Reports (combined) reflects cash on hand of $763,536.

### 8.3. Assets.

The Debtors lease and rent space and units in the Subject Property to Tenants and also operates an adjoining parking facility. The typical income generated per month is between $350,000 and $420,000. The Debtors have identified other assets in their Schedules, including the CIBC Action, which the Debtors may file.

### 8.4. Liabilities.

The liabilities of and equity security interests in the Debtors are reflected in Article IX below.

# ARTICLE IX.

## THE PLAN OF REORGANIZATION

### 9.1. Overview of the Plan.

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan. Creditors, Interests Holders and other parties in interest are urged to review the Plan and Disclosure Statement in their entirety.

The key features of the Debtors' proposed Plan include the following:

- Profitable operation of the Subject Property as more fully described herein;

- Satisfaction or disallowance of Claims as more fully set forth herein;

- Assumption of executory contracts and unexpired leases as more fully described in Article X herein.

/ / /

JWM/RRL:cc:mw
X:\Common\58944\PL\Disc\Dwen\LLC\Filed\
DS\DS\March\Stmt v8.docx

Case 58944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:42:19 Page 17 of 58

**9.2.** __Claims and Interests and Treatment under the Plan.__

The treatment under the Plan of Allowed Claims and Allowed Interests is in full and complete satisfaction of the legal, contractual and equitable rights that each Person holding an Allowed Claim or an Allowed Interest may have in or against the Debtors and/or their property. This treatment supersedes and replaces any agreements or rights those entities have in or against the Debtors and/or their property. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or the Allowed Interest. **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED CLAIM OR ALLOWED INTEREST.**

**9.3.** __Summary of Claims and Interests; Treatment.__

The Claims against and Interests in the Debtors and their treatment under the Plan are summarized below:

**9.3.1** __Administrative Expense Claims - Description.__

Administrative Claims, generally, are Claims that arise during the pendency of the Chapter 11 case and, in business cases, are generally entitled to first priority in payment, pursuant to section 507(a)(2) of the Bankruptcy Code. These include Claims for: (a) costs or expenses of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the Bankruptcy Estates incurred on or after the Petition Date and through and including Confirmation; (b) any cure amounts that must be paid in connection with the assumption of executory contracts or unexpired leases of the Debtors under Section 365 of the Bankruptcy Code; (c) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (d) allowed compensation and costs for professional services under Sections 330 and 331 of the Bankruptcy Code or otherwise; and (e) the value of any goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the ordinary course of business.

**9.3.2** __Administrative Expense Claims – Estimate.__

The Debtors anticipate that there will be no unpaid Administrative Claims on the Effective

JWM/RRL:cc:mw
K:\Commun\589944\AP\Disc\Draft\v5 LLC\Final
DS\DS\March\Stmt v8.docx

12

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

Case 5:8944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 18 of 58

Date.

### 9.3.3 Administrative Expense Claims – Treatment.

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such Claim, each holder of an Allowed Administrative Claim will be paid in cash, in full, upon the later of: (a) the Effective Date; (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Administrative Claim; and (c) if such Claim is incurred after the Petition Date in the ordinary course of the Debtors' business, within such time as payment is due pursuant to the terms giving rise to such Claim or as otherwise authorized by the Bankruptcy Court.

The foregoing is in full and final satisfaction of all Administrative Claims.

### 9.3.4 Administrative Expense Claims – Deadline for Requests for Payment.

Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code, other than by the Debtors' Professionals, must be filed on or before the Administrative Claims Bar Date which is thirty (30) days following the date of the NOTICE OF ORDER CONFIRMING PLAN or similarly titled notice of like effect issued by the Clerk of the Bankruptcy Court following Confirmation (approval) of the Plan  If the holder of an asserted Administrative Claim does not file and serve a request for payment of such Claim on or before that date, the holder will be forever barred from asserting such Claim or receiving any payment on account of such Claim.

### 9.3.5 Deadline for Objections.

Any objection to the allowance of an Administrative Claim must be filed by the Administrative Claim Objection Deadline which is sixty (60) days after the Administrative Claims Bar Date or such later date as may be established by the Bankruptcy Court for cause.  If no objection to the applicable Administrative Claim is filed on or before the Administrative Claims Bar Date, such Administrative Claim will be deemed Allowed as of that date.

### 9.3.6 United States Trustee Fees.

Quarterly fees owed to the United States Trustee will be paid by the Debtors when due in accordance with applicable law and the Debtors will continue to file reports to show the calculation of such fees for the Bankruptcy Estates until the Cases are closed under Bankruptcy Code Section

JWM/RRL:cc:mw
K:\Common\5894-1\API\Disc Stmt\DS LLC\Final
DS\DS\March\Stmt v8.docx
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)
Case 5894a Doc# 123  Filed: 03/27/12  Entered: 03/27/12 16:42:19  Page 19 of 58

350.

### 9.3.7   Tax Claims.

Certain Claims by governmental units, primarily tax claims, are entitled to priority over pre-petition Claims of general unsecured Creditors pursuant to Section 507(a)(8) of the Bankruptcy Code. The Debtors did not schedule any unsecured tax claims nor has an unsecured Tax Claim been filed. The County of Santa Clara Tax Collector filed a secured claim of $573,015.50, which is separately classified below. Except to the extent that the holder of a particular Tax Claim, if any, has agreed to a less favorable treatment of such Claim, each holder of a Tax Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Tax Claims.

### 9.3.8   Class 1 (Santa Clara County Tax Collector) – Unimpaired.

Class 1 consists of the Allowed Secured Claim of the Santa Clara County Tax Collector for real property taxes arising on or before the Effective Date and secured by the Debtors' Subject Property. The Santa Clara County Tax Collector filed a proof of claim for secured property taxes in the amount of $573,015.50. Of this amount, $286,508 was paid the week of December 5, 2011 pursuant to the SECOND INTERIM ORDER APPROVING USE OF CASH COLLATERAL AND SETTING DATE FOR FINAL HEARING [Docket 57]. The remaining one-half of the Class 1 Claim will be paid as it becomes due in April 2012.

Pursuant to section 1129(b)(2)(A)(i), the Santa Clara County Tax Collector shall retain its liens securing its Claim(s) on the Subject Property, to the extent not avoidable and to the extent of the Allowed amount of such Claim(s).

The foregoing is in full and final satisfaction of the Class 1 Claim. The holder of the Class 1 Claim is unimpaired under the Plan and is presumed to have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.9   Class 2 (CIBC) – Impaired.

Class 2 consists of the Allowed Secured Claim of CIBC. The Debtors have scheduled CIBC for a Class 2 Claim in the amount of $38,905,806.00 (listed as disputed). CIBC has filed a proof of

JWM/RRL:cc:mw
X:\Client\58944\API\Dng Dis\4965\LC\Plan\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

Claim alleging a Secured Claim in the amount of $34,100,000.00 and an unsecured Claim of $6,437.780.00 based on CIBC's contention that the Subject property is worth $34,100,000.00. The Allowed Secured Claim is dependent on the resolution of the CIBC Action and the objection to the claims filed by CIBC. The Debtors have used $37,138,665.82, the principal amount of the CIBC loan plus interest through May 31, 2012, as the amount of CIBC's claim in the DEBTORS' PROJECTED CASH FLOW AND BUSINESS PLAN (the "**Business Plan**") attached hereto as **Exhibit "B."**

Pursuant to section 1129(b)(2)(A)(i), CIBC shall retain all liens, security interests and other encumbrances affecting property of the Debtors and the Reorganized Debtors granted in favor of CIBC prior to the Effective Date to the extent of the Allowed Secured Claim of CIBC. The principal amount plus the allowed accrued interest of the Allowed Secured Claim of CIBC will be paid over ten (10) years from the Effective Date together with interest at the Prime Rate or such other rate as may be determined by the Court, adjusted annually and subject to a three and one quarter percent (3 1/4%) floor, as follows: (i) for the first five (5) years following the Effective Date, CIBC will receive monthly payments of interest only, commencing on the first day of the first calendar month following the Effective Date, and (ii) for years 6 through 10 following the Effective Date, CIBC will receive monthly payments of principal and interest based on a thirty (30) year amortization schedule. CIBC's Allowed Secured Claim may be paid in full at any time without penalty, and will be paid in all events no later than ten (10) years following the Effective Date. The Subject Property may be transferred subject to CIBC's Allowed Secured Claim. The amount of CIBC's Allowed Secured Claim is dependent on the resolution of the CIBC Action, to the extent the Debtors bring such an action, and the objection to the CIBC claims. Additional modifications to the CIBC loan are identified in the Loan Documents Modifications attached as **Exhibit "A"** to the Plan.

The Debtors' Business Plan utilizes several scenarios of the interest rate to CIBC that may be paid pursuant to the Plan's terms depending on the allowed rate decided by the Court: 1) Prime Rate; 2) Prime Rate plus 1%; and 3) Prime Rate plus 2%. All scenarios show that the Debtors have sufficient cash to make payments pursuant to the applicable Plan terms.

The foregoing is in full and final satisfaction of the Class 2 Claim. The holder of the Class 2 Claim is impaired. Claims are subject to verification and may be reduced after objections are

JWM/RRL:cc:mw
K:\Common\58944\PI\Docs\Plan & DS LC\Hearing
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

Case 8:11-bk-18944-MW Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:42:19 Page 21 of 58

resolved by the Bankruptcy Court.

