```
 1  JOHN WALSHE MURRAY (074823)
    ROBERT A. FRANKLIN (091653)
 2  JENNY LYNN FOUNTAIN (226241)
    MURRAY & MURRAY
 3  A Professional Corporation
    19400 Stevens Creek Blvd., Suite 200
 4  Cupertino, CA 95014-2548
    Telephone: (650) 852-9000; (408) 907-9200
 5  Facsimile: (650) 852-9244
    Email: jwmurray@murraylaw.com
 6  Email: rfranklin@murraylaw.com
    Email: jlfountain@murraylaw.com
 7
 8  Attorneys for Debtors
 9              UNITED STATES BANKRUPTCY COURT
10              NORTHERN DISTRICT OF CALIFORNIA
11                    SAN JOSE DIVISION
```

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Cases Jointly Administered |
| **COMMUNITY TOWERS I, LLC,** | ) | Case No. 11-58944-SLJ-11 |
| A Delaware Limited Liability Company, | ) | |
| Employer Tax I.D. No. 75-2456729, | ) | |
| **COMMUNITY TOWERS II, LLC,** | ) | Case No. 11-58945-SLJ-11 |
| A Delaware Limited Liability Company, | ) | |
| Employer Tax I.D. No. 75-2560662, | ) | |
| **COMMUNITY TOWERS III, LLC,** | ) | Case No. 11-58948-SLJ-11 |
| A Delaware Limited Liability Company, | ) | |
| Employer Tax I.D. No. 32-0065635, | ) | |
| **COMMUNITY TOWERS IV, LLC,** | ) | Case No. 11-58949-SLJ-11 |
| A Delaware Limited Liability Company, | ) | |
| Employer Tax I.D. No. 77-0379075, | ) | Date: August 29, 2012 |
| | ) | Time: 2:00 p.m. |
| Debtor(s). | ) | Place: United States Bankruptcy Court |
| | ) | 280 S. First Street, Room 3035 |
| 111 W. Saint John Street, Suite 705 | ) | San Jose, CA 95113 |
| San Jose, California 95113 | ) | Judge: Honorable Stephen L. Johnson |

EXHIBIT "A" TO

DECLARATION JAMES F. MARTIN IN SUPPORT OF
APPLICATION FOR ORDER AUTHORIZING AND APPROVING
EMPLOYMENT OF FINANCIAL ADVISOR AND AUTHORIZING REIMBURSEMENT
(ACM CAPITAL PARTNERS, LLC)



June 12, 2012

Mr. John L. Feece
c/o Sierra Management
111 W. Saint John Street
Suite 705
San Jose, CA 95113

Re:

Community Towers I, LLC;
Community Towers II, LLC;
Community Towers III, LLC;
Community Towers IV, LLC

Dear John:

Please allow this letter and the Standard Terms and Conditions attached hereto (collectively, the "Engagement Letter") to confirm the understanding and agreement between ACM Capital Partners, LLC, a Florida Limited Liability Company ("ACM") and Community Towers I, LLC, a Delaware Limited Liability Company; Community Towers II, LLC, a Delaware Limited Liability Company; Community Towers III, LLC, a Delaware Limited Liability Company; and Community Towers IV, LLC, a Delaware Limited Liability Company (together known as the "Companies") as to the terms of our engagement, including our mutual understanding and agreement regarding the services to be provided and the manner in which we bill and are paid for these services.

<u>Scope of Services</u>

1. We will perform the following consulting and financial advisory services at the direction of the Companies:

    a. Phase I
        i. Assist the Companies analyze and review their current loan with CIBC (the "Bank");
        ii. Assist the Companies analyze and review their current collateral and debt position including all net assets available for a potential debt refinancing;
        iii. Attend in person and otherwise participate in all discussions regarding the Companies' debt with any and all Bank personnel.

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851  F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM

Case: 11-58944   Doc# 162-2   Filed: 07/31/12   Entered: 07/31/12 11:58:58   Page 2 of 10



  iv. Develop a written restructuring plan to be used for the purpose of restructuring the Companies' existing debt with the Bank.
 b. Phase II
  i. Source new debt financing for the Companies.
  ii. Negotiate settlement with the Bank to satisfy all claims in full.

