JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile:   (650) 857-1288
Email:  murray.john@dorsey.com
Email:  franklin.robert@dorsey.com
Email:  hwang.thomas@dorsey.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Cases Jointly Administered |
| **COMMUNITY TOWERS I, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 75-2456729, | Case No. 11-58944-SLJ-11 |
| **COMMUNITY TOWERS II, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 75-2560662, | Case No. 11-58945-SLJ-11 |
| **COMMUNITY TOWERS III, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 32-0065635, | Case No. 11-58948-SLJ-11 |
| **COMMUNITY TOWERS IV, LLC,** A Delaware Limited Liability Company, Employer Tax I.D. No. 77-0379075, | Case No. 11-58949-SLJ-11 Chapter 11 |
| Debtor(s). 111 W. Saint John Street, Suite 705 San Jose, California 95113 | Date: July 24, 2013 Time: 2:00 p.m. Place: United States Bankruptcy Court 280 S. First Street, Room 3099 San Jose, CA  95113 Judge: Honorable Stephen L. Johnson |

**DEBTORS' OPPOSITION TO CIBC'S MOTION TO DISMISS
THE DEBTORS' CLAIM OBJECTIONS FOR WANT OF PROSECUTION**

Community Towers I, LLC, Community Towers II, LLC, Community Towers III, LLC and Community Towers IV, LLC (collectively, the "Debtors") hereby submit their opposition to the MOTION TO DISMISS THE DEBTORS' CLAIM OBJECTIONS FOR WANT OF PROSECUTION (the "Motion") filed by CIBC, Inc. ("CIBC").  This Response is supported by the DECLARATION OF JOHN L. FEECE

TTH:sb
H:\Client Matters\- F&R\CommTowers\Pld\Obj\CIBC Dismiss\Opp v4.docx

1

DEBTORS' OPPOSITION TO MOTION TO DISMISS
THE DEBTORS' CLAIM OBJECTIONS
FOR WANT OF PROSECUTION

Case: 11-58944    Doc# 290    Filed: 07/10/13    Entered: 07/10/13 19:20:09    Page 1 of 9

IN SUPPORT OF DEBTORS' OPPOSITION TO CIBC'S MOTION TO DISMISS THE DEBTORS' CLAIM OBJECTIONS FOR WANT OF PROSECUTION (the "Feece Declaration") filed concurrently herewith.

## I. THE MOTION

1. CIBC's Motion requests that the Court dismiss the Debtors' OBJECTIONS TO PROOFS OF CLAIM NOS. 4, 5 6 AND 7 (CIBC, Inc.) (the "Claims Objection") for want of prosecution pursuant to Rule 7041 as incorporated by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure. The Debtors respectfully submit that CIBC seeks to obtain a windfall advantage by not having to actually litigate their claim in requesting the Court to simply dismiss the Claims Objection. For the reasons set forth below, the Court should deny CIBC's Motion.

## II. RELEVANT BACKGROUND

2. Each of the Debtors is a limited liability company formed under the laws of the State of Delaware on June 1, 2006 for the purpose of acquiring that certain two building, 305,000 square foot office complex located at 111 West Saint John Street and 111 North Market Street, San Jose, California commonly known as the Community Towers (the "Subject Property"). In the ordinary course of their businesses, the Debtors utilized rents from the Subject Property as the source of working capital for their pre-petition operations. CIBC is the holder of a first deed of trust on the Subject Property.

3. On September 26, 2011, (the "Petition Date"), the Debtors each filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code.

4. On October 5, 2012, the Debtors filed the Claims Objection. Subsequently, the Court entered its ORDER RE: OBJECTION TO PROOFS OF CLAIM NOS. 4, 5, 6 AND 7 which clarified that because a hearing on an objection to claim requires 30 days' notice, the Court would consider CIBC's claim in the context of plan confirmation but would not issue a final ruling on the allowability of such claim at the hearing on confirmation of the DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012) (as modified by the FIRST MODIFICATION TO DEBTORS' JOINT PLAN OF REORGANIZATION (DATED MARCH 27, 2012) filed on August 31, 2012, the "Plan").

5. The Court held a two-day evidentiary hearing on confirmation (the "Confirmation

TTH:sb
H:\Client Matters\- F&R\CommTowers\Pld\Obj\CIBC Dismiss\Opp v4.docx

2

DEBTORS' OPPOSITION TO MOTION TO DISMISS
THE DEBTORS' CLAIM OBJECTIONS
FOR WANT OF PROSECUTION

Case: 11-58944    Doc# 290    Filed: 07/10/13    Entered: 07/10/13 19:20:09    Page 2 of 9

Hearing") of the Plan, on October 15 and 16, 2012.

6. The only evidence in the record of the Confirmation Hearing on the value of the Subject Property was an appraisal made by Donn Byrne of Colliers International, who opined that the Subject Property had a fair market value of $41,000,000 as of October 31, 2011. [See Debtors' Exhibit 12 submitted at the Confirmation Hearing].

7. On December 12, 2012, the Debtors filed the SECOND MOTION FOR ORDER APPROVING USE OF CASH COLLATERAL (the "Second Cash Collateral Motion") and supporting DECLARATION OF DONN H. BYRNE, JR. IN SUPPORT OF DEBTORS' SECOND MOTION APPROVING USE OF CASH COLLATERAL which attaches an updated appraisal that states, *inter alia*, Mr. Byrne's opinion that the Subject Property was worth $44,000,000 as of October 1, 2012.

8. Mr. Byrne has completed an updated appraisal which states, *inter alia*, Mr. Byrne's opinion that the Subject Property was worth $46,000,000 as of February 28, 2013. A true and correct copy of such appraisal is attached to the Feece Declaration as its Exhibit "A" and is incorporated herein by reference.

9. On January 25, 2013, the Court entered its ORDER DENYING CONFIRMATION OF DEBTORS' JOINT PLAN [Docket No. 251] (the "Confirmation Denial Order"), denying confirmation of the Plan. Among other things, the Confirmation Denial Order discusses in depth CIBC's claim and the Debtors' arguments why the claim is overstated. Ultimately, the Court found that CIBC is not entitled to default interest on its claim in the bankruptcy cases, and it estimated such claim at $37,234,279.20.

10. On February 19, 2013, CIBC filed its SECOND MOTION FOR STAY RELIEF requesting that the Court lift the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(3) so that it may "proceed with its rights and remedies as a secured creditor of the Debtors." After a hearing on March 5, 2013, the Court entered its ORDER CONDITIONALLY GRANTING CIBC INC.'S SECOND MOTION FOR STAY RELIEF (the "Conditional Stay Order") increasing the adequate protection payments to be paid by the Debtors to CIBC and providing, *inter alia*, that the automatic stay provided under 11 U.S.C. § 362(a) will be lifted if the Debtors fail to pay CIBC all amounts allowed

in connection with its secured claims in the bankruptcy cases, by September 1, 2013.

11. As the Debtors have indicated to the Court[1], since the Confirmation Hearing, the Debtors have continued to operate their businesses and make adequate protection payments to CIBC required under the Conditional Stay Order (including full interest payments at the contract rate), while increasing the profitability of the business. The value of the Subject Property has increased significantly based upon the increase in occupancy by the Debtors' operations as well as continually improving market conditions. The Debtors also have committed extensive time to searching out alternate lenders for the Subject Property as well as potential buyers and investors for the Subject Property. The Debtors have communicated several refinance opportunities directly to CIBC outside of counsel in an effort to reach a resolution without an according response. Moreover, the Debtors have been working diligently with existing and new counsel to complete an amended plan of reorganization that the Debtors believe will satisfy all requirements to be confirmable even if the Debtors do not sell or refinance the Subject Property. The Debtors, however, will require additional time beyond the September 1, 2013 deadline set forth in the Conditional Stay Order, to complete the plan confirmation process. Consequently, they will be filing a motion to request that the Court extend the automatic stay beyond such deadline.[2]

### III. DISCUSSION

**A. The Motion Establishes No Basis For The Relief Requested Therein.**

12. CIBC's Motion cites Rule 41(b) of the Federal Rules of Civil Procedure as grounds for dismissing the Claims Objection.[3] It also cites two cases which are inapplicable here but only demonstrate the egregious circumstances required to warrant dismissal for lack of prosecution. In *In re Walker*, 332 B.R. 820 (Bankr. D. Nev. 2005), a Nevada bankruptcy court denied a motion to

---

[1] See EX PARTE APPLICATION FOR ORDER AUTHORIZING AND APPROVING EMPLOYMENT OF LITIGATION COUNSEL FOR DEBTORS (LAW OFFICE OF WILLIAM L. CONTI) [Dkt. No. 283] filed on June 18, 2013.

[2] The Debtors' motion to extend the stay will show, among other things, that CIBC is receiving and will continue to receive adequate protection payments at the full contract rate, that the Debtors' occupancy rate has risen to over 94%, that the Debtors' expenses have been reduced (specifically with respect to leasing commissions and tenant improvements expenses), and that the Debtors' operations have considerably improved over the last two quarters.

[3] Such Rule, subtitled "Involuntary Dismissal; Effect" provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule . . . operates as an adjudication on the merits."

TTH:sb
H:\Client Matters\- F&R\CommTowers\Pld\Obj\CIBC Dismiss\Opp v4.docx

4

DEBTORS' OPPOSITION TO MOTION TO DISMISS
THE DEBTORS' CLAIM OBJECTIONS
FOR WANT OF PROSECUTION

Case: 11-58944    Doc# 290    Filed: 07/10/13    Entered: 07/10/13 19:20:09    Page 4 of 9

reconsider the dismissal of a relief from stay motion wherein moving counsel was accused of harassment but failed to reply to the opposition and to appear at the hearing, and provided no support for any justifiable excuse for his absence. In *In re Virginia Store Fixtures, Inc.*, 61 B.R. 250 (Bankr. E.D. Va. 1986), the court issued a Memorandum Order to "prevent control of the Court's docket by the parties." There, in the underlying matter, the trustee filed a complaint to recover property and served notice of the trial, and at the trial, requested that the court then treat the trial as an Initial Pre-Trial Conference so the trustee could conduct discovery. Because the trustee had no evidence to present, the court dismissed his case. In its Memorandum Order, the bankruptcy court noted that the trustee's failure to comply with Bankruptcy Rule 7026 and the need to retain control and prevent "careless handling" of its docket. *Id.* at 252.

13. Of course, none of the circumstances or behavior described above is present here. The Debtors have not failed to appear at any hearing during the bankruptcy cases, much less any hearing on the Claims Objection, nor have they shown any indifference to proceeding with their Claims Objection. Nor have the Debtors attempted to sidestep applicable procedural rules or to manipulate the Court's docket. Indeed, there is no risk that the Court has not retained, or will not retain, control of its docket in these bankruptcy cases.

14. CIBC's Motion concludes, without any basis, that because the Debtors have not yet set the Claims Objection for hearing, they "did not intend to proceed with prosecution of the Claims Objections when they filed them." CIBC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE DEBTORS' CLAIM OBJECTIONS FOR WANT OF PROSECUTION (the "CIBC Brief") p. 5, lines 19-20. This statement is plainly without basis. The Claims Objection was filed prior to the Confirmation Hearing because, as the Court recognized, the amount of CIBC's Claim was germane to the issue of confirmation. There is no basis or reason to conclude that because the Debtors have not noticed a hearing on the Claims Objection, they do not intend to prosecute them.

15. The reasons why the Debtors have not set the Claims Objection for hearing are obvious. First, the Debtors have been focused on preparing an Amended Plan of Reorganization and gathering the required evidence from their current operations that establish the viability of the

[proposed] Amended plan.  In short, they are seeking to reorganize for the benefit of the bankruptcy estates.  Second, the Debtor has placed considerable effort into locating alternate financing to satisfy CIBC's claim, as well as to "lean out" their operating expenses to make the business as attractive as possible to potential buyers.  Third, there is no need to litigate the Claims Objection issues until a refinancing or sale is in place for approval by the Court, or a reorganization plan is presented to the Court for confirmation.  Fourth, not only would litigating the Claims Objection require expenditure of the Debtors' resources, it would also require the Debtors' professionals and CIBC's professionals to incur expenses.  As CIBC has made abundantly clear, it has already incurred fees which "could be quite substantial" which it contends are accruing with its claim. CIBC Brief p. 4, line 14, n. 2.  Focusing on and undertaking litigation of the Claims Objection at this time would be an unnecessary and potentially wasteful use of the estates' resources.  It seems that all parties would be better served by coordinating a hearing on the Claims Objection with a subsequent confirmation hearing to the extent the Court ultimately allows such a hearing.

### B. Applicable Standards

16. The Motion fails to provide any applicable standard to dismiss the Claims Objection. Nonetheless, the standard which courts have applied all militate against granting the Motion.  As set delineated in *Blake v. Trutwein (In re Trutwein)*, 2007 Bankr. LEXIS 4252 (B.A.P. 9th Cir. Nov. 19, 2007):

> The Ninth Circuit requires that the trial court weigh five factors to determine whether to dismiss a case for lack of prosecution:
>
> (1) the public's interest in expeditious resolution of litigation;
>
> (2) the court's need to manage its docket;
>
> (3) the risk of prejudice to the defendants;
>
> (4) the public policy favoring the disposition of cases on their merits; and
>
> (5) the availability of less drastic sanctions.

*Id*. at *13-14 (citations omitted).

17. Dismissal of a case is improper when less drastic alternatives are not considered and

when there is no evidence of prejudice to the defendant. *Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981); *cf. Henderson v. Duncan*, 779 F.2d 1421 (9th Cir. 1986) (dismissal was properly within court's discretion only after plaintiff received at least three initial warnings of dismissal and after a status conference to address the issue).

18. Here, as set forth above, there is no threat to the Court's management and control of its docket. In addition, the Debtors have compelling reasons for not noticing and litigating the Claims Objection at this time. They are focused on reorganizing for the benefit of the estates and all creditors, and litigating the Claims Objection immediately would be unnecessary and potentially a wasteful misuse of the estates' resources. In addition, the Motion does not provide any suggestion for less drastic sanctions. For example, if it were so compelled to have the exact amount of its claim finally determined, CIBC could have filed a motion requesting the Court to set the Claims Objection for hearing. It did not.

### C. Risk Of Prejudice Falls Solely On The Debtors.

19. CIBC cannot demonstrate any prejudice it has suffered or will suffer because the Claims Objection has not already been finally determined. "In determining whether a defendant has been prejudiced, an appellate court is to consider whether plaintiff's actions impair the defendant's ability to go to trial or threaten the rightful decision of the case." *Tenorio v. Osinga (In re Osinga)*, 91 B.R. 893, 895 (9th Cir. B.A.P. 1988). CIBC's ability to litigate the Claims Objection or to obtain a "rightful" determination on the allowability of its claim has not been compromised and is under no threat.

20. CIBC only contends that it is prejudiced because its claim will not be determined by the September 1, 2013 date established in the Conditional Stay Order. As set forth above, the Debtors will be filing a motion to extend the automatic stay and the September 1, 2013 deadline. In addition, there is no risk to CIBC for any alleged delay caused by the Debtors. The Debtors have made adequate protection payments to CIBC since August 2012 which amounts were increased in March 2013, and, moreover, the Subject Property continues to appreciate in value. Thus, CIBC is adequately protected by a growing equity cushion.

21. On the contrary, granting the Motion would not only severely prejudice the Debtors, it will lead to a patently unjust result. The Motion characterizes the Claims Objection as a matter which requires relitigation of CIBC's claim. Indeed, the Motion indicates that CIBC is entitled to attorneys' fees, default interest and late charges, in addition to principal. While the Debtors concede that the Court's determination of the claim in the Order Denying Confirmation was limited to the determination of plan confirmation, the Court nonetheless spent judicial time in reaching its decision to disallow default interest after *full briefing, evidentiary presentation* and *extended argument by the parties*. Specifically, the Court found that "the default interest provision is punitive in character and lacks any proportional relationship to the actual damages which may flow from any of the Events of Default." Order Denying Confirmation, p. 16, lines 6-8. Therefore, it is unlikely that CIBC can provide any new facts or new law which can persuade the Court that its well-reasoned decision should be different from what has already been determined – that default interest is not allowable.

22. CIBC's Motion further acknowledges that since December 2012, "[b]ecause of the payment of full interest payments under the Stay Relief Order (identified infra) beginning with March of 2013, the only way the claim has grown is through CIBC's incurring additional attorneys' fees from December 2012 to date and the continued accrual of default interest." CIBC Brief, p. 2, lines 22–25.

23. As such, determination of the amount of CIBC's claim ultimately should predominantly be based on a calculation including contract interest, with litigation reduced mainly to the allowance of attorneys' fees.[4] As the Court is aware, allowance of attorneys' fees to a secured creditor is subject to the bankruptcy court's determination that the secured creditor is entitled to the fees under applicable law and, if so, that the fees are reasonable and necessary to the protection of the creditor's claim. *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090 (9th Cir. 2009); *In re Hungerford*, 19 Mont. B.R. 103, 136-138 (Bankr. Mont. 2001) (reviewing cases). Moreover, it is the secured creditor's burden to establish that its fee request is reasonable. *In re Parreira*, 464 B.R. 410, 415 (Bankr. E.D. Cal. 2012).

---

[4] In that regard, in the instance that the determination of CIBC's allowed claim is necessary at some point, such a determination likely will not require extensive litigation or cause extensive delay.

24. Notwithstanding the foregoing, the Motion portends what will result if CIBC is granted its request: "The only transaction that can close on the current record is one that pays CIBC the $44.14 million it believed it was owed as of February 1, 2013, plus whatever fees it has incurred from December 2012 to date and additional interest." CIBC Brief p. 4, lines 12-14 (footnote omitted). What CIBC's Motion truly seeks to do is - (a) obtain a reversal of the determination that default interest on the claim is impermissible, and (b) relieve CIBC of its burden to prove allowance of its attorneys' fees - *both without any litigation on the merits*. Not only is such a result prejudicial to the Debtors and their estates, it is patently unjust and should not be countenanced.

25. It is therefore evident why CIBC has filed the Motion at this time. As stated above, CIBC could have simply moved the Court to set the Claims Objection for hearing. Instead it has effectively requested that the Court allow its claim in full, including all fees, default and non-default interest and all charges, without fulfilling any of its burdens to support and substantiate all such fees and penalties. Accordingly, the Motion is inappropriate and should be denied in full.

**WHEREFORE**, the Debtors respectfully request that this Court enter its Order:

1. Denying the Motion; and
2. For such other relief as the Court deems proper and just.

Dated: July 10, 2013  **DORSEY & WHITNEY LLP**

By: */s/ Robert A. Franklin*
Robert A. Franklin
Attorneys for Debtors