1  ADAM A. LEWIS (BAR NO. 88736)
   ALewis@mofo.com
2  VINCENT J. NOVAK (BAR NO. 233003)
   VNovak@mofo.com
3  KRISTIN A. HIENSCH (BAR NO. 275676)
   KHiensch@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
6  Facsimile: (415) 268-7522

Attorneys for Secured Creditor
SAN JOSE TOWERS CORP.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re:* | |
| Community Towers I, LLC,<br>a Delaware limited liability company,<br>Employer Tax I.D. No.: 75-2456729, | Case No. 11-58944-SLJ-11 |
| Community Towers II, LLC,<br>a Delaware limited liability company,<br>Employer Tax I.D. No.: 75-2560662, | Case No. 11-58945-SLJ-11 |
| Community Towers III, LLC,<br>a Delaware limited liability company,<br>Employer Tax I.D. No.: 32-0065635, | Case No. 11-58948-SLJ-11 |
| Community Towers IV, LLC,<br>a Delaware limited liability company,<br>Employer Tax I.D. No.: 77-0379075, | Case No. 11-58949-SLJ-11 |
| | Cases Jointly Administered |
| Debtor(s). | Chapter 11 |
| 111 W. Saint John Street, Suite 705<br>San Jose, California 95113 | SAN JOSE TOWERS CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR TURNOVER OF CASH COLLATERAL AND ACCOUNTING |
| | Date: December 18, 2013<br>Time: 2:00 p.m.<br>Place: Honorable Stephen L. Johnson<br>280 S. First Street, Room 3099<br>San Jose, CA 95113 |

San Jose Towers Corp. ("SJTC"), successor-in-interest to the rights of CIBC in connection with these cases, files this reply (the "Reply") in support of its Motion for Turnover of Cash Collateral and Accounting (filed Nov. 22, 2013, Dkt. No. 334) (the "Motion").[1] This Reply addresses Debtors' Memorandum of Points and Authorities in Opposition to San Jose Towers Corp.'s Motion for Turnover of Cash Collateral and Accounting (filed December 13, 2013, Dkt. No. 346) (the "Opposition") of the Debtors.

## I. PRELIMINARY STATEMENT

By the Motion, SJTC sought an order directing the Debtors to turn over all the remaining cash in their accounts to satisfy their substantial post-foreclosure deficiency on the grounds that the funds were SJTC's cash collateral pursuant to the assignment of rents and profits found in the Deed of Trust and Assignment of Leases, as well as Code section 552(b).

In the Opposition, the Debtors contend that the funds that were in the accounts as of the commencement of the Cases are not SJTC's cash collateral because (1) SJTC had not "perfected" its right to collect the rents under state law prepetition, leaving the Debtors' license to collect them intact prepetition, and (2) section 552(b) applies only to rents collected postpetition. The Opposition then calculates that there was a net increase in the funds in the accounts of only $377,992 during the course of the Cases, so only that sum can constitute SJTC's cash collateral. The assumption of this calculation is, of course, that all postpetition spending was of postpetition rental income (which was SJTC's cash collateral beyond dispute), with the prepetition funds remaining intact. This assumption is wrong.

In the alternative, the Debtors argue that the "equities" favor denying the Motion. These alleged equities consist of alleged misconduct by CIBC, SJTC's predecessor in interest on the Loan. It nearly always is an act of desperation to rely on the "equities," for usually that signals the absence of any legal support for the contending party's position on the merits; that is the case here. The Code simply does not give this Court the power to fashion remedies out of whole cloth.

---

[1] Capitalized terms not defined in this Reply shall have the meaning ascribed to them in the Motion.

SAN JOSE TOWERS CORP'S REPLY RE
MOTION RE CASH COLLATERAL

1

Moreover, as will become clear, the Debtors are themselves responsible for the misadventures of which they complain.

## II. RENTS AND PROFITS

The Debtors argue that the funds in the accounts as of the commencement of the Cases were not CIBC's (and therefore now not SJTC's) cash collateral because CIBC had not "perfected" its right to collect the rents by, e.g., installation of a rents and profits receiver as required by California law. Thus, the license granted them by CIBC to collect the rents prior to a default remained in place. That license was revoked only upon the filing of the Debtors' petitions through CIBC's rents and profits notices and Code section 552(b), which made all rents collected postpetition CIBC's cash collateral. Since the Debtors' cash improved postpetition by $377,992, it is that sum alone that is SJTC's cash collateral. Every one of these analytic steps is faulty.

### A. The Prepetition Rents Are SJTC's Cash Collateral

The Debtors do not deny, as they could not, that CIBC had a lien on the rents and profits at all times, pre- and post-petition.[2] That CIBC had not revoked the Debtors' license to collect the rents prepetition is a very different proposition from the notion that the rents were not subject to CIBC's lien prepetition. Who was entitled to collect those rents at any particular time is wholly irrelevant to whether CIBC (and now SJTC) had a lien on them.

The very terms of Code section 552(b)(1) confirm this point. It says, in relevant part:

> if the debtor and an entity entered into a security agreement before the commencement of the case, and if the security interest created by such security agreement *extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property*, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case . . . .

(Emphasis added.) Section 552(b)(2) is to the same effect:

> if the debtor and an entity entered into a security agreement before the commencement of the case, and if the security interest created by such security agreement *extends to property of the debtor*

---

[2] Indeed, the Debtors admit as much. *See* Opposition at 5 ("There is no denying that paragraph 1.9 of the Deed of Trust granted CIBC a security interest through a present assignment of the "rents and profits" of the real property as SJTC argues.")

> *acquired before the commencement of the case and to amounts paid as rents of such property* . . . then such security interest extends to such rents . . . acquired by the estate after commencement of the case . . . .

(Emphasis added.) These passages point out the difference between *having a security interest* in the rents and *who is entitled to collect the rents at any particular time*.

In summary, CIBC, and now SJTC, had a security interest in the rents collected prepetition that made such rents its cash collateral when the Cases commenced, and makes them cash collateral today to the extent they remain in the accounts postpetition.

### B. Cash Used

The last point above leads naturally to the next subject: who has what if the prepetition rents were not CIBC's cash collateral when the cases were filed? The Debtors' analysis is that only the net increase in cash over the course of the Cases is SJTC's cash collateral. The premise of this analysis is that the first dollars spent by the Debtors postpetition were always the cash collateral, and never the allegedly remaining unencumbered prepetition rents.

For this premise the Debtors provide no authority. And indeed, there is no reason why the Court should have let the Debtors resort to CIBC's cash collateral during the Cases while the Debtors had unencumbered funds of their own. It is inappropriate and unfair for the Debtors to compromise the rights of a secured creditor before they have exhausted their own resources. The Court should find that even if the prepetition rents were not cash collateral, they were first spent, to be replaced as a source for operations by postpetition rents that incontestably *were* cash collateral only when the prepetition rents had been completely spent. To put it differently, there is no equitable or other reason why the Debtors should be allowed to spend money in which someone else also has an interest before they spend money in which they alone have an interest. We know from the Debtors' Master Monthly Operating Report for October 2013 (the "MOR") (the most rent monthly operating report on file) that the Debtors spent $10,296,273 during the course of the Cases through October 2013. (MOR 3 of 19, line item 3b, rightmost column.) Thus, the Debtors have long since expended any unencumbered cash; any cash remaining is SJTC's cash collateral.

1  At the worst, the Court should find that the Debtors spent their allegedly unencumbered funds pro rata with CIBC's cash collateral. The Debtors had $808,238 in cash as of the commencement of the Cases. (MOR 3 of 19, line item 3d, rightmost column). We also know that the Debtors took in $10,674,265 in rents and profits during the course of the Cases through October 2013. (MOR, 3 of 19, line item 3a, rightmost column.) Thus, as of October 2013, at the very least $.93 of every dollar remaining in the accounts should be SJTC's cash collateral on a pro-rata basis. That figure will rise for every dollar the Debtors took in thereafter, a figure the Court should order the Debtors to disclose if it adopts this calculus rather than finding that the Debtors exhausted any unencumbered funds first.

### III. THE EQUITIES

The Debtors argue that the following items should serve to deny SJTC collection of its cash collateral:

- CIBC repeatedly overstated its claim in various contexts.
- The Debtors' management of the Property increased its value.
- SJTC foreclosed on the Property for a figure well below its alleged value.

Each of these theories is flawed.

*Equitable Powers.* As an initial matter, as noted above, the Debtors cite no authority for the Court to fashion remedies that are contrary to otherwise applicable law (mostly state law, which the Debtors themselves repeatedly state controls most of the issues). In fact, the law is to the contrary.

Code section 105(a), the source of the Court's equitable powers, sets limits on the exercise of those powers that are particularly relevant here. The use of the Court's powers under section 105(a) must be linked to a specific provision elsewhere in the Code that equity is aiding. *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1125 (9th Cir. 2000) (citing to *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). Section 105(a) "is not a roving commission to do equity . . . ." *Johnson v. TRE Holdings, LLC (In re Johnson)*, 346 B.R. 190, 196 (BAP 9th Cir. 2006) (citing to *Northwest Bank Worthington*, 485 U.S. 197). Moreover, the Court may not use section 105(a) to create substantive rights. *Deutsche Bank, A.G. v. Metromedia Fiber Networks,*

*Inc. (In re Metromedia Fiber Networks, Inc.)*, 416 F.3d 136, 142 (2nd Cir. 2005); *In re Synergy Hematology-Oncology Med. Assoc.*, 433 B.R. 316, 319 (Bankr. C.D. Cal. 2010); *Malone v. Norwest Fin. Calif., Inc. (In re Malone)*, 245 B.R. 389, 394 (Bankr. E.D. Cal. 2000) (court can use section 105(a) only to further existing rights). The Opposition's equitable powers arguments run afoul of each of these principles.

The filing of a bankruptcy does not expand or improve a debtor's rights over what they are under nonbankruptcy law. "The legislative history of the 1978 Bankruptcy Code makes clear that despite the broad scope of § 541(a) [that defines a creates the bankruptcy estate], it 'is not intended to expend [sic] the debtor's rights against others more than they exist at the commencement of the case.' S. Rep. No. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868." *In re Vote*, 276 F.3d 1024, 1026 (8th Cir. 2002); *accord Demczyk v. Mutual Life Ins. Co. of N.Y. (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997); *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 819 (9th Cir. 1997); *American Bankers Ins. Co. v. Maness*, 104 F.3d 358, 364 (4th Cir. 1996) (in chapter 7 case, proceeds of individual debtor's post-petition insurance policy on property are not estate property even though underlying property belonged to estate since as postpetition contract between debtor and insurance company, policy was debtor's property); *Matter of Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) (estate takes property subject burdens and limitations of state law rights).

In asking the Court to allow them to retain the cash collateral on equitable grounds for the reasons they offer in the Opposition, the Debtors are asking the Court to give them new rights superior to SJCT's security interest in the cash, not to fashion an order to vindicate a right under the Code. In effect, the Debtors are asking the Court to employ section 105(a) as "a roving commission to do equity," something it is not empowered to do *In re Johnson, supra.* Worse yet, the Debtors are asking the Court to employ its equitable powers based mostly on the Debtors' view of disputed and unresolved issues, many of which are undecided because of the Debtors' own deliberate conduct, as SJCT will discuss below.

*Overstated Claim.* The most succinct answer here is that it is the Debtors alone who are responsible for the fact that the claim has never been liquidated. They did not file any objection

SAN JOSE TOWERS CORP'S REPLY RE
MOTION RE CASH COLLATERAL
sf-3364789

5

Case: 11-58944    Doc# 347    Filed: 12/16/13    Entered: 12/16/13 14:59:02    Page 6 of 9

to the claim until the eve of the confirmation hearing in October of 2012, over twelve months after they filed the Cases.[3] (Dkt. No. 195, filed October 5, 2012.) The Court issued an order finding that in light of the procedural defects of the claim objection and the timing of its filing, although it would make findings on the amount of CIBC's claim if necessary for resolving confirmation of the plan, those findings would not be dispositive outside of the confirmation proceeding. (Dkt. No. 211.) Then, the Debtors did not prosecute the objection until a year later. (*See* Dkt. No. 325.) This was after the need to liquidate the claim promptly became obvious when in March of this year the Court granted CIBC stay relief as of September 1, 2013 if the Debtors had not paid CIBC in full by that date. (Dkt. No. 267.) Indeed, foreseeing the anomaly now prevailing – that the stay relief deadline, and even the foreclosure date, would arrive without the parties' having resolved what full payoff would be – beginning in March CIBC began urging the Debtors to resume prosecution of the claim objection that the Debtors had filed in October of 2012. CIBC was concerned that the Debtors would use the unliquidated status of the claim to try to postpone its rights. (*See* Dkt. No. 284-1 4:8-16. 8:17-21.) That is, of course, precisely what the Debtors have done.

The Debtors refused to resume prosecution of the claim objection, deliberately undertaking to formulate yet another plan of reorganization in the face of the Court's admonishment to them at the March stay relief hearing that they should seek to sell or refinance the Property instead.[4] ((Dkt. No. 315 2:22-24 (Court's directive); Dkt. No. 290 3:10-13, 5:25-6:2

---

[3] The Court declined to confirm that plan, finding it was not feasible. (*See* Dkt. No. 252.) In the Opposition, the Debtors seek to revisit that finding by challenging the Court's findings on the amount of the claim for confirmation purposes. (Opposition 9:12-17.) As noted above, it was the Debtors' own fault that the claim was not liquidated by the time of the confirmation hearing, for they filed the claim objection only on the eve of confirmation. Moreover, the Debtors' argument here amounts to a collateral attack on a final order resulting from a matter that was fully litigated; their remedy was to appeal the order denying confirmation, not hold their dissatisfaction in their hip pocket until they could find a use for it.

[4] The Debtors assert that CIBC's attorneys' fees claim vastly exceed what is permissible under California Civil Code section 2924c. (Opposition 10 n.9.) But by its terms, that section applies only to pre-maturity defaults. *See* Cal. Civ. Code § 2924c(a)(1) ("Whenever all or a portion of a principal sum of any obligation secured by a deed of trust or mortgage on real property . . . has, *prior to the maturity date fixed in the obligation*, become due. . . . ) (emphasis added). In any case, this is but one more issue that a *timely* claim objection could have resolved. The Motion is not the occasion to do so.

(Debtors' explanation of their conduct).) To the extent that there is uncertainty about the SJTC/CIBC claim that adversely affects the Debtors, it is a condition they have brought on themselves. Therefore, even if the Court had the kind of equitable powers the Debtors attribute to it, this is not the occasion for the Court to exercise them for the benefit of the Debtors as a ground for modifying SJTC's rights.[5]

*Increased Value.* The efforts of the Debtors to manage the Property were for their own benefit. Their hope was to increase the value sufficiently that the Property could support a reorganization plan. The Court found it could not. The rights of CIBC/SJTC should not be modified because the Debtors' efforts may also have benefitted them or because the Debtors tried hard.[6]

*Foreclosure Price.* As noted in the Motion, the foreclosure price is presumed to be adequate under both federal and California law. The Debtors do not present any contrary authority to principles that were well established in law and hallowed in everyday practice. Instead, they again appeal to the "real" value of the Property, a misguided theory,[7] and their view of equity. But they cite no authority for their contention that this Court can use its equitable powers to overcome controlling state law. And that is because there is none.

---

[5] CIBC and SJTC do not, of course, concede that the claim is overstated. Indeed, they believe that it was understated for foreclosure purposes. (*See* Dkt. No. 328 1:8-9, 2:6-11, 8:15-23.)

[6] The Debtors continue to make claims about what the *real* value of the Property is. But there has been no determination of that value by this Court and the parties dispute what it is. A "maybe" is no ground for altering a secured creditor's rights so substantially as the Debtors want this Court to do even if the Court had that power.

[7] *See* n.5, *supra*.

SAN JOSE TOWERS CORP'S REPLY RE
MOTION RE CASH COLLATERAL

7

sf-3364789

Case: 11-58944    Doc# 347    Filed: 12/16/13    Entered: 12/16/13 14:59:02    Page 8 of 9

## IV. CONCLUSION

SJCT's rights in all the cash are clear under applicable state and federal law. Moreover, the Debtors' appeal to equity as a ground for overriding those rights is wholly misplaced. SJCT urges the Court to grant the Motion.

Dated: December 16, 2013

ADAM A. LEWIS
VINCENT J. NOVAK
KRISTIN A. HIENSCH
MORRISON & FOERSTER LLP

By: /s/ Vincent J. Novak
VINCENT J. NOVAK

Attorneys for Secured Creditor
SAN JOSE TOWERS CORP.