### 9.3.10 Class 3 (Priority Claims) – Unimpaired

Class 3 consists of all Allowed Claims entitled to priority under Bankruptcy Code Section 507(a) other than unclassified Section 503(b) Administrative Claims and Section 507(a)(8) Tax Claims described above. A preliminary review of the Debtors' books and records indicates that there are no Class 3 Priority Claims, and the Debtors estimate that on the Effective Date, there will be no Allowed Class 3 Claims. Except to the extent that the holder of a particular Allowed Class 3 Claim, if any, has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 3 Claim shall be paid in cash, in full upon the later of: (a) the Effective Date; or (b) if such Claim is initially a Disputed Claim, when it becomes an Allowed Claim. The foregoing is in full and final satisfaction of all Class 3 Claims.

The holders of Class 3 Claims, if any, are unimpaired under the Plan and are presumed to have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.11 Class 4 (Pre-Paid Rent Claims) – Unimpaired.

Class 4 consists of all Allowed Pre-Paid Rent Claims. During the normal course of business certain Tenants pre-pay their rent in order to receive a reduced price per square foot. The Debtors scheduled $151,168.85 in Pre-Paid Rent Claims. As of December 21, 2011, the Pre-Paid Rent Claims have been reduced to $113,506.75. On the Effective Date each holder of an Allowed Class 4 Claim will receive a credit in an amount equal to its Allowed Claim to use in the normal course of business and pursuant to the terms of its Lease Agreement. The foregoing is in full and final satisfaction of all Class 4 Claims.

The holders of Class 4 Claims are unimpaired under the Plan and are presumed to have accepted the Plan. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.12 Class 5 (Lease Deposit Claims) - Impaired.

Class 5 consists of all Allowed Lease Deposit Claims. The Debtors receive deposits from their Tenants to cover damage to the space and unpaid rent. The Debtors have scheduled

JWM/RRL:cc:mw
\\Compus...589414\API\Dong...Hawes & LLC\Filing\
DS\DS\March\Stmt v8.docx

16

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

$317,703.00 in Allowed Lease Deposit Claims. As of December 21, 2011 the Debtors have $321,049.29 in Allowed Lease Deposit Claims. On the Effective Date each holder of an Allowed Class 5 Claim will receive a credit in an amount equal to its Allowed Claim to use in the normal course of business and pursuant to the terms of the Tenant's Lease Agreement; provided, however, that if any holder of a Class 5 Claim is entitled, pursuant to the terms of its Lease Agreement, to a refund of any deposit at the expiration of its Lease Agreement, such refund will be paid, together with interest at the Legal Rate, in twelve (12) monthly installments commencing on the first day of the first month following the date such refund is otherwise due pursuant to the terms of the Lease Agreement. Allowed Lease Deposit Claims may be paid in full at any time without penalty.

The foregoing is in full and final satisfaction of all Class 5 Claims. The holders of Class 5 Claims are impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.13  Class 6 (General Unsecured Claims) -Impaired.

Class 6 consists of all Allowed General Unsecured Claims not included in Class 7. Class 6 consists of the claims both scheduled and filed totaling $95,160.31 in claims. These claims consist of the claims of the scheduled claims of the Law Offices of Eric Mogensen ($25,747.00), Manriquez Construction, Inc. ($20,488.00), James Jeffery and Sons Painting ($21,950.00), and the filed claims of Pacific Gas & Electric Company ($25,536.59), Pacific Bell Telephone Company ($249.72) and Law Offices of Scott Gattey ($1,189.00). Except to the extent that the holder of a particular Allowed Class 6 Claim has agreed to a less favorable treatment of such Claim, each holder of an Allowed Class 6 Claim will be paid in full, plus interest at the Legal Rate, in twelve equal monthly installments commencing on the first day of the first month following the Effective Date.

The foregoing is in full and final satisfaction of all Class 6 Claims. The holders of Class 6 Claims are impaired. Claims are subject to verification and may be reduced after objections are resolved by the Bankruptcy Court.

### 9.3.14  Class 7 (General Unsecured Claims of John and Rosalie Feece)-Impaired.

Class 7 consists of the Allowed General Unsecured Claims of John and Rosalie Feece. Ever since the Subject Property was purchased John and Rosalie Feece have loaned money to the Debtors

JWM/RRL:cc:mw
K:\Company\...\API\Dpcy\Fwcel...\LC\Hillbrd\
DS\DS\March\Stmt v8.docx
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

Case 09-58944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 23 of 58

for renovations, capital improvements, tenant improvements and lease commissions. As of the Petition Date, John and Rosalie Feece were owed $6,621,000.00. The principal amount of the Allowed General Unsecured Claims of John and Rosalie Feece will be paid over ten (10) years from the Effective Date together with interest at the Prime Rate, adjusted annually and subject to a three and one quarter percent (3 1/4%) floor, as follows: (i) for the first five (5) years following the Effective Date, John and Rosalie Feece will receive monthly payments of interest only, commencing on the first day of the first calendar month following the Effective Date, and (ii) for years 6 through 10 following the Effective Date, John and Rosalie Feece will receive monthly payments of principal and interest, based on a thirty (30) year amortization schedule. John and Rosalie Feeces' Allowed General Unsecured Claims may be paid in full at any time without penalty, but not before the Allowed General Unsecured Claims in Class 6 have been paid in full. John and Rosalie Feeces' claims will be paid in all events no later than ten (10) years following the Effective Date.

If the Debtors experience a cash shortfall in any given month that prevents them from making all payments pursuant to the Plan, the payment due to the Class 7 Creditors shall be reduced by the amount of the shortfall and paid only at such time as the Debtors have sufficient cash to make up the shortfall deferral.

The foregoing is in full and final satisfaction of all Class 7 Claims. The holders of Class 7 Claims are impaired.

### 9.3.15 Class 8 (Interest Holders) - Unimpaired.

Class 8 consists of all Interests in the Debtors. The Interests of Interest Holders as defined in the Plan remain unaltered.

### 9.4. Implementation of the Plan of Reorganization.

The Plan provides as follows:

### 9.4.1 Subject Property.

The Reorganized Debtors will continue to lease units in the Subject Property and will use cash on hand and cash generated from business operations to perform its obligations under the Plan. The Debtors believe that through the operation of the Subject Property, all Claims will be paid pursuant to the provisions of the Plan. The Debtors have projected conservative growth in lease

JWM/RRL:cc:mw
K:\Comm\Docs\F\A\P\Cmpny\Faw611 LC\Feece
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

revenue in the Business Plan through the Plan term. A detailed projection of the Debtors' cash flow demonstrating the Debtors' ability to pay its Claims is detailed in Business Plan (multiple versions with applicable interest rates) attached hereto as **Exhibit "B"**.

The Debtors have made the projections based on the historic performance of the Debtors with conservative growth projections. Specifically, the Debtors have assumed average lease revenue growth as detailed in the Appraisal. (See Appraisal Docket No. 74-l, pg. 10.). Consistent with the projections in the Appraisal, the Debtors have provided that rental revenue would increase from 3-5% based on the year in question. Additionally, the Debtors' lease assumptions are based on current actual rents with projected future leases at $1.60 per square foot consistent with the Appraisal. The Debtors have also increased their expenses by 3% per year as set forth in the Appraisal. A summary of the Appraisal assumptions, which the Debtors have utilized in its Business Plan, is attached hereto as **Exhibit "C"**. A summary of the Debtors' historical performance, which also supports the Debtors' projections in the Business Plan, is attached hereto as **Exhibit "D"**. The Debtors have included potential costs of the CIBC Action in the Business Plan for 2012.

### 9.4.2  Payments On The Effective Date.

If the Reorganized Debtors do not have sufficient funds on the Effective Date to make the payments provided in the Plan to the holders of Allowed Administrative Claims, Tax Claims and Priority Claims, any Member of any Debtor or any affiliate of any Debtor may, in their discretion, loan sufficient funds to the Reorganized Debtors to make such payments, and such loans shall be treated as Class 6 Claims. Furthermore, if the Debtors experience a cash shortfall in any given month that prevents them from making all payments pursuant to the Plan, the payments due to John and Rosalie Feece, the Class 7 Creditors, shall be reduced by the amount of the shortfall and paid only at such time as the Debtors have sufficient cash to make up the shortfall deferral.

### 9.5.  Distributions.

#### 9.5.1  Distribution Account.

If the Disbursing Agent is a Person other than the Responsible Person, the Disbursing Agent will hold any funds transmitted to it in a segregated trust account for the benefit of holders of Allowed Claims.

JWM/RRL:cc:mw
\\C:\Communications\API\Client\Feece\LLC\Filed\
DS\DS\March\Stmt v8.docx

### 9.5.2    **Distribution Addresses.**

Unless a Creditor has provided the Debtors or the Reorganized Debtors and their counsel with written notice of a different address, Distributions will be mailed to Creditors at the address set forth in their proofs of Claim filed with the Bankruptcy Court. If no proof of Claim is filed with respect to a particular Claim, the Distribution will be mailed to the address set forth in the Schedules filed by the Debtors.

### 9.5.3    **Withholding Taxes.**

Pursuant to Section 346(h) of the Bankruptcy Code, the Disbursing Agent will be entitled to deduct any federal, state or local withholding taxes from any cash payments made with respect to Allowed Claims, as appropriate. The Disbursing Agent will be permitted to withhold a Distribution to any Creditor who has not provided information requested by the Disbursing Agent for the purpose of fulfilling its obligations hereunder. The Disbursing Agent will comply with all reporting obligations imposed on it by any governmental unit with respect to withholding and related taxes.

### 9.6.    **Responsible Person.**

On and after the Effective Date, John L. Feece shall serve as the Reorganized Debtors' Chief Executive Officer. To the extent provided by the Plan, he will also serve as the Responsible Person and Disbursing Agent.

The Responsible Person will be replaced in the event of a voluntary resignation, death, incapacity or at the request of a party in interest for "cause" upon order of the Bankruptcy Court. In the event of a voluntary resignation, the then-Responsible Person will select a replacement. In all other events, the Court will appoint a replacement. A voluntary resignation will not be effective until a successor has accepted in writing his or her appointment.

The Responsible Person will manage the Reorganized Debtors and will have all of the authority to act on behalf of the Reorganized Debtors in accordance with the Bankruptcy Code, the Bankruptcy Rules and Local Rules. Such management will include: (a) fulfilling the duties and obligations of the Debtors and the Reorganized Debtors under the Plan; and (b) fully administering the Bankruptcy Estates as required by the Plan, the Order of Confirmation, the Bankruptcy Code and the Bankruptcy Rules, which duties and obligations include the facilitation of Distributions pursuant

to the Plan, reviewing Claims, objecting to Disputed Claims, supervising the preparation and filing of required tax returns of the Debtors and closing the Bankruptcy Cases. The Reorganized Debtors will be substituted as successor to the Debtors and their Estates in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court with respect to Disputed Claims. Without limiting the foregoing, the Responsible Person, acting on behalf of the Reorganized Debtors, will have all of the rights and powers of an estate representative appointed pursuant to Section 1123(b)(3) of the Bankruptcy Code to prosecute or otherwise assert the Retained Claims, including Avoidance Actions, if any. As the Plan proposes to pay 100% to creditors, the Debtors do not anticipate bringing any Avoidance Actions at this time.

The Responsible Person may, in his discretion, employ such other persons as may be necessary to assist with implementing the Plan and as otherwise necessary in the Cases.

Subject to the Reorganized Debtors' business judgment regarding the pursuit of any particular Retained Claim (which may entail evaluation, among other things, of the cost of pursuing such Retained Claim) and the concurrence of the Reorganized Debtors' board of directors, the Responsible Person will have no obligation to pursue any affirmative claims on behalf of the Reorganized Debtors or their Estates and any such claims may be abandoned or waived.

Upon the Effective Date, the Responsible Person will be authorized on behalf of the Debtors and Reorganized Debtors to execute all instruments, agreements and documents, and to take all actions for and on behalf of the Debtors or Reorganized Debtors necessary to effectuate the provisions of the Plan. Any such document, agreement or instrument executed and delivered by the Responsible Person will be conclusively deemed duly executed by the Debtors and/or Reorganized Debtors without the need for further corporate action or order of the Bankruptcy Court. After the Effective Date, the Responsible Person will be entitled to implement and administer the Plan without the need for further corporate action or order of the Bankruptcy Court.

**9.7.** **Disbursing Agent.**

John L. Feece will serve as Disbursing Agent unless otherwise ordered by the Court.

**9.8.** **De Minimis Distributions.**

Notwithstanding any other provision of the Plan, Distributions of less than $50.00 need not

JWM/RRL:cc:mw
K:\Common\5894A\Pl\Disc\Draft\Ds LC\Filing
DS\DS\March\Stmt v8.docx

Case 5894A Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:42:19 Page 27 of

be made on account of any Allowed Claim; provided, however, that Distributions that would otherwise be made but for this provision will carry over to the next Distribution Date until the cumulative amount to which any holder of an Allowed Claim is entitled is more than $50.00, at which time the cumulative amount of such Distributions will be paid to such holder.

**9.9.** **Unclaimed Distributions.**

Any cash Distributions that remain unclaimed or unnegotiated for ninety (90) days following issuance of the check representing the Distribution or are returned for reasons other than the absence of a current or correct address (unless a current or correct address cannot be determined after reasonable inquiry) will become the property of the Reorganized Debtors.

**9.10.** **Tax Returns, Payments and Refunds.**

The Reorganized Debtors shall file or cause to be filed any and all delinquent and final tax returns and pay any and all taxes owed by the Debtors and the Reorganized Debtors on a timely basis (other than taxes provided for under the Plan). The Reorganized Debtors reserve all rights to amend prior tax returns of the Debtors and to pursue and collect all potential tax refunds, to claim losses and to take such other actions to the fullest extent allowed by law.

**9.11.** **Further Orders.**

Upon motion by the Reorganized Debtors, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to facilitate consummation of the Plan.

**9.12.** **Post Confirmation Employment of Personnel.**

The Reorganized Debtors and any Disbursing Agent may employ or contract with Persons and other Entities to perform, or advise and assist them in the performance of, their respective obligations under the Plan. The Reorganized Debtors may continue to employ the Debtors' Professionals for the purposes for which they were employed before the Confirmation Date, and for such additional purposes as the Reorganized Debtors may request, and the Reorganized Debtors may employ such other Professionals as may be necessary to perform their responsibilities under the Plan.

**9.13.** **Post-Confirmation Compensation and Reimbursement of Professionals.**

All professionals employed by the Reorganized Debtors after the Confirmation Date will be

JWM/RRL:cc:mw
K:\Commun\58944-1\Pl\Disc (Tawof) LC\Final
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

entitled to payment of their reasonable post-Confirmation Date fees and reimbursement of expenses on a monthly basis, subject to the following:

Each professional requesting payment of such compensation shall serve a detailed statement of requested fees and expenses on the Notice Parties. Any Notice Party or other party in interest may object to any portion of the requested fees and expenses. Any objection to the payment of fees or reimbursement of expenses must be in writing (and sufficiently detailed to allow the professional whose fees or expenses are subject to the objection an opportunity to respond, and ultimately to allow the Bankruptcy Court to rule on such objection) and served on the Notice Parties and the professional whose fees and expenses are subject to the objection. Such an objection must be served within fifteen (15) days after service of the detailed statement.

If there is no objection to a professional's requested fees and expenses within such fifteen (15) day period, the Reorganized Debtors shall promptly pay the requested amount in full. If an objection to a portion of the fees or expenses requested is timely served, the Reorganized Debtors shall promptly pay the undisputed portion of such fees and expenses.

To the extent that an objection is timely served, the Responsible Person shall reserve monies in the Disputed Claims Reserve Account in the amount of the disputed fees and expenses pending resolution of said objection.

Any objection to a request for payment of fees and expenses will be resolved by either: (a) written agreement between the professional requesting such fees and expenses and the objecting party; or (b) Final Order of the Bankruptcy Court. Resolution by the Bankruptcy Court must be requested by motion filed and served on the objecting party and the Notice Parties in accordance with the Bankruptcy Rules and the Local Rules on not less than twenty-one (21) days notice and such motion may be filed by either the requesting professional or the objecting party. Any opposition to the motion must be filed and served no later than seven (7) days prior to the hearing.

Professionals will not otherwise be required to file applications for Bankruptcy Court approval of post-Confirmation fees and expenses.

### 9.14. Post-Confirmation Notice.

Whenever the Plan requires a Person to provide notice of some action, such Person seeking

Case 2:11-bk-58944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 29 of 58

relief shall be required to serve a written notice on the Notice Parties.  Such Person shall be authorized to take the action proposed to be taken in such notice upon the expiration of fifteen (15) days from service of the notice unless, before the expiration of the fifteen (15) day period, a party in interest has filed an objection to such proposed action with the Bankruptcy Court and scheduled a hearing on such objection within thirty (30) days of the filing of such objection.  If any such objection is filed, the Person seeking the particular relief shall not take the proposed action unless the Bankruptcy Court approves such action or the objecting party withdraws the objection.  Service by electronic filing pursuant to Local Rule 9013-3 shall be adequate for all notices and other pleadings filed with the Bankruptcy Court.

### 9.15. Revesting of Property of the Estates.

On the Effective Date all property of the Debtors and the Bankruptcy Estates will vest in the Reorganized Debtors, free and clear of any and all liens, encumbrances, Claims and Interests of Creditors and Interest Holders except as provided in the Plan.  Revesting does not modify the nature of any contracts assumed by the Debtors and/or Reorganized Debtors.

### 9.16. Post-Confirmation Reports, Fees and Final Decree.

#### 9.16.1 United States Trustee Fees.

Not later than thirty (30) days after the end of each calendar quarter that ends after the Effective Date (including any fraction thereof), the Reorganized Debtors shall pay to the United States Trustee the quarterly fee for such quarter until the Cases are converted, dismissed or closed pursuant to a Final Decree, as required by 28 U.S.C. § 1930(a)(6).

#### 9.16.2 Post-Confirmation Reports.

Not later than thirty (30) days after the end of each calendar quarter which ends after the Effective Date, the Reorganized Debtors shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the United States Trustee.  Further reports must be filed no later than thirty (30) days after the end of every calendar quarter thereafter until the entry of a Final Decree, unless otherwise ordered by the Bankruptcy Court.

/ / /

JWM/RRL:cc:mw
K:\Common\58944\PLDG\DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

Case 5:58944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 30 of 58

### 9.16.3  Final Decree.

At such time as all motions, contested matters and adversary proceedings have been finally resolved and the Bankruptcy Cases are in a condition to be closed, the Reorganized Debtors shall file an application for the entry of a Final Decree to close the Bankruptcy Cases pursuant to Section 350 of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules.  Entry of a Final Decree may be sought by the Reorganized Debtors notwithstanding that all payments required by the Plan have not been completed provided the Bankruptcy Cases are determined by the Bankruptcy Court to be fully administered; provided further, that the Bankruptcy Court retains jurisdiction to hear all matters involving the further administration of the Plan until all holders of Allowed Claims have been paid in full or as otherwise agreed to or provided for under the Plan.  The Reorganized Debtors shall serve the application for entry of a Final Decree on the Notice Parties.  Pursuant to Local Rule, such application shall be considered by the Bankruptcy Court without a hearing unless within fourteen (14) days after the date of service of the notice, a party in interest files and serves a request for hearing.

## ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1.  Treatment of Executory Contracts and Unexpired Leases.

The Debtors reserve the right to move the Bankruptcy Court at any time for authority to assume, assume and assign, or reject, pursuant to Bankruptcy Code Section 365, any and all contracts that are executory and leases that are unexpired.

Each contract and lease listed on **Exhibit "B"** to the Plan will be assumed by the Debtors on the Effective Date to the extent each such contract is executory and such lease is unexpired.

### 10.2.  Effect of Assumption of Executory Contracts and Unexpired Leases.

All executory contracts and unexpired leases assumed prior to Confirmation or pursuant to the Plan and not otherwise rejected pursuant to the Plan or otherwise will remain in full force and effect, be unimpaired by the Plan except as specifically modified by the Plan and the Order of Confirmation, and be binding on the parties thereto.

/ / /

JWM/RRL:cc:mw
K:\Commun\...\Al\PI\Doc...Tawes LLC\Filed\
DS\DS\March\Stmt v8.docx

25

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

**10.3.** **Adding and Removing Executory Contracts and Unexpired Leases.**

The provisions of this Article X may be amended, with appropriate notice to those parties in interest directly affected, at any time prior to the conclusion of the Confirmation Hearing, to add or remove executory contracts and unexpired leases to be assumed, assumed and assigned, or rejected pursuant to the Plan.

**10.4.** **Defaults.**

Unless other treatment is agreed to between the parties to each assumed contract or lease, if there has been a default in an assumed executory contract or unexpired lease other than the kind specified in Section 365(b)(2) of the Bankruptcy Code, the Debtors shall, on or before the Effective Date: (a) cure, or provide adequate assurance that it will promptly cure, any such default; (b) compensate, or provide adequate assurance that it will promptly compensate, the other party to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (c) provide adequate assurance of future performance under such contract or lease.

**10.5.** **Rejection of Executory Contracts and Unexpired Leases.**

Without admitting the validity of any other executory contracts and unexpired leases, all executory contracts and unexpired leases of the Debtors that are not listed on **Exhibit "B"** to the Plan are hereby rejected by the Debtors as of the Effective Date.  Confirmation of the Plan will be deemed to constitute Bankruptcy Court approval of such rejection.

**10.6.** **Rejection Claims.**

The holder of a Rejection Claim must file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtors, a proof of Claim relative to such Rejection Claim on or before the Rejection Claims Bar Date or be forever barred from asserting any such Claim or receiving any payment or other Distribution on account of such Claim.

**ARTICLE XI.**

**PROOFS OF CLAIM; OBJECTIONS**

**11.1.** **Time for Filing Proofs of Claim.**

Proofs of Claim, when required, must be filed with the Bankruptcy Court no later than the applicable Claims Bar Date (which for most prepetition Claims is January 24, 2012 and for

JWM/RRL:cc:mw
X:\Common\58944\Plan\Doc of Award & DS\LC\Friendly
DS\DS\March\Stmt v8.docx

26

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

governmental units is March 26, 2012). However, Bankruptcy Rule 3003(b) provides that it is not necessary for a Creditor to file a proof of Claim if its Claim has been listed on the Debtors' Schedules filed with the Bankruptcy Court pursuant to Section 521(a)(1) of the Bankruptcy Code and Rule 1007(a)(3) of the Bankruptcy Rules, and is not listed as disputed, contingent, unliquidated or unknown as to amount. Pursuant to Bankruptcy Rule 3003(c)(2), any creditor whose Claim is not scheduled by the Debtors or was scheduled as disputed, contingent, unliquidated, or unknown as to amount, and who fails to file a proof of Claim on or before the applicable Claims Bar Date or other applicable deadline may not be treated as a Creditor with respect to that Claim for purposes of voting on the Plan or receiving a Distribution thereunder.

### 11.2. Ownership and Transfers of Claims.

Distributions to Creditors under the Plan will be made to the Persons shown on the Debtors' or the Bankruptcy Court's records on the Effective Date. For purposes of any Distribution under the Plan, the Reorganized Debtors, the Disbursing Agent, the Responsible Person, and their professionals will have no obligation to recognize any transfer of Claims after the Effective Date.

> ANY PARTY WHO ACQUIRES A CLAIM AGAINST THE DEBTORS OR REORGANIZED DEBTORS AFTER THE EFFECTIVE DATE MUST ARRANGE WITH THE HOLDER OF SUCH CLAIM TO RECEIVE DISTRIBUTIONS TO WHICH THE TRANSFEREE MAY BE ENTITLED. NEITHER THE REORGANIZED DEBTORS NOR THE DISBURSING AGENT WILL BE REQUIRED TO TRACK CHANGES IN OWNERSHIP OF CLAIMS AFTER THE EFFECTIVE DATE.

### 11.3. Amendments to Claims.

Except as provided by the Plan or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Rules or applicable law, proofs of Claim: (a) may not be filed upon expiration of the applicable bar date; and (b) may not be amended after the expiration of the applicable bar date except for amendments to proofs of Claim to decrease the amount or priority thereof.

### 11.4. Claim Objections.

An objection to a Claim must be filed no later than the Claims' Objection Date which is ninety (90) days after the Effective Date; provided, however, that such date may be extended by the Bankruptcy Court for cause upon the ex parte motion of the Reorganized Debtors. The Reorganized

JWM/RRL:cc:mw
K:\Common\58944\API\Disc (Tweel)\PLC\Filed
DS\DS\March\Stmt v8.docx

27

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

Debtors will have the primary responsibility to review Claims filed against the Debtors, to file objections as appropriate and to resolve Disputed Claims; however, any party in interest can object to a Claim.

Since the Claims' Objection Date follows the Plan's Effective Date there is a risk to creditors that payment on claims will be delayed and creditors will not know whether there claim will be "allowed" until after the Claims Objection Date. To the extent the Debtors do object to a creditor's claim, the Disputed Claim will be protected by the reserve procedure discussed in Section 11.6 below.

**11.5.**   **Disallowance of Claims.**

All claims of any Entity from whom property is sought by the Debtors, the Reorganized Debtors or the Responsible Person, under Sections 542, 543, 550 or 553, of the Bankruptcy Code, or with respect to whom the Debtors, the Reorganized Debtors or Responsible Person alleges is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, will be disallowed if: (a) such Entity on one hand, and the Debtors, the Reorganized Debtors or the Responsible Person, on the other hand, agree, or the Bankruptcy Court has determined by a Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code, and (b) such Entity or transferee has failed to turnover such property by the dates set forth in such agreement or Final Order.

The Plan contains the following important language with respect to the disallowance of claims:

EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE WILL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS WILL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (A) THE

CONFIRMATION HEARING, OR (B) 45 DAYS AFTER THE APPLICABLE BAR DATE.

### 11.6. <u>Reserve Accounts.</u>

Subject to the next sentence, any cash that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim on any Distribution Date hereunder will be deposited by the Disbursing Agent into the Disputed Claims Reserve Account. Not later than fifteen (15) days after the Disbursing Agent receives notice that a Disputed Claim has been Allowed in whole or in part, the Disbursing Agent shall Distribute the cash deposited into the Disputed Claims Reserve Account on account of such Disputed Claim. To the extent that cash payments made into the Disputed Claims Reserve Account on account of a Disputed Claim ultimately exceed the cash distributable with respect to the Allowed Amount of such Claim, such excess cash will become the property of the Reorganized Debtors. This procedure protects creditors if there is an objection to their claim, despite the contentions made by CIBC.

Under the Business Plan the Debtors will have cash in excess of the Distributions under the Business Plan. The Debtors will hold cash in the Disputed Claims Reserve Account, to the extent of any Disputed Claim.

### 11.7. <u>Distributions.</u>

Notwithstanding any provision of the Plan specifying a date or time for payments or Distributions of consideration hereunder, payments and Distributions in respect of any Claim that at such date or time is disputed, unliquidated, contingent, or unknown as to amount will not be made until a Final Order with respect to an objection, estimation or valuation of such Claim is entered by the Bankruptcy Court, whereupon appropriate Distributions will be made promptly in accordance with the preceding section.

### ARTICLE XII.

### <u>DEFAULT</u>

If the Reorganized Debtors default in the performance of any of their obligations under the Plan, and has not cured such default within a period of twenty-one (21) days after receipt of written notice of default from any party in interest affected by the alleged default, then such party in interest may file a motion with the Bankruptcy Court seeking an order directing the Reorganized Debtors to

JWM/RRL:cc:mw
K:\Common\58944\PI\Docs\Hawaii LLC\Hawaii
DS\DS\March\Stmt v8.docx

29

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED March 27, 2012)

Case 5:08944 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:42:19 Page 35 of 58

perform such obligations.  If the Reorganized Debtors default in the performance of any material obligation under the Plan, any party in interest, including the Office of the United States Trustee, may file a motion with the Bankruptcy Court seeking an order converting the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code.  If such motion is granted, the Plan will terminate, and all then remaining property of the Reorganized Debtors will vest in the Chapter 7 estate.  Such property will be administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code.  Any party in interest, including the Reorganized Debtors, may oppose any such motion.

**ARTICLE XIII.**

**PRESERVATION OF RETAINED CLAIMS AND AVOIDANCE ACTIONS**

**13.1.**    **All Retained Claims and Avoidance Actions and Rights are Preserved.**

The Debtors continue to review transactions and records which process may result in additional claims against persons not yet identified herein, and may also result in other claims against persons identified herein in addition to those identified at this point in time.  Nothing in the Plan will be deemed to constitute a waiver of the powers of the Debtors as debtors in possession under the Bankruptcy Code or the Bankruptcy Rules, and the Debtors and the Reorganized Debtors, as applicable, will retain after Confirmation and after the Effective Date, all powers granted by the Bankruptcy Code and the Bankruptcy Rules to a trustee and debtor in possession, including without limitation, those relating to the recovery of property, avoidance of liens, and objection to, and/or subordination of, Claims, including the claim against CIBC.  Confirmation of the Plan effects no settlement, compromise, waiver or release of any Retained Claim unless the Plan or Order of Confirmation specifically and unambiguously so provides.  The failure of the Plan to refer to any particular Retained Claim is not and will not be construed as a settlement, compromise, waiver, or release of any such Retained Claim.  All Retained Claims are hereby preserved and will continue to remain valid after the Effective Date.  Except as provided in the Plan or the Order of Confirmation, the Debtors and the Reorganized Debtors reserve any and all Claims, Retained Claims, causes of action and rights against any and all third parties, whether such Claims, Retained Claims, causes of action or rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date and/or the date Distributions are made.  The entry of the Confirmation Order will not constitute *res*

JWM/RRL:cc:mw
K:\Common\5894\ PL\Drafts\Disc\#4 DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (DATED March 27, 2012)

*judicata* or otherwise bar, estop or inhibit any actions by the Debtors or the Reorganized Debtors, as applicable, regarding any claims they hold as identified herein or otherwise.

Without limiting the generality of the foregoing, the Retained Claims include, but are not limited to, Avoidance Actions, and all claims identified in the Debtors' Schedules and Statements Of Financial Affairs (as amended or supplemented). Any recovery arising out of or related to an Avoidance Action will be property of the Debtors or Reorganized Debtors as applicable, and will be used to pay Distributions pursuant the Plan.

**ARTICLE XIV.**

**<u>RETENTION OF JURISDICTION</u>**

The Bankruptcy Court will have and retain on and after the Confirmation Date and on and after the Effective Date exclusive jurisdiction of the Bankruptcy Cases: (a) to enforce the provisions, purposes, and intent of the Plan; (b) to determine the allowance or disallowance of Claims; (c) to hear and determine proceedings initiated before or after the Confirmation Date and the Effective Date regarding the prosecution of the Retained Claims or any other rights, claims, causes of action or claims for relief held by the Reorganized Debtors against any party, including the recovery of property and subordination of Claims; (d) to fix and approve allowance of compensation and other Administrative Claims, including, if appropriate, payments to be made in connection with the Plan; (e) to adjudicate controversies arising from the terms of the Plan; (f) to hear and determine any proposed modifications of or amendments to the Plan to the extent permitted by Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; (g) to enforce or interpret the provisions of the Plan, the Order of Confirmation or any order entered by the Bankruptcy Court in the Bankruptcy Cases; (h) to facilitate the consummation of the Plan; (i) to consider such other matters as may be set forth in the Plan or the Order of Confirmation; (j) to hear and determine any Claim of any Person of any nature whatsoever against the Debtors' Professionals arising in, under or related to the Cases; (k) to hear any other matters pertaining to the Plan; and (l) to enter a Final Decree closing the Bankruptcy Cases. If closed, the Bankruptcy Cases may be reopened at any time to facilitate the provisions of Article XI of the Plan.

/ / /

# ARTICLE XV.

## EFFECT OF CONFIRMATION

As of the Confirmation Date, the effect of the Order of Confirmation will be as provided in Section 1141 of the Bankruptcy Code, and as follows:

### 15.1.  Binding Effect of Plan.

The provisions of the confirmed Plan will bind the Debtors, the Reorganized Debtors, any entity acquiring property under or otherwise accepting the benefits of the Plan, and every Creditor and Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Bankruptcy Cases, whether or not the Claim or Interest of such Creditor or Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.

### 15.2.  Full Satisfaction of Claims and Interests.

Except as otherwise provided in the Plan and the Order of Confirmation, the rights afforded in the Plan will constitute full and complete satisfaction and release of all Claims and Interests, including any interest accrued thereon from and after the Petition Date, against the Debtors, the Reorganized Debtors, the Bankruptcy Estates, or any assets or property of the Debtors the Reorganized Debtors and the Bankruptcy Estates.

### 15.3.  Judgments Null and Void.

Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court will be null and void as a determination of the liability of the Debtors or the Reorganized Debtors.

### 15.4.  Injunction.

Under the Plan, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is satisfied or any other right that is terminated under the Bankruptcy Code or the Plan are permanently enjoined from commencing or continuing any action, the employment of process, or other action, to collect, recover or offset any such Claim or debt as a personal liability of the Debtors or Reorganized Debtors to the fullest extent permitted by Bankruptcy Code section 524.

JWM/RRL:cc:mw
\\Company\\...\\API\\Dmcc\\Fawcett-LLC\\Pleadings\\
DS\\DS\\March\\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

### 15.5.    Reservation of Powers.

Nothing in the Plan will be deemed to have constituted a waiver of any powers held by the Debtors as debtors in possession under the Bankruptcy Code, the Bankruptcy Rules or the Local Rules. The Reorganized Debtors will retain all powers granted by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to a trustee or debtor in possession, including those with respect to recovery of property and objections to, and/or subordination of, Claims and Interests.

### 15.6.    Preservation of Insurance.

Nothing in the Plan will diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or any other Person.

## ARTICLE XVI.

## CONDITIONS PRECEDENT

### 16.1.    Conditions Precedent.

The Plan provides that the following is a condition to the Effective Date:

> The Confirmation Order is entered and becomes a final order in form and substance satisfactory to the Debtors. The Confirmation Order will provide, among other things, that the Debtors or Reorganized Debtors, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with or described in the Plan.

### 16.2.    Waiver of Conditions.

The Plan provides that the conditions set forth above may be waived by the Debtors without notice, leave or order of the Bankruptcy Court, or any formal action other than proceeding to confirm or consummate the Plan.

## ARTICLE XVII.

## OTHER PLAN PROVISIONS

### 17.1.    Exemption from Stamp, Transfer and Other Taxes.

To the extent any sale contemplated by the Plan would be subject to a stamp or similar tax, the Debtors will be entitled to exclusion of such sale from any stamp or similar tax to the fullest extent allowed by law.

JWM/RRL:cc:mw
X:\Common\58944\...\P\Disc_Stmt\Disc\LC\Disc
DS\DS\March\Stmt v8.docx

33

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

**17.2. No Admissions.**

Except as specifically provided in the Plan, nothing contained in the Plan may be deemed or construed in any way as an admission by the Debtors or their Bankruptcy Estates with respect to any fact or any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Bankruptcy Estates.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtors with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claim, Interest, or any claims held by the Debtors; or (c) prejudice in any manner the rights of the Debtors or the Bankruptcy Estates in any further proceedings.

**17.3. Revocation of the Plan.**

The Debtors reserve the right to withdraw the Plan before the Confirmation Date.

**17.4. Successors and Assigns.**

The rights, benefits, and obligations of any Entity referred to in the Plan will be binding on, and will inure to the benefit of any heir, executor, administrator, successor, or assign of that Entity.

**17.5. Nonconsensual Confirmation.**

In the event that classes entitled to vote fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a)(8), the Debtors reserve the right to modify the Plan in accordance with Bankruptcy Code Section 1127(a). In accordance with Section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule including amending or modifying it to satisfy the requirements of the Bankruptcy Code.

**17.6. Destruction of Records.**

The Reorganized Debtors may, but are not required to, seek one or more orders of the Bankruptcy Court authorizing the abandonment and destruction of their books and records at such time as the recordkeeping time periods required by applicable law, custom or practice have expired.

/ / /

JWM/RRL:cc:mw
K:\Commun\589243-A\Pl\Discl\Fwd-Pl\LC\Filed\
DS\DS\March\Stmt v8.docx

34

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

### 17.7. Saturday, Sunday and Legal Holiday.

If any payment or act under the Plan should be made or performed on a day that is not a Business Day, then the payment or act may be completed the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### 17.8. Plan Interpretation.

The headings contained in the Plan are for convenience of reference only and do not limit or otherwise affect in any way the meaning or interpretation of the Plan. All references in the Plan to the singular will be construed to include references to the plural and vice versa. All references in the Plan to any one of the masculine, feminine or neuter genders will be deemed to include references to both other such genders. References to the Debtors will also include the Reorganized Debtors (or vice versa) as the context requires. All references in the Plan to a Section or an Article mean the appropriately numbered Section or Article of the Plan. Whenever the Plan uses the term "including," such reference is deemed to mean "including, but not limited to."

### 17.9. Setoff/Recoupment.

Nothing contained in the Plan constitutes a waiver or release by the Debtors or Reorganized Debtors of any right of setoff or recoupment the Debtors may have against any Creditor.

### 17.10. Notices.

All notices required or permitted to be made in accordance with the Plan must be in writing and delivered personally or by first class mail, as follows:

If to the Reorganized Debtors:

> Community Towers I-IV, LLC
> Attn: John L. Feece
> 111 W. Saint John Street, Suite 705
> San Jose, CA 95113

With a copy to:

> John Walshe Murray
> Murray & Murray
> A Professional Corporation
> 19400 Stevens Creek Boulevard, Suite 200
> Cupertino, CA 95014

If notice is to be provided to a holder of an Allowed Claim or Allowed Interest, at the address

JWM/RRL:cc:mw
K:\Commun\...\A\Pl\Corp\Towers\LC\Filed\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

prescribed by Section 6.4.2 in the Plan. Notices will be deemed given when delivered or three days after deposit in the United States mail. Any Entity may change the address at which such entity is to receive notices under the Plan by filing a written notice with the Bankruptcy Court and serving such notice on the Reorganized Debtors and their counsel.

**17.11.  Reservation of Rights.**

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, will: (a) be or be deemed to be an admission against interest; and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have: (i) against any other party in interest; or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without these Bankruptcy Cases involving the Debtors.

**17.12.  Exhibits.**

All exhibits attached to the Plan are incorporated into the Plan by reference. All exhibits attached to the Disclosure Statement hereby are incorporated into the Disclosure Statement by reference.

## ARTICLE XVIII.

## RISK FACTORS

Holders of impaired Claims entitled to vote on the Plan should read and consider carefully the factors set forth below, as well as other information set forth in this Disclosure Statement and the documents delivered together herewith and/or incorporated by reference herein prior to voting to accept or reject the Plan.

**18.1.  Additional Claims Risks.**

The Administrative Claims Bar Date will occur after Confirmation and the Allowed amount of such Claims will increase the overall liabilities of the Reorganized Debtors and therefore the cash available for holders of Claims. Additionally, if the Reorganized Debtors are unsuccessful in their

JWM/RRL:cc:mw
\\\\Commun\58944\APl\Drng\Hwg\\\LC\\Filed\
DS\DS\March\Stmt v8.docx

36

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

Case 5:89-44 Doc# 123 Filed: 03/27/12 Entered: 03/27/12 16:49:19 Page 42 of 58

objections to Disputed and contingent Claims that have been filed against the Debtors, the total liabilities will be greater than expected, and there may be less cash available for Distribution to holders of Claims.

### 18.2. <u>Estimation of Claims and Distribution Risks.</u>

While the Debtors have endeavored to project what it believes are likely to be the Distributions, if any, to be made to parties holding Allowed Claims, there can be no certainty that the Debtors' projections will be accurate, and that Creditors will receive the Distributions described in the Plan. The Debtors' projections will necessarily be affected by, among other things: (1) recoveries by the Debtors on the Retained Claims; (2) the profitable operation of the Subject Property; (3) the outcome of objections to Claims, including the CIBC Action and objection to the CIBC claims; and (4) the cost and expenses of such actions, if the Debtors ultimately pursue the CIBC Action.

### 18.3. <u>Bankruptcy Risks.</u>

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

If the Debtors receive votes in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, to confirm the Plan. In the event the Debtors do not receive sufficient votes, the Debtors may seek to accomplish an alternative Chapter 11 plan. There can be no assurance however that the terms of any such alternative Chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the current proposed Plan.

Even if all classes of Claims and Interests that are entitled to vote to accept the Plan, the Plan might not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for Confirmation. The Debtors believe that the Plan satisfies all of the requirements for Confirmation of a plan under Section 1129 however there can be no assurance that

JWM/RRL:cc:mw
X:\Common\58944\PLDG\DS\Howto\LC\Finale\
DS\DS\March\Stmt v8.docx

37

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

the Bankruptcy Court would reach the same conclusion.

There is a risk that the interest rate proposed by the Debtors relative to the claim of CIBC will not be approved by the Bankruptcy Court, or that the interest rate could increase over time. The Class 7 creditors have agreed that, in the event of any monthly shortfall in cash to make the payments, they would defer any payments required to be made. However, if the interest rate increases to a level above 5.75% there is a risk that the Debtors would not be able to grow revenue and/or eliminate expenses sufficiently to allow all payments to be made, even if such deferral occurs.

The Debtors anticipate that it will be successful in the CIBC Action and objection to the CIBC claims. However, in the event that the Debtors are not successful, the Debtors may face adverse consequences as a result of this litigation.

### ARTICLE XIX.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**19.1.** __Introduction.__

THE FOLLOWING IS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN THAT MAY BE MATERIAL TO CREDITORS AND INTEREST HOLDERS (EACH A "**HOLDER**" AS REFERRED TO IN THIS ARTICLE) AND THE DEBTORS. THIS DISCUSSION IS INCLUDED FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT INTENDED TO BE, AND IS NOT, LEGAL OR TAX ADVICE TO ANY PARTICULAR HOLDER. THIS SUMMARY IS BASED ON THE CURRENT PROVISIONS OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**IRC**"), THE INCOME TAX REGULATIONS (THE "**REGULATIONS**") AND OTHER LEGAL AUTHORITIES, ALL OF WHICH ARE SUBJECT TO CHANGE OR DIFFERING INTERPRETATIONS, POSSIBLY WITH RETROACTIVE EFFECT. NO RULINGS FROM THE INTERNAL REVENUE SERVICE (THE "**IRS**") OR OPINIONS OF COUNSEL HAVE BEEN OR WILL BE REQUESTED CONCERNING THE MATTERS DISCUSSED BELOW. THE TAX CONSEQUENCES SET FORTH IN THE FOLLOWING DISCUSSION ARE NOT BINDING ON THE IRS OR THE COURTS, AND NO ASSURANCE CAN BE GIVEN THAT CONTRARY POSITIONS WILL NOT BE SUCCESSFULLY ASSERTED BY THE IRS

JWM/RRL:cc:mw
K:\Common\58944\AP\Drye\Hawes\LC\Filed\
DS\DS\March\Stmt v8.docx

38

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (March 27, 2012)

OR ADOPTED BY A COURT.

THIS DISCUSSION DOES NOT APPLY TO HOLDERS THAT ARE NOT "U.S. PERSONS" (AS SUCH PHRASE IS DEFINED IN THE IRC) AND DOES NOT PURPORT TO ADDRESS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTORS OR TO SUCH HOLDERS IN LIGHT OF THEIR INDIVIDUAL CIRCUMSTANCES.

THE FOLLOWING DISCUSSION DOES NOT APPLY TO CERTAIN HOLDERS WHO, DUE TO THEIR PARTICULAR CIRCUMSTANCES, MAY BE SUBJECT TO SPECIAL RULES. THOSE HOLDERS INCLUDE HOLDERS WHO ARE DEALERS IN SECURITIES, FINANCIAL INSTITUTIONS, INSURANCE COMPANIES, TAX-EXEMPT ORGANIZATIONS, GOVERNMENTAL AGENCIES, BANKS, PASS-THROUGH ENTITIES, TRADERS IN SECURITIES, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES AND FOREIGN PERSONS.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM.

**19.2. <u>IRS CIRCULAR 230.</u>**

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, HOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN BY DEBTORS IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR

JWM/RRL:cc:mw
K:\Common\58944\P\Ds\ds #3\DS\DLC\Filed
DS\DS\March\Stmt v8.docx

39

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

EACH HOLDER SHOULD CONSULT THE HOLDER'S OWN TAX ADVISOR TO DETERMINE THE HOLDER'S PARTICULAR UNITED STATES FEDERAL INCOME TAX CONSEQUENCES AND OTHER TAX CONSEQUENCES TO THE HOLDER OF THE PLAN, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX LAWS AND THE EFFECT OF ANY CHANGES IN SUCH LAWS.

### 19.3.   Consequences to the Debtors.

As limited liability companies with one or two different members that has not elected to be taxed as a corporation, the Debtors are regarded to be separate entities from each of their members for United States federal income tax purposes.  Accordingly, any ordinary income/loss and capital gain/loss realized by the Debtors will be considered, for United States federal income tax purposes to be realized by the Holders of the membership units in the Debtors.

### 19.4.   Consequences to Interest Holders.

A Holder of all of the units of a limited liability company such as the Debtors that have not filed an election to be taxed as a corporation for federal income tax purposes is considered to realize the ordinary income/loss and capital gain/loss realized by the limited liability company in accordance with the Holder's method of accounting for federal income tax purposes. Such ordinary income/loss and capital gain/loss will be realized and reportable by the Holder regardless of whether any distribution is received by the Holder.  Thus, the Holder (or its owners) may be required to recognize income for United States federal income tax purposes as a result of a sale of assets of the Debtors even if no cash or other property is distributed by the Debtors to the Unit Holder. The ordinary income/loss and capital gain/loss may be taxable to the Holder, or taxable directly to the owners of the Holder, depending upon whether the Holder is a taxable entity (such as a corporation), a pass through entity (such as a partnership or entity taxable as a partnership) or an entity disregarded from its owner for United States federal income tax purposes.

Section 165(g) of the IRC permits a "worthless security deduction" for any security that is a capital asset that becomes worthless within the taxable year.  The rules governing the timing and amount of worthless security deductions place considerable emphasis on the facts and circumstances

JWM/RRL:cc:mw
\\...\Continu\5894-4\Pl\Disc Stmt\...LC\Final\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (March 27, 2012)

of the Holder, the issuer, and the instrument with respect to which the deduction is claimed. Holders are therefore urged to consult their own tax advisors with respect to their ability to take such deductions.

### 19.5. Consequences to Creditors Generally.

Generally, any amount received by a Creditor in satisfaction of an Allowed Claim, to the extent such amount constitutes "gross income" within the meaning of Section 61 of the Code, will be taxable to the Creditor in accordance with the Creditor's method of accounting, if not previously included in the Creditor's gross income. This would include, for example, payments of interest, rent or compensation for services. If a Creditor previously reported as taxable income, their respective Allowed Claim then the unpaid portion of the previously reported taxable income would be deductible as a business bad debt. A Creditor may be subject to regular income tax withholding or backup withholding, as described below, with respect to such payments. Creditors should consult with their own tax advisors as to the character and timing of recognition of any gain, loss or deduction they are planning to include in their tax return.

Any amount received by a Creditor in satisfaction of accrued interest on a Claim will be taxable to the Creditor as interest income, if not previously included in the Creditor's gross income. A Creditor may be subject to backup withholding, as described below, with respect to such interest payments.

Each Creditor who receives cash in partial or complete satisfaction of the Creditor's Claim will recognize gain or loss equal to the difference between the amount of cash received and the Creditor's tax basis in the Creditor's Claim. Gain may be recognized, for example, by a Creditor who acquired a Claim at a discount or who previously reported a bad debt deduction or worthless security loss with respect to all or a portion of the Claim. GENERALLY, ANY GAIN RECOGNIZED WILL BE CONSIDERED CAPITAL GAIN if the Claim is held as a capital asset, and GENERALLY will be ordinary income if the Claim is not held as a capital asset. Capital gain will generally be long-term capital gain if the Claim has been held for more than 12 months. Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN.

JWM/RRL:cc:mw
K:\Common\58944\API\Plan\Disc. Stmt\DS LC\Hrng
DS\DS\March\Stmt v8.docx
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

Case 8:09-bk-13935-RK Doc 123 Filed 03/27/12 Entered 03/27/12 16:42:49 Desc Main Document Page 47 of 58

Any loss will GENERALLY be a capital loss if the Claim is a capital asset and if the payment is deemed a "retirement" of the Claim within the meaning of Section 1271 of the IRC. A Creditor who receives no payment with respect to a Claim (and a Creditor who receives a payment which is not a "retirement" and incurs a loss) should generally be able to claim a bad debt deduction to the extent of the Creditor's tax basis in the Claim (or, in the case of a Creditor receiving a payment, the excess of the tax basis in the Claim over the payment received). A Creditor who holds a Claim as a non-business bad debt and who is not a corporate Creditor will generally only be able to claim a short-term capital loss with respect to such Claim. A Creditor who holds a Claim which is a "security" as defined in Section 165(g) of the IRC will generally only be able to claim a capital loss rather than a bad debt deduction. Limitations apply to the ability to deduct capital losses. <u>Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN</u>.

Because a loss is allowed only for the tax year in which it is sustained, a Creditor that claims a loss or deduction in the wrong tax year risks losing the benefit of such loss or deduction in its entirety. <u>Creditors should consult with their own tax advisors as to the character and timing of recognition of ANY gain, loss or deduction THEY ARE PLANNING TO INCLUDE IN THEIR TAX RETURN</u>.

**19.6.** <u>**Backup Withholding.**</u>

United States federal income tax laws require that, to avoid backup withholding with respect to "reportable payments" (in an amount equal to 28%), a Creditor or Holder must: (a) provide the Debtors with its correct taxpayer identification number ("<u>**TIN**</u>") on IRS Form W-9 and certify as to their eligibility for exemption from backup withholding; or (b) establish a basis for exemption from backup withholding on an appropriate IRS Form W-8 (including a Form W-8BEN, W-8ECI, W-8EXP and W-8IMY) or IRS Form W-9, as applicable. Exempt Creditors and Holders (including, among others, all corporations and certain foreign individuals) are not subject to backup withholding and reporting requirements. If withholding is made and results in an overpayment of taxes, a refund may be obtained.

THE FEDERAL TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE

JWM/RRL:cc:mw
x:\Common\589444\PI\Disc (Fwd LC)\Filed
DS\DS\March\Stmt v8.docx

FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

**ARTICLE XX.**

**VOTING PROCEDURES**

With the Plan and Disclosure Statement, Creditors entitled to vote on the Plan will receive a Ballot and instructions for voting on the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement and the Plan.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims, including Disputed Claims to which objections may be filed. Ballots have not been sent to Class 1, Class 3, Class 4, and Class 8, for the reasons set forth hereinafter. Only holders of Claims allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Bankruptcy Rule 3018, whose Claims are in those classes of Claims that are "impaired" (as defined in Section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan.

**20.1. Definition of Impairment.**

Under Section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a Plan of Liquidation unless, with respect to each claim or equity interest of such class, the plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated

JWM/RRL:cc:mw
K:\Commun58944\APl\Dng\Hawer\BLC\Filed\
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
LIQUIDATION (March 27, 2012)

payment of such claim or interest after the occurrence of a default-

        (A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured;

        (B)    reinstates the maturity of such claim or interest as such maturity existed before such default;

        (C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law;

        (D)    if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

        (E)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

Classes of Claims that are not impaired are conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan. Class 1, Class 3, Class 4 and Class 8 Interest Holders are not impaired under the Plan and are therefore conclusively presumed to have accepted the Plan. Accordingly, acceptances with respect to members of Class 1, Class 3, Class 4 and Class 8 Interest Holders are not being solicited and no Ballots need be returned.

Acceptances of the Plan are therefore being solicited only from members of Classes 2, 5, 6 and 7. Consequently, only holders of Classes 2, 5, 6 and 7 Claims need return their Ballots.

The Bankruptcy Court will hold a hearing on the Confirmation of the Plan commencing on the date and at the time and place set forth in the Order Approving Disclosure Statement. The

JWM/RRL:cc:mw
K:\Commor\5894-1\Pl\Disc_\Fwg\PLC\Filed\
DS\DS\March\Stmt v8.docx

hearing may be adjourned from time to time without notice except as given in open court.

If a party in interest is a member of more than one class, it will receive a Ballot for each class. IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH CLASS. CREDITORS WISHING TO VOTE ON THE PLAN SHOULD COMPLETE THE BALLOT PROVIDED AND RETURN IT NO LATER THAN MAY 21, 2012 TO:

**Murray & Murray**
**A Professional Corporation**
**Attn:  Rachel Ragni Larrenaga**
**19400 Stevens Creek Boulevard, Suite 200**
**Cupertino, California 95014-2548**
**Facsimile: (650) 852-9244**
**Email: rragni@murraylaw.com**

IF YOUR BALLOT IS NOT RETURNED BY MAY 21, 2012, (the "**VOTING DEADLINE**") IT MAY NOT BE CONSIDERED.  BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED WILL NOT BE CONSIDERED.  BALLOTS WHICH ARE EXECUTED BUT WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL BE CONSIDERED AS ACCEPTING THE PLAN.

As the holder of a Claim against the Debtors, your acceptance of the Plan is important.  The Bankruptcy Code defines acceptance of a plan by a class of Creditors as acceptance by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan, i.e., acceptance takes place only if two-thirds (2/3) in amount and a majority in number of the Creditors voting cast their ballots in favor of acceptance.

If any class of Claims does not accept the Plan, the Debtors may elect to seek Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  Confirmation under Section 1129(b) can, in appropriate circumstances, take place notwithstanding the rejection of, or objection to, the plan by the holders of claims and interests.  If required, the Plan may be modified at or prior to the Confirmation Hearing to permit Bankruptcy Court approval under Section 1129(b). If the Plan is not confirmed, the Bankruptcy Court may order the Bankruptcy Cases dismissed, or converted to cases

JWM/RRL:cc:mw
K:\Comm\M5894A\Pl\Disc Stmt\WG DS LC\Final
DS\DS\March\Stmt v8.docx

45

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION DATED MARCH 27, 2012)

Case: 58944   Doc# 123   Filed: 03/27/12   Entered: 03/27/12 16:43:19   Page 51 of
58

under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

After carefully reviewing the Plan and Disclosure Statement, indicate your vote on the enclosed Ballot and return it in the envelope provided to the address stated above. Accordingly, you are urged to return your signed and completed Ballot promptly. Ballots not received by the Voting Deadline and unsigned Ballots will not be counted. Any executed Ballots that are timely received, but which do not indicate either an acceptance or rejection of the Plan, will be deemed to constitute an acceptance of the plan.

If you are a Holder of a Claim in Class 2, Class 5, Class 6 or Class 7 and: (a) did not receive a Ballot; (b) received a damaged or illegible Ballot; or (c) lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement, any of the Exhibits hereto, the Plan, or the voting procedures in respect thereof, please contact Murray & Murray, A Professional Corporation, Attn: Rachel Ragni Larrenaga, 19400 Stevens Creek Blvd, Suite 200 Cupertino, California 95014; Telephone (650) 852-9000; Facsimile (650) 852-9244; email rragni@murraylaw.com.

THE DEBTORS, AS PROPONENT OF THE PLAN, RECOMMEND THAT THE HOLDERS OF CLAIMS IN CLASSES 2, 5, 6, AND 7 VOTE TO ACCEPT THE PLAN.

A summary of the treatment of the various classes of Claims and Interests is set forth above.

### ARTICLE XXI.

### CONFIRMATION PROCEDURES; OBJECTIONS TO CONFIRMATION

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**21.1.  Confirmation Hearing.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan (the "**Confirmation Hearing**"). The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any postponement thereof. Section 1128(b) provides that any party in interest may object to Confirmation of the Plan. Any objection to Confirmation must be made in writing and filed with the Bankruptcy Court and served on the

JWM/RRL:cc:mw
K:\Common\58944\API\Disc. Stmt\Ds #4 LLC\Final
DS\DS\March\Stmt v8.docx

46

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (DATED MARCH 27, 2012)

following parties, together with a certificate of service:

> John Walshe Murray
> Murray & Murray
> A Professional Corporation
> 19400 Stevens Creek Boulevard, Suite 200
> Cupertino, California 95014-2548
> Facsimile: (650) 852-9244
>
> United States Trustee
> Emily Keller
> 280 South First Street, Room 268
> San Jose, California 95113-0002
> Facsimile: (408) 535-5532

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.

**21.2.** **Requirements for Confirmation of the Plan.**

At the Confirmation Hearing, the Bankruptcy Court must confirm the Plan if it determines that all of the requirements of Section 1129 of the Bankruptcy Code have been satisfied. The applicable requirements are as follows:

(a) The Plan complies with the applicable provisions of the Bankruptcy Code;

(b) The Debtors have complied with the applicable provisions of the Bankruptcy Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or is subject to the approval of, the Court as reasonable;

(e) The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtor, or a successor to the Debtors under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy; and the Debtors have disclosed the identity of any insider that will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insider;

(f) With respect to each class of impaired Claims or Interests, each holder of a Claim or

JWM/RRL:cc:mw
\\K\Common\589443\API\Ders\Draws\123\LC\Final
DS\DS\March\Stmt v8.docx

47

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

Case: 58943   Doc# 123   Filed: 03/27/12   Entered: 03/27/12 16:48:19   Page 53 of
58

Interest of such class either (a) has accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code;

(g)     Subject to the "cramdown" provisions of the Bankruptcy Code discussed in Section 21.4 below, each class of Claims or Interest has accepted the Plan;

(h)     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that incurred, Allowed Administrative Claims will be paid in full on the Effective Date of the Plan and that Allowed Tax Claims will be paid in full on the Effective Date;

(i)     If a class of Claims is impaired under the Plan, at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class;

(j)     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan;

(k)     All fees payable under section 1930 of title 28, as determined by the Court at the Confirmation Hearing of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan; and

(l)     All transfers of property of the Plan are to be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

### 21.3.    **Compliance with Confirmation Requirements.**

The Debtors believe that all of the foregoing requirements have been or will be met prior to the Confirmation Hearing.  Specifically, the Debtors believe:  (1) the Plan is in the best interests of Creditors, in that holders of all Allowed Claims will receive payments under the Plan having a present value as of the Effective Date of the Plan in amounts not less than the amounts likely to be received if the Debtors were liquidated in cases under Chapter 7 of the Bankruptcy Code; (2) the

JWM/RRL:cc:mw
K:\Common\58944-A\PL\Ds\_Draft #3 w633 LC\Hearing
DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (DATED MARCH 27, 2012)

Plan will be accepted by sufficient votes in each impaired class or may be confirmed under the cramdown standards of Section 1129(b) even if sufficient votes are not received; and (3) the Plan is feasible in that the Debtors will have sufficient cash available at all times.

### 21.4.  <u>Cramdown.</u>

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."  A plan "does not discriminate unfairly" against a class if the plan allocates value to that class in a manner consistent with the treatment afforded to other classes with similar legal claims against the Debtors. "Fair and equitable" has different meanings for the holders of secured and unsecured claims, and for the holders of interests.

With respect to an unsecured claim, "fair and equitable" means either: (a) each impaired unsecured creditor receives or retains property of a value equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

With respect to a class of interests, "fair and equitable" means either: (a) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

In the event that one or more classes of impaired Claims or Interests rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims or Interests.

## ARTICLE XXII.

## <u>BEST INTERESTS TEST</u>

The Bankruptcy Court must independently determine that the Plan is in the best interest of all

JWM/RRL:cc:mw
\\Compmu\538944\ApI\Cmpu\Tfwcz:LC\Filed:
DS\DS\March\Stmt v8.docx

49

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

classes of Creditors and Interests. The "best interest" test requires that the Plan provide to each dissenting member of each impaired class a recovery that has a present value at least equal to the present value of the distribution which each such Creditor or Interest Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In performing this analysis, the Bankruptcy Court must determine the amount that would be generated from a Chapter 7 liquidation of the Debtors' assets after deducting the cost of liquidation. The cost of liquidation would include the Trustee's commissions, the Trustee's expenses, fees for counsel and other professionals retained by the Trustee and Administrative Claims. In addition to liquidating the Debtors' assets, the Trustee must also decide whether to litigate certain claims and possibly other litigation matters. Generally, no distribution is made in a Chapter 7 case until all assets of the Bankruptcy Estates and all claims have been liquidated, a process that often can take many months and sometimes years. This delay could further impair the value of any distribution made to holders of Claims under a Chapter 7 liquidation.

In these cases, the Debtors believe that the Subject Property will remain valuable only if the Debtors are able to continue the profitable operation of the commercial property. If the cases were converted to cases under Chapter 7, the Debtors believe that CIBC would commence foreclosure proceedings and there would be no assets for Pre-Paid Rent Claims, Lease Deposit Claims, or General Unsecured Claims at all.

On the other hand, barring unforeseen Claims, Confirmation of the Plan will enable the Reorganized Debtors to timely distribute proceeds. By continuing to operate their business and distribute the proceeds in accordance with the Plan, the Debtors believe that a higher return can be realized for the Creditors.

The operations of the Subject Property require attention to matters by management familiar with the Debtors in order to maximize the value of the Estates and return to Creditors. The profits generated from the operation of the Subject Property will be distributed in accordance with the priority scheme set forth in the Bankruptcy Code. The Debtors, therefore, believe that the distributions made pursuant to the Plan will achieve at least the same results (or better) as would occur in the conversion of the Cases to Chapter 7. The result can be achieved without the

JWM/RRL:cc:mw
\\Comput...589444\API\Drop?#w623LC\Filed\
DS\DS\March\Stmt v8.docx

50

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION (Dated March 27, 2012)

duplication of administrative costs that would result from the appointment of a Chapter 7 Trustee and the employment of additional professional persons, and the delay attendant with the administration of the assets in Chapter 7.

Holders of General Unsecured Claims who are impaired under the Plan, therefore, are receiving, at a minimum, the equivalent of what they would receive if liquidation were completed in Chapter 7 cases. The Debtors believe that the Creditors will fare much better should reorganization be achieved in Chapter 11 under the Plan.

## ARTICLE XXIII.

## POST-CONFIRMATION MANAGEMENT

On and after the Effective Date, John L. Feece shall serve as the Reorganized Debtors' Chief Executive Officer. The Subject Property will continue to be managed by Community Management which will collect its management fee.

No decision has been made by the Debtors regarding post-Confirmation (a) payments to Mr. Feece or (b) distributions to Equity Security Holders. As long as the Debtors are current under the terms of the Plan and surplus cash exists, the Debtors may compensate Mr. Feece for his efforts or make distributions to Equity Security Holders.

Dated:      March 27, 2012

COMMUNITY TOWERS I, LLC
A DELAWARE LIMITED LIABILITY COMPANY

By:  */s/ John L. Feece*
        John L. Feece
        Responsible Individual

Dated:      March 27, 2012

COMMUNITY TOWERS II, LLC
A DELAWARE LIMITED LIABILITY COMPANY

By:  */s/ John L. Feece*
        John L. Feece
        Responsible Individual

Dated:      March 27, 2012

COMMUNITY TOWERS III, LLC
A DELAWARE LIMITED LIABILITY COMPANY

By:  */s/ John L. Feece*
        John L. Feece
        Responsible Individual

JWM/RRL:cc:mw
X:\Community Towers\P\Doc#\Twrs LLC\Unified DS\DS\March\Stmt v8.docx

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION (Dated March 27, 2012)

Case: 10-58944    Doc# 123    Filed: 03/27/12    Entered: 03/27/12 16:42:19    Page 57 of 58

Dated:        March 27, 2012

COMMUNITY TOWERS IV, LLC
A DELAWARE LIMITED LIABILITY COMPANY

By:    /s/ John L. Feece
       John L. Feece
       Responsible Individual

MURRAY & MURRAY,
A PROFESSIONAL CORPORATION

By:    /s/ John Walshe Murray
       John Walshe Murray
       Attorneys for Debtor

JWM/RRL:cc:mw
K:\Community\P\Comm Towers LLC\Filed
DS\DS\March\Stmt v8.docx

52

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF
REORGANIZATION DATED (March 27, 2012)

Case: 58944   Doc# 123   Filed: 03/27/12   Entered: 03/27/12 16:42:19   Page 58 of
58