<u>Fee and Billing Arrangements</u>

1. **Phase I** – Our fees will be based on the hours actually expended by assigned staff members at our hourly billing rates. The standard hourly rate for this assignment will be a blended rate of $265.

   **Phase II** - In the event that (a) the Companies or any affiliate thereof consummates a debt financing transaction with any person or entity first introduced by us to the Companies and a settlement of the existing debt with the Bank under terms and conditions substantially similar to proposals negotiated with the Bank (a "Transaction") and (b) the consummation of such Transaction (or committed financing with respect thereto) occurs within twelve months from the execution date of this engagement letter (the "Engagement Date"), the Companies shall pay to ACM a finder's fee (a "Finder's Fee") equal to the lesser of 3.75% of the aggregate principal amount of any new or restructured financing made available to the Companies or any affiliate thereof in such Transaction, or $600,000. he Companies (or their designee) shall pay the Finder's Fee and any Settlement Fee to ACM in cash on the closing date the Transaction is consummated.

2. **Retainer** - The Companies shall pay ACM a $15,000 retainer at the inception of the project. The retainer shall be applied to ACM's final invoice.

3. In addition to the fees earned by ACM, the Companies agree to reimburse ACM for any actual out-of-pocket expenses incurred in the provision of services hereunder which were pre-approved in writing by the Companies, including without limitation, pre-approved travel, photocopying, delivery services, postage, data room charges, and other related out of pocket expenses. We will endeavor to keep our fees as low as possible.

4. Except as otherwise expressly set forth in this Engagement Letter, our fees are not contingent upon the financial position and results of operations of the Companies or any other Companies' initiatives, goals or projections results of this engagement. We cannot guarantee results or final developments in this matter.

5. The terms and conditions of this Engagement Letter are subject to the approval of the Bankruptcy Court having jurisdiction of the Companies.

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



6. Invoices will be presented bi-weekly and are due within thirty (30) days of presentation or, if later, upon approval of such invoices by the Bankruptcy Court if such approval is required. All invoices will have the standard eighth of an hour billing increment as required by the Federal Bankruptcy Courts.

7. Either party may terminate this agreement upon written notice at any time, subject to the Companies' payment of all fees for services performed and costs incurred through the date of termination. Other than the Companies' obligation for payment of fees for services performed and costs incurred through the date of termination, neither party shall have any further obligations hereunder following the date of termination.

8. In the event that you disagree with or question any amount due under an invoice, you agree that you shall communicate such disagreement to us, in writing, within thirty (30) days of the invoice date. Any claim not made within that period shall be deemed waived.

9. The Companies acknowledge and agree that they will not, directly or indirectly, solicit, engage, permit to be engaged or hire any ACM professional to provide services for the Company independently, as an employee of the Companies or as an employee of a service provider other than ACM for a period of two years from the execution date of this Engagement Letter without the written consent of ACM. If, prior to written consent by ACM, any ACM professional is hired or utilized by the Companies, the Companies shall pay ACM the greater of $75,000 or 50% of such professional's annual salary.

Once again, thank you for allowing ACM to assist you in this matter. ACM prides itself on working side by side with its clients in helping them achieve their objectives. If this Engagement Letter conforms to your understanding of our agreement, please sign it and return it electronically. Your signature below will confirm that you have reviewed and agree to the terms. If you have any questions please call me at 305.978.0720.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



Very truly yours,

James F. Martin
Managing Partner
ACM Capital Partners, LLC

**Agreed to and accepted:**

Community Towers I, LLC
By: *[signature]*

Community Towers II, LLC
By: *[signature]*

Community Towers III, LLC
By: *[signature]*

Community Towers IV, LLC
By: *[signature]*

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



**ACM Capital Partners, LLC**
**Standard Terms and Conditions for Advisory Services**

1. **Services** - It is understood and agreed that ACM's services may include advice and recommendations, but all decisions in connection with the use of such advice and recommendations shall be the responsibility of, and made by, the Client. References herein to Client shall refer collectively to the addressee(s) of the Engagement Letter to which these Terms and Conditions are attached. The Engagement Letter and these Terms and Conditions shall be collectively referred to as the "Agreement."

2. **Payment of Invoices** - Client agrees to pay properly submitted invoices as indicated in the Engagement Letter. ACM shall have the right to halt or terminate entirely its services under the Agreement until payment is received on past due invoices. All fees, charges and other amounts payable to ACM under the Agreement do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on ACM's net income or taxes arising from the employment or independent contractor relationship between ACM and its personnel. In the event that Client disagrees with or questions any amount due under an invoice, Client agrees that it shall communicate such disagreement or questions to ACM in writing, within thirty (30) days of the invoice date and shall waive the right to do so if such disagreement or questions are not communicated to ACM in writing within that time period.

3. **Term** - Unless terminated sooner in accordance with the terms set forth in the Engagement Letter, the Agreement shall terminate on the completion of ACM's service thereunder.

4. **Ownership** –

    (a) <u>ACM Property</u> – ACM has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Agreement, employ, provide, modify, create, acquire or otherwise obtain rights in, various concepts, ideas, methods, methodologies, procedures, processes, know-how, and techniques, models, templates; software, user interfaces and screen designs; general purpose consulting and software tools, utilities and routines; and logic, coherence and methods or operation of systems (collectively "ACM Property"). ACM retains all ownership rights in the ACM Property. ACM acknowledges that ACM Property shall not include any of Client's confidential information or tangible or intangible property, and ACM shall have no ownership rights in such property

    (b) <u>Ownership of Deliverable</u> – All documents, material or information of any kind created by ACM in connection with this engagement, including, without limitation, any written reports, memoranda, work papers or status summaries, are work product (collectively, "Work Product"). All Work Product shall be owned and maintained by ACM. It is agreed that all Work Product and all other working papers and other documents prepared by ACM pursuant to this engagement will be maintained as confidential materials and will not be disclosed to third parties without the Client's consent, except as may be required by law, regulation, or judicial or administrative

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851  F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



processes. ACM agrees to provide copies of all Work Product to Client. ACM agrees to notify the Client promptly of any of the following events: (a) a request by anyone to examine, inspect, or copy any Work Product or other working papers, documents or records relating to this engagement; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon ACM that requires the production of such documents or records.

5. **Limitation on Warranties** – THIS IS A SERVICES ENGAGEMENT. ACM WARRANTS THAT IT WILL PERFORM SERVICES UNDER THE AGREEMENT IN GOOD FAITH, WITH QUALIFIED PERSONNEL IN A COMPETENT AND WORKMANLIKE MANNER. ACM DISCLAIMS ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6. **Limitation on Damages** – ACM shall not be liable to the Client for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Agreement for an aggregate amount in excess of the fees paid to ACM for services rendered by ACM under the Agreement. In no event shall ACM be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss whether in contract, statue, tort or otherwise.

7. **Indemnification** –

   (a) Client is responsible for all information it provides to third parties directly, or indirectly through ACM, and it agrees to clearly so state in writing to all such third parties. In furtherance of the foregoing, Client will indemnify, defend and hold harmless ACM, its shareholders, affiliates, principals, members, managers, officers, directors, employees, subcontractors, attorneys, professionals, representatives and agents (collectively, the "Indemnified Parties") from and against any and all liabilities suffered by or asserted against the Indemnified Parties in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon information provided by Client.

   (b) The Indemnified Parties shall promptly notify Client of any claim for which they seek indemnification provided that any failure to notify Client or timely notify the Client shall not impact, in any way, the applicability of the indemnification provisions contained herein. The Client shall have the right to conduct the defense or settlement of any such claim at its sole expense, and the Indemnified Parties shall cooperate. The Indemnified Parties shall nonetheless have the right to participate in such defense at Client's cost. The indemnified Parties shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

8. **Cooperation; Use of Information** –

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



(a) Client agrees to cooperate with ACM in the performance of the services under the Agreement and shall provide ACM with timely access to and use of Client's personnel, facilities, equipment, data and information to the extent necessary for ACM to perform the services under the Agreement. The Engagement Letter may set forth additional obligations of Client in connection with the engagement. As requested by ACM, Client acknowledges that Client's failure to assign Client personnel having skills commensurate with their role with respect to this engagement could adversely affect ACM's ability to provide the services under the Agreement.

(b) Client acknowledges and agrees that ACM may, in performing its obligations pursuant to this Agreement, use data, material and other information furnished by Client without any independent investigation or verification and that ACM shall be entitled to rely upon the accuracy and completeness of such information in performing the services under the Agreement.

9. **Force Majeure** – Neither Client nor ACM shall be liable for any delays resulting from circumstances or caused beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

10. **Limitation on Actions** – No action, regardless of form, arising out of or relating to this engagement, may be brought by either party more than one year after the cause of action has accrued.

11. **Independent Contractor** – It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of or in the name of, the other.

12. **Confidentiality-**

    (a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") in the course of performing the services under the Agreement: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; or (iv) is received by the Receiving Party from a third party without restriction and without breach of an obligation of confidentiality.

    (b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM



same, except for one copy thereof that the Receiving Party may retain for its records. Unless otherwise provided herein, the Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 12 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

(e) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of Internal Revenue Code sections 6011, 6111, 6112 or the regulations thereunder. Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limit of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement that reduces or defers Federal tax and all materials of any kind (including opinions or other tax analyses) that are provided to Client relating to such tax treatment and tax structure.

13. **Survival** - The provisions of Paragraphs 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 hereof shall survive the expiration or termination of this engagement.

14. **Assignment** - Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.; provided, however, that ACM may (i) assign its rights and obligations under the Agreement to any Affiliate or any successor to ACM's business, and (ii) use subcontractors to provide services under the Agreement without having to obtain the consent of the Client.

15. **Severability** - In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable, then the remainder of this Agreement shall not be affected, and each such term and provision of the Agreement shall be valid and enforceable to the fullest extent permitted by law.

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM

Case: 11-58944   Doc#: 162-2   Filed: 07/31/12   Entered: 07/31/12 11:58:58   Page 9 of 10



16. **Governing Law** - The Engagement Letter and these Terms and Conditions shall be governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions thereof.

17. **Arbitration** - The parties agree that any dispute or controversy that arises from or related to this Agreement that cannot be resolved by the parties shall be submitted to arbitration in Miami, Florida in accordance with the applicable rules, regulations, policies and procedures of the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act. The decision of the arbitrators shall be final and binding. The arbitration shall be conducted before a panel of three neutral arbitrators, with one arbitrator named by each party and the third named by the two-party-appointed arbitrators, or (if they should fail to agree on the third) by the AAA.

18. **Miscellaneous** -

    (a) In accepting this engagement, Client acknowledges the completion of this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). This engagement shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

    (b) ACM may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications, the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that ACM transmits to Client.

    (c) Neither party shall use the other party's name, trademarks, service marks, logos, trade names and/or branding without such party's prior written consent. Notwithstanding anything herein to the contrary, ACM may reference or list Client's name and/or general description of the engagement. Client also agrees that upon reasonable prior notice from ACM, Client will be willing to provide a reference for ACM (e.g. in the form of analyst telephone calls, client telephone calls, presentations and the like).

    (d) Any notices given pursuant to this Agreement shall be in writing, delivered to the address(es) set forth in the Engagement Letter, and shall be considered given when received.

19. **Entire Agreement** - This Agreement, including the Engagement Letter and all Exhibits, constitute the entire agreement between ACM and Client with respect to this engagement and supersede all other oral and written representation, understandings or agreements relating to this engagement.

200 SOUTH BISCAYNE BOULEVARD, SEVENTH FLOOR • MIAMI, FLORIDA 33131
O: 305.960.8851 F: 305.960.9188 • WWW.ACMCAPITALPARTNERS.COM