1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DANIEL M. LINCHEY, ESQ., CA Bar #111739
   KATHERINE D. RAY, ESQ. CA Bar #121002
3  44 Montgomery Street, Suite 850
   San Francisco, CA 94104
4  Telephone: (415) 362-5045
   Facsimile: (415) 362-2392
5
   Attorneys for Fred S. Hjelmeset, Chapter 7 Trustee
6

7

8

9            IN THE UNITED STATES BANKRUPTCY COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13  In re:                              Case No. Cases Jointly Administered:

14  COMMUNITY TOWERS I, LLC              11-58944-SLJ

15  COMMUNITY TOWERS II, LLC             11-58945-SLJ

16  COMMUNITY TOWERS III, LLC,           11-58948-SLJ

17  COMMUNITY TOWERS IV, LLC,            11-58949-SLJ

18              Debtors.                 Chapter 7

19
                                         Date:     April 9, 2014
20                                       Time:     2:00 p.m.
                                         Place:    Courtroom 3099
21                                                 280 S. First Street
                                                   San Jose, CA
22                                       Judge:    Hon. Stephen L. Johnson

23
              **CHAPTER 7 TRUSTEE'S OPPOSITION TO**
24    **SAN JOSE TOWERS CORP.'S MOTION FOR RECONSIDERATION**
         **OF ORDER GRANTING IN PART AND DENYING IN PART**
25          **MOTION FOR TURNOVER OF CASH COLLATERAL**

26

27

28

10922 142502.DOC

# TABLE OF CONTENTS

I.    RELEVANT FACTS ...................................................................1

II.   DISCUSSION ........................................................................3

    A.    Standards for Motion for Reconsideration..................................3

    B.    SJTC's Basis for Reconsideration ........................................4

    C.    SJTC's Tracing Argument ................................................6

        1.    Court Considered and Properly Declined to Make a Tracing
              Determination Due to Lack of Legal Authority and Evidence in
              the Record ..................................................6

        2.    SJTC's Lowest Cash Balance Argument Should be Rejected...................7

            a.    This Argument Was Not Raised in the Original
                  Motion and Is Not Based on Newly-Discovered
                  Facts or Change in Controlling Law and Was
                  Therefore Waived ................................7

            b.    SJTC's Lowest Cash Balance Calculation is
                  Erroneous ......................................8

        3.    To The Extent Prepetition Rents Were Used to Pay Post-
              Petition Expenses to Operate and Preserve the Property, Debtors
              Have Equitable Rights to SJTC's Cash Collateral.....................9

            a.    Under Bankruptcy Code Section 506(c), Trustee
                  May Surcharge SJTC's Collateral for Expenses
                  Incurred to Operate and Preserve SJTC's Real
                  Property Collateral ..............................9

    D.    Post-October 2013 Rent Collections......................................11

    E.    SJTC's Deposit Account Lien Theory Must Be Rejected .....................12

        1.    SJTC is Barred from Raising Deposit Account Argument For
              the First Time on Reconsideration Because the Argument Was
              Not Raised in the Original Motion, Is Not Based on Newly-
              Discovered Facts or a Change in Controlling Law and Was
              Therefore Waived ..............................................12

        2.    CIBC/SJTC Did Not Hold A Perfected Security Interest in
              Deposit Accounts at the Petition Date ........................12

        3.    Estate Has A Superior Interest in Deposit Accounts Under
               Bankruptcy Code Section 544(a)(1) and (2)..................13

i

10922 142502.DOC

4.     No Avoidance Action is Required Because the Funds Which Are Subject to SJTC's Unperfected Security Interest in Accounts are Already in the Trustee's Possession, Over Which the Bankruptcy Court Has Jurisdiction ......................................................15

5.     Even if Avoidance Actions Were Time Barred, Section 544 Rights May Be Asserted Defensively ..........................................................16

F.    Equities Warrant Limiting SJTC's Cash Collateral Award ....................................16

III.   CONCLUSION..........................................................................................................17

ii

10922 142502.DOC

# TABLE OF AUTHORITIES

**CASES**

City of Saint Paul v. Evans,
    344 F.3d 1029 (9th Cir. 2003) ........................................................................16

Full Throttle Films, Inc. v. National Mobile Television, Inc.,
    180 Cal.App.4th 1438 (2009) .....................................................................14

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
    (2000) 120 S.Ct. 1942..................................................................................10

In the Matter of Meredosia Harbor & Fleeting Service, Inc.,
    545 F.2d 583 (7th Cir. 1976) ......................................................................15

In re Alliance Financial Capital, Inc.,
    2009 WL 2823261 (Bkrtcy. N.D. Cal.) ......................................................10

In re Cascade Hydraulics & Utility Svc., Inc.,
    815 F.2d 546 (9th Cir.1987) .....................................................................9, 10

In re Compton Impressions Ltd.,
    217 F.3d 1256 (9th Cir.2000) ...................................................................9, 10

In re Debbie Reynolds Hotel & Casino, Inc.,
    255 F.3d 1061 (9th Cir.2001) ......................................................................10

In re J. Catton Farms, Inc.,
    779 F.2d 1242-1246-47 (7th Cir. 1985)......................................................17

In re KF Dairies, Inc.,
    143 B.R. 734 (9th Cir. BAP 1992) ..............................................................16

In re Los Gatos Lodge, Inc.,
    278 F.3d 890 (9th Cir. 2002) .......................................................................10

In re Oak Park Calabasas Condo. Ass'n,
    302 B.R. 682 (Bankr. C.D. Cal. 2003).........................................................4

In re Qmect, Inc.,
    2006 WL 2038041 (Bkrtcy. N.D. Cal.) .......................................................7

In re Sale Guar. Corp.,
    220 B.R. 660 (9th Cir. BAP 1998)...............................................................13

Case: 11-58944    Doc# 378    Filed: 03/26/14    Entered: 03/26/14 12:21:14    Page 4 of 25

In re SK Foods, L.P.,
2013 WL 6488275 (9th Cir. BAP 2013)...........................................................15

In re Toso,
2007 WL 7540985 (9th Cir. BAP)...................................................................16, 17

In re Wahlin,
2011 WL 1063196 (Bkrtcy. D. Idaho).....................................................................4

In re Weisman,
5 F.3d 417 (9th Cir. 1993) ...............................................................................13

In re Village Properties, Ltd.,
723 F.2d 441, 444 (5th Cir. 1984) ...............................................................17

Kona Enterprises, Inc. v. Estate of Bishop,
229 F.3d 877 (9th Cir. 2000) ...............................................................3, 4

Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP,
201 Cal.App.4th 368 (2011) ...............................................................14, 15

Marlyn Nutraceuticals, inc. v. Mucos Pharma GmbH & Co.,
571 F.3d 873 (9th Cir. 2009) ...............................................................3

McDowell v. Calderon,
197 F.3d 1253 (9th Cir. 1999) ...............................................................3

New Hampshire Bus. Dev. Corp. v. Cross Baking Co., Inc. (In re Cross Baking Co., Inc.),
818 F.2d 1027 (1st Cir. 1987)...............................................................5

Orange Partners v. Arnold,
179 F.3d 656 (9th Cir. 1999) ...............................................................3

Oto v. Metropolitan Life Ins. Co.,
224 F.3d 601 (7th Cir. 2000) ...............................................................4

School Dist. No. IJ, Mutnomah County v. ACandS, Inc.,
5 F.3d 1255, 1263 (9th Cir. 1993) ...............................................................3

United Va. Bank v. Slab Fork Coal Co.,
784 F.2d 1188 (4th Cir. 1986) ...............................................................17

Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.),
344 B.R. 94 (9th Cir. BAP 2006)...............................................................4, 8, 12

**STATUTES**

Bankruptcy Code Section 363(a) ...............................................................1

Bankruptcy Code Section 506(c) ...............................................................9, 10

iv

10922 142502.DOC

Bankruptcy Code Section 544 ................................................................ passim

Bankruptcy Code Section 544(a) ...................................................9, 12, 13, 14

Bankruptcy Code Section 544(a)(1) ..................................................13, 15

Bankruptcy Code Section 544(a)(2) ..................................................13, 15

Bankruptcy Code Section 546(a) .......................................................12, 16

Bankruptcy Code Section 552(b) ........................................................9, 16

Bankruptcy Code Section 552(b)(2) ..........................................................1

Cal. Civ. Code Section 2938(c) ................................................................3

Cal. Comm. Code Section 9104 ........................................................12, 14

Cal. Comm. Code Section 9203(b)(D) ...................................................2, 12

Cal. Comm. Code Section 9304(a) ............................................................13

Cal. Comm. Code Section 9312, subd. (b)(1) ............................................14

Cal. Comm. Code Section 9314 .................................................................14

**OTHER AUTHORITIES**

Fed. R. Bankr. Proc. 9023 .........................................................................3

Fed. R. Civ. Proc. 59(e) .............................................................................3

Fed. R. Civ. Proc. 60 ..................................................................................3

v

Fred S. Hjelmeset, Trustee of the Chapter 7 estates of Community Towers I, LLC, Community Towers II, LLC, Community Towers III, LLLC, and Community Towers IV, LLC, the debtors herein ("Debtors"), responds to San Jose Towers Corp.'s ("SJTC") Motion to Reconsider the Order Granting in Part and Denying in Part Motion for Turnover of Cash Collateral, entered on January 21, 2014 (the "Reconsideration Motion").

## I. <u>RELEVANT FACTS</u>

1.      Debtors each filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 26, 2011, and orders for relief were entered on that date. Orders authorizing the joint administration of the four Chapter 11 cases were entered on September 27, 2011.

2.      John Feece was appointed as the responsible individual for each of the Debtors. John Feece and Rosalie Feece are the Debtors' principals. The Debtors remained in possession of their assets until the Chapter 11 cases were converted to ones under Chapter 7 by orders entered on January 24, 2014. Thereafter, Fred Hjelmeset, Trustee ("Trustee") was appointed as Chapter 7 of the Debtors' cases.

3.      The chapter 11 filings were prompted by the Debtors' September 1, 2011 default on a $33,500,000 secured loan by SJTC's predecessor-in-interest, CIBC. The loan was made in 2006, matured in 2011 without payment, and was secured by a Deed of Trust against the Debtors' real property - twin office buildings in downtown San Jose commonly known asf Community Towers located at 111 W. Saint John Street, San Jose, California (the "Property"), and rents, issues and profits, and proceeds thereof (collectively, the "Rents and Profits").

4.      On September 30, 2011, CIBC filed its Notice of Rents under Bankruptcy Code Section 552(b) stating that it held a duly-perfected, first priority interest in the Rents and Profits, and that the Rents and Profits were CIBC's cash collateral within the meaning of Bankruptcy Code Sections 363(a) and 552(b)(2), and that the Debtors could not use CIBC's cash collateral without its consent.

5.      According to CIBC and its appraiser, the Property had a value of $34.1 million in 2012.

6.      Following the Debtors' unsuccessful attempt to confirm a plan of reorganization, on

March 19, 2013, the Court entered an order granting CIBC relief from the automatic stay in order to proceed with foreclosure against the Property, effective September 1, 2013.

7.     The Trustee is informed and believes that SJTC foreclosed on the Property on or about November 5, 2013 through a non-judicial sale and that SJTC acquired ownership of the Property by credit bid in the amount of $22,500,000.

8.     As of December 31, 2013, CIBC/SJTC received a total of $1,812,070 in adequate protection payments from the Debtors.  Crom Decl., at ¶ 8.

9.     On November 22, 2013, SJTC filed its Motion for Turnover of Cash Collateral and Accounting, docket entry no. 334 (the "Turnover Motion"), seeking an order directing the Debtors to turn over all cash in their accounts to SJTC on the grounds that the cash constituted Rents and Profits and that SJTC holds a multi- million dollar deficiency claim against the Debtors following its foreclosure against the Property.

10.     The Turnover Motion was based on SJTC's security interest in Rents and Profits, not its security interest in deposit accounts.  "SJTC is informed and believes, based on communications with the Debtors, that the Debtors have cash in excess of $1 million in three separate deposit accounts, all of which constitute rents or other proceeds arising from the operation of the Property and, hence, SJTC's cash collateral (the "Cash Collateral")."  Turnover Motion at page 4, emphasis supplied.

11.     SJTC admits that CIBC/SJTC's security interest in the Debtors' deposit accounts is unperfected because CIBC/SJTC did not have account control agreements with the banks where the deposit accounts were held, as required under Cal. Comm. Code Sections 9203(b)(D) [control requirement for enforceable security interest in deposit accounts] and 9104 [identifying manner in which control requirement may be satisfied for deposit accounts].  Reconsideration Motion, p. 5 ("The Debtors also noted (correctly) that CIBC did not perfect its rights in those accounts by an account control agreement.")

12.     On January 21, 2014, this Court entered its Order Granting In Part And Denying In Part Motion for Turnover of Cash Collateral, docket entry #360 (the "Order").  The Order granted the Turnover Motion with respect to the Debtors' post-petition net revenue, in the amount of

Case: 11-58944    Doc# 378    Filed: 03/26/14    Entered: 03/26/14 12:21:14    Page 8 of
25
10922 142502.DOC

$377,922.00, as identified in the Debtors' Monthly Operating Report for October 2013, and denied the Turnover Motion with respect to prepetition Rents and Profits because CIBC/SJTC failed to take any of the enforcement steps for the Rents and Profits as required under Cal. Civ. Code Section 2938(c).

13.     On February 3, 2014, SJTC filed its Reconsideration Motion.

14.     As of March 10, 2014, the Trustee has received a total of $1,312,856.60, representing the balance in the Debtors' debtor-in-possession accounts, including the accounts held in the name of Community Towers Management, LLC.

## II.  DISCUSSION

### A.     Standards for Motion for Reconsideration

Fed. R. Civ. Proc. 59(e), as incorporated by Fed. R. Bankr. Proc. 9023, addresses amendment of judgments, and provides that a motion to amend or alter a judgment must be filed within 14 days after entry of the judgment. If the motion for relief from the judgment is filed more than 14 days after entry of the judgment, the motion is governed by Fed. R. Civ. Proc. 60. Here, the Motion was filed within 14 days of the Order on the Turnover Motion, and is governed by Rule 59(e).

There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is "necessary to correct manifest errors of law or fact upon which a judgment is based," (2) the moving party presents "newly discovered or previously unavailable evidence," (3) the motion is necessary "to prevent manifest injustice," (4) there is an "intervening change in controlling law." McDowell v. Calderon, 197 F.3d 1253, 1254 (9th Cir. 1999) (citations omitted). In Marlyn Nutraceuticals, inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009), the Ninth Circuit stated the Rule 59(e) requirements slightly differently. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Id., citing 389 Orange Partners v. Arnold, 179 F.3d 656 (9th Cir. 1999), citing School Dist. No. IJ, Mutnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877,

890 (9ᵗʰ Cir. 2000). "A motion to reconsider may <u>not</u> be used to present a *new* legal theory for the first time or to raise legal arguments which could have been raised in connection with the original motion. Also a motion to reconsider may <u>not</u> be used to <u>rehash</u> the same arguments presented the first time or simply to express the opinion that the court was wrong. The standard for granting a motion to reconsider is strict in order to preclude repetitive arguments that have already been fully considered by the court." <u>Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)</u>, 344 B.R. 94, 103-04 (9ᵗʰ Cir. BAP 2006); see also <u>Kona Enterprises, Inc.</u>, supra; see also <u>In re Wahlin</u>, 2011 WL 1063196 (Bkrtcy.D.Idaho).

A manifest error of fact or law must be one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." <u>In re Oak Park Calabasas Condo. Ass'n</u>, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) (citations omitted). Manifest error "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.' " <u>Oto v. Metropolitan Life Ins. Co.</u>, 224 F.3d 601, 606 (7ᵗʰ Cir. 2000) (citations omitted). The movant must show an error that is "direct, obvious and observable." <u>In re Wahlin</u>, <u>supra</u> (citations omitted). A "showing of manifest injustice requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." <u>Id.</u>, (citations omitted).

## B. SJTC's Basis for Reconsideration

By the Reconsideration Motion, SJTC asserts that the Court failed to address all of the arguments raised in the Turnover Motion and that the Court's ruling thereon was manifest error and/or resulted in manifest injustice, as follows:

- Arguments 1 and 2 or Tracing Argument are based on the same theory, i.e., that the Debtors were required to use prepetition rents and unencumbered cash to fund their post-petition operations before resorting to use of SJTC's cash collateral. In the Turnover Motion, SJTC proposed two methods of quantifying the amount of SJTC's cash collateral remaining after the foreclosure: (a) by deeming the entire cash balance held by the Debtors at the end of December 2013, identified in the Debtor's December 2013 monthly operating report as $1,338,730, as SJTC's cash collateral, and awarding that entire sum to SJTC, or (b) by deeming a pro-rata

4

portion of the December 31, 2013 cash balance as SJTC's cash collateral, based on the funds going in and out of the accounts which are attributable to post-petition vs. prepetition rents. SJTC asserts that the Debtor had $808,238 in cash as of the commencement of the cases and took in $10,674,265 in rents and profits after the Petition Date through October 31, 2013, such that, as of October 2013, a minimum of $.93 of every dollar remaining in the accounts should be SJTC's cash collateral. Under that analysis, SJTC asserts it should have been awarded $1,245,019, representing 93% of the $1,338,730 December 31, 2013 cash balance. Contrary to SJTC's contentions, the Court addressed these arguments as SJTC's tracing argument and declined to rule on them due to the lack of evidence and supporting law in the record. Those deficiencies have not been cured by the Reconsideration Motion. Moreover, the equity argues against SJTC's requested tracing arguments.

- Subsequent Rents Argument - SJTC argues that the Court made a manifest error by awarding SJTC the net post-petition rents through October 31, 2013, but not post-petition rents collected by the Debtors thereafter. The $377,992 award was based on the net post-petition rents, of total receipts less total disbursements, identified in the Debtors' October 2013 operating report (i.e., $377,992); SJTC asserts that the correct amount should be the net post-petition rents identified in the Debtor's December 2013 operating report (i.e., $530,493). Although this argument is based on new evidence, i.e. the Debtors' operating reports for November and December 2013, the Debtors' operating reports are unreliable, as they are inconsistent with the Debtors' bank account statements and contain accounting errors. As set forth below, because the Debtors had $853,673.39, not $808,238, at the commencement of the Cases, the net post-petition rents as of December 31, 2013 was $459,183.21, not $530,493.

- Deposit Account Lien Argument – SJTC argues that its unperfected security interest in the Debtors' deposit accounts entitles SJTC to all of the funds in the Debtors' accounts because any action by the Trustee to avoid those unperfected interests under Section 544 of the Bankruptcy Code is time-barred. This is a new argument which was not raised in the Turnover Motion, but could have been. Since it is raised for the first time in the Reconsideration Motion and is not based on newly-discovered evidence or a change in the law, it is not a proper ground

Case: 11-58944   Doc# 378   Filed: 03/26/14   Entered: 03/26/14 12:21:14   Page 11 of
25
I10922 I42502.DOC

for reconsideration. Moreover, the argument has no substantive merit in any event because (a) the Trustee <u>automatically</u> has the rights of a judicial lien creditor and executing creditor with execution returned unsatisfied pursuant to the provisions of Section 544 of the Bankruptcy Code, (b) the Trustee's Section 544 rights in the Debtors' deposit accounts are superior to SJTC's admittedly unperfected security interest in those deposit accounts under state law, and (c) no avoidance action is required to enforce the Trustee's Section 544 rights because the funds in those deposit accounts are already in the Trustee's possession, such that the Trustee does not need to commence an avoidance action to recover those funds. Further, the law is well settled that the Trustee may assert its avoidance rights defensively where an avoidance action is time-barred.

- Lowest Account Balance Argument – SJTC argues for the first time that its cash collateral should be determined using the Debtors' lowest intermediate bank balance. Relying solely on the Debtors' operating reports, SJTC contends that the Debtors had $808,238 in cash on the petition date, consisting of prepetition rents, and that the Debtors' lowest cash balance was $668,109 on June 30, 2013. SJTC argues that since the Debtors' cash balance as of December 31, 2013 was $1,338,730, its cash collateral totalled $670,621 [$1,338,730 less $668,109 = $670,621]. This is also a new argument which was not raised in the Turnover Motion, but could have been. Since it is raised for the first time in the Reconsideration Motion and is not based on newly-discovered evidence or a change in controlling law, it is also not a proper ground for reconsideration. In addition, the argument lacks any substantive merit because it is based on erroneous figures which are inconsistent with the Debtors' actual bank statements and accounting rules, as discussed in detail below, and because the actual cash balance at June 30, 2013 exceeded the amount of cash at the Petition Date.

In sum, none of SJTC's arguments on reconsideration warrant amendment of the Order, except for the Subsequent Rents Argument, but only to increase SJTC's collateral to $459,183.21, not the amount of $530,493 asserted by SJTC.

### C. SJTC's Tracing Argument

#### 1. Court Considered and Properly Declined to Make a Tracing Determination Due to Lack of Legal Authority and Evidence in the Record

Case: 11-58944   Doc# 378   Filed: 03/26/14   Entered: 03/26/14 12:21:14   Page 12 of 25

I0922 142502.DOC

In the Reconsideration Motion, SJTC contends that "it did not appear that the Court expressly ruled" on Arguments 1 and 2, and that the Court's failure to rule on those arguments was error resulting in manifest injustice. Reconsideration Motion, p. 4. To the contrary, the Court squarely addressed Arguments 1 and 2, which it referred to as "SJTC's Tracing Argument." Order, p. 12.

The Court did not make a determination on the tracing argument because "the parties did not provide the court with any evidence or much law" to make a determination on that issue. Order, p. 12. In its Order, the Court went on to identify the evidence which was needed for the requested determination, i.e., evidence as to the amounts of the Debtors' unencumbered cash, amounts of the total rents collected by Debtors post-petition, as well as tracing the source of Debtor's use of cash during Chapter 11 operations. Order, pp. 12-13.

Given the lack of evidence or law to support SJTC's tracing argument, the Court did not err in declining to award cash collateral under a tracing theory. SJTC had the burden of proof on its tracing argument because nothing in the cash collateral stipulations with the Debtors required the Debtors to segregate prepetition and postpetition rent collections. See, In re Qmect, Inc., 2006 WL 2038041 (Bkrtcy.N.D.Cal.) (where funds subject to a creditor's security interest are commingled with unencumbered funds through no fault of the debtor, who had no obligation to segregate the encumbered funds, the secured creditor bears the burden of tracing to establish its cash collateral).

In the Turnover Motion, SJTC failed to submit required evidence of the prepetition rents used to operate and preserve SJTC's collateral post-petition, and cannot now complain that the Court erred due to SJTC's own failure to submit sufficient evidence necessary for that determination.[1]

### 2. SJTC's Lowest Cash Balance Argument Should be Rejected

#### a. This Argument Was Not Raised in the Original Motion and Is Not Based on Newly-Discovered Facts or Change in Controlling Law and Was Therefore Waived

In the Turnover Motion, SJTC did not seek turnover based on a lowest intermediate balance

---

[1] None of the tracing argument deficiencies identified by the Court have been addressed by the Reconsideration Motion. SJTC has cited no legal authority to support its position that the Debtors were required to exhaust prepetition rents or unencumbered funds before using SJTC's cash collateral to operate and preserve SJTC's real property collateral. SJTC has provided none of the evidence the Court identified as necessary for a tracing determination.

7

I0922142502.DOC

theory. It makes that argument for the first time in the Reconsideration Motion based on the Debtors' operating reports which were on file at the time the Turnover Motion was made. Since the argument was available at the time the Turnover Motion was filed and is therefore not based on new facts or a change in controlling law, as a procedural matter, SJTC is barred from raising that argument for the first time in the Reconsideration Motion. <u>Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)</u>, supra, 344 B.R. at 103-04.

### b. SJTC's Lowest Cash Balance Calculation is Erroneous

Relying solely on the Debtors' monthly operating reports, SJTC contends that the Debtors had $808,238 in cash on the petition date, consisting of prepetition rents, and that the Debtors' lowest cash balance was $668,109 on June 30, 2013, such that prepetition rents could have been no more than $668,109 during the Chapter 11 cases. SJTC contends that since the Debtors' cash balance as of December 31, 2013 was $1,338,730, its cash collateral totalled $670,621 [$1,338,730 less $668,109 = $670,621].

However, the Trustee's accountants have determined that the Debtor's monthly operating reports are unreliable since the cash balances listed therein are not consistent with the Debtors' bank account statements, which confirm actual account balances at specified dates, and because the operating reports contain a number of accounting errors. See, Declaration of Jay Crom, filed in support hereof ("Crom Decl.").

According to the Debtors' bank account statements and the Trustee's accountants' analysis, the ending cash balances for all three of the Debtors' bank accounts totalled $926,738.35 at June 30, 2013, not the $668,109 amount listed in the operating report. See, Crom Decl. and exhibits thereto (June 2013 operating report and June 2013 bank statements). This is because the cash balance shown on the June 2013 operating report was adjusted by the Debtors to reflect $249,507.24 in outstanding uncashed checks at that time, some of which were months outstanding, including a check to San Jose Boiler Works for $137,755.88 which was outstanding for over two months. If you include the outstanding checks, some of which were months outstanding, in the low cash balance calculation, it gives an inaccurate depiction of the Debtors' actual cash on hand at a given point in time.

8

Since the cash balance on June 30, 2013 ($926,738.35) exceeds the cash balance on the Petition Date ($853,673.39), SJCT's argument that the June 30, 2013 cash balance should be used to determine its cash collateral, is inapposite.

Notwithstanding, applying the correct June 30, 2013 cash balance as the reference point for measuring the cash collateral generated by operations, as requested by SJTC, and using the $1,312,856.60 amount which the Trustee received following conversion of the Cases, SJTC's cash collateral would be no more than **$386,118.25** [$1,312,856.60 less $926,738.35 = $386,118.25].[2] The $386,118.25 figure is more reliable than the $670,621 asserted by SJTC, because the $386,118.25 figure is based on <u>confirmed</u> bank account balances and the amounts <u>actually turned over</u> to the Trustee to date. Consequently, to the extent the Court is inclined to grant the Reconsideration Motion based on the June 30, 2013 cash balance, as requested by SJTC, the amended award should be no more than $386,118.25.

### 3. To The Extent Prepetition Rents Were Used to Pay Post-Petition Expenses to Operate and Preserve the Property, Debtors Have Equitable Rights to SJTC's Cash Collateral

Even if the Debtors used prepetition rents to pay for the expenses of operating and preserving the Property, the Debtors and the Trustee have equitable rights in SJTC's cash collateral to replenish the prepetition rents, which are the only source of funds to pay creditors, i.e., the right to a surcharge under Bankruptcy Code Section 506(c).

### a. Under Bankruptcy Code Section 506(c), Trustee May Surcharge SJTC's Collateral for Expenses Incurred to Operate and Preserve SJTC's Real Property Collateral

Bankruptcy Code Section 506(c) provides that administrative expenses may be reimbursed ut of a secured party's collateral upon a showing that the expenses incurred were reasonable, necessary, and provided a benefit to the secured creditor, or that the secured creditor caused or consented to the

---

[2] In the interest of full disclosure, the Trustee has determined that the lowest cash balance in the Debtors' accounts during the Chapter 11 Cases was in May 2012, not June 2013. According to the Trustee's accountants, the lowest cash balance is determined from the Debtors' bank statements and equals $690,803.41 on May 3, 2012. See, Crom Decl. The difference between that low cash balance and the amount of cash turned over to the Trustee following conversion of the Cases is $622,053.19 [$1,312,856.60 - $690,803.41 = $622,053.19] and does not reflect adjustments under Section 522(b) based on the equities of the case.

Case: 11-58944    Doc# 378    Filed: 03/26/14    Entered: 03/26/14 12:21:14    Page 15 of 25

I0922 I42502.DOC

expense.  In re Compton Impressions Ltd., 217 F.3d 1256, 1262 (9th Cir.2000); In re Cascade Hydraulics & Utility Svc., Inc., 815 F.2d 546, 548 (9th Cir.1987); In re Alliance Financial Capital, Inc., 2009 WL 2823261 (Bkrtcy.N.D.Cal.).  The party seeking the surcharge has the burden of showing a "concrete" and "quantifiable" benefit.  In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1068 (9th Cir.2001).  Only a trustee or debtor-in-possession have standing to seek recovery under Section 506(c); a trustee is obliged to seek recovery under Section 506(c) whenever his fiduciary duties so require.  Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., (2000) 120 S.Ct. 1942, 1950.

The necessity and reasonableness of the debtor-in-possession/trustee's expenses are measured against the benefits obtained for the secured creditor "and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property."  Compton, 217 F.3d at 1260.  To establish benefit, movant must establish in quantifiable terms that it expended funds "directly to protect and preserve the collateral." Compton, 217 F.3d at 1261.  See also In re Los Gatos Lodge, Inc., 278 F.3d 890 (9th Cir. 2002); In re Cascade Hydraulics & Util. Serv., Inc., 815 F.2d 546, 548 (9th Cir. 1987).

Here, the requirements of Section 506(c) are met.  There can be no question that post-petition operating expenses, such as for insurance and physical maintenance of the Property, preserved the Property for SJTC's benefit, who is now the sole owner of the Property.  There can be no serious dispute that post-petition operating expenses were incurred for SJTC's benefit, as the Debtors were not operating any business other than operation of the Property and there were no other creditors whose claims were secured against the Property.  Absent those expenses, there would be no post-petition rents to turnover to SJTC.  The Debtors' operation of the Property during the Chapter 11 cases enabled the Property to generate the very post-petition rents which SJTC now seeks to keep for itself - in addition to the Property - but without having to contribute to any of the expenses which were necessarily incurred to generate those funds.  Those expenses also allowed SJTC to take over a well managed, leased property, rather than an empty shell of a building.  Had SJTC conducted its foreclosure earlier, SJTC would have had to incur the same expense of maintaining and operating the Property until it could sell or otherwise dispose of the Property.  Moreover, the post-petition

operating expenses were reasonable and necessary and SJTC consented to them, as they were made in accordance with stipulated cash collateral orders and budgets approved by SJTC.

Thus, even if prepetition rents were used to fund post-petition operations, SJTC's cash collateral may be surcharged to replenish those funds – which are the only funds available for payment of other creditors - in order to avoid a windfall to SJTC at the expense of other creditors of the Debtors' estates.

### D. Post-October 2013 Rent Collections

By the Order, the Court awarded SJTC the sum of $377,992, which is the cash generated postpetition by Debtors' operation and preservation of SJTC's real property collateral, net of expenses, according to the Debtor's October 2013 monthly operating reports, the most recent report at the time the Court issued its Order. This figure was set forth in the Debtors' October 2013 monthly operating report as the excess of cash receipts over disbursements during the Chapter 11 cases, as of October 31, 2013.

SJTC argues that the $377,992 award is erroneous because it fails to include additional post-petition rents collected after October 31, 2013. SJTC relies on the Debtors' December 2013 operating reports, which reflect $530,493 in net post-petition rents. Consequently, SJTC argues that the award should be increased to $530,493.

However, the unreliability of the Debtors' operating reports create two problems with that $530,493 figure. Contrary to the operating reports and the Debtors' Amended Schedule B, which reflect cash at the petition date of $808,238 and $807,474.48, respectively, the Debtors' bank statements show that the Debtors' cash at the September 26, 2011 petition date totalled $853,673.39. See, Crom Decl. Second, although the December 2013 operating report states that the cash balance as of December 31, 2013 was $1,338,730, only $1,312,856.60 was turned over to the Trustee from the Debtors' bank accounts.[3] Thus, cash upon conversion totals $1,312,856.60, not $1,338,730. Accordingly, based on the actual amount of cash held by the Debtors at the commencement of the

---

[3] A total of $1,312,856.60 was turned over to the Trustee following the conversion of the case. This amount represents the post-petition rents less post-petition operating expenses, excluding Chapter 11 administrative expenses which remain unpaid. The $25,874 difference is attributable to outstanding checks at December 31, 2013 and various 2014 expense activity, all relating to Chapter 11 operations. See, Crom Declaration.

case and the <u>actual</u> amount of cash in the estates at conversion, when the Debtors were no longer operating and had ceased collecting rents from the Property, net post-petition rents through the end of the Chapter 11 estate actually total **$459,183.21**, not $530,493 [$1,312,856.60 less $853,673.39 = $459,183.21].

### E. SJTC's Deposit Account Lien Theory Must Be Rejected

By the Turnover Motion, SJTC sought an order directing the Debtors to turn over to SJTC all Rents held by the Debtors on the grounds SJTC held a perfected security interest in Rents and Profits by its recorded Deed of Trust. The Turnover Motion was <u>not</u> based on SJTC's admittedly unperfected security interest in deposit accounts.

By the Reconsideration Motion, SJTC argues – for the first time - that it is entitled to all of the cash in the Debtors' accounts because any Section 544(a) action to avoid SJTC's unperfected security interest in deposit accounts is time-barred under Section 546(a) of the Bankruptcy Code. This argument should be rejected for several reasons.

> **1. SJTC is Barred from Raising Deposit Account Argument For the First Time on Reconsideration Because the Argument Was Not Raised in the Original Motion, Is Not Based on Newly-Discovered Facts or a Change in Controlling Law and Was Therefore Waived**

First, SJTC did not seek turnover based on its admittedly unperfected security interest in deposit accounts. The Turnover Motion is clear that it was made based on SJTC's security interest in Rents and Profits. Nothing in the Turnover Motion refers to a security interest in deposit accounts, nor asserts that any action to avoid SJTC's unperfected security interest in deposit accounts is time-barred. Since the argument was available at the time the Turnover Motion was filed but was not made, SJTC is barred from raising that argument for the first time in the Reconsideration Motion. <u>Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)</u>, supra, 344 B.R. at 103-04.

> **2. CIBC/SJTC Did Not Hold A Perfected Security Interest in Deposit Accounts at the Petition Date**

In order to perfect a security interest in deposit accounts, Cal. Comm. Code Section 9203(b)(D) requires that the secured party have control over the accounts. Cal. Comm. Code Section 9104 specifies the manner in which the control requirement may be satisfied for deposit accounts,

12

and requires a control agreement.

CIBC/SJTC did not have account control agreements with the banks where the deposit accounts were held. SJTC has admitted that its security interest in deposit accounts was unperfected. Reconsideration Motion, p. 5 ("The Debtors also noted (correctly) that CIBC did not perfect its rights in those accounts by an account control agreement.")

### 3. Estate Has A Superior Interest in Deposit Accounts Under Bankruptcy Code Section 544(a)(1) and (2)

As stated, Section 544(a) of the Bankruptcy Code grants to the trustee at the commencement of the case the rights and powers of a hypothetical judicial lien creditor and hypothetical executing creditor with execution returned unsatisfied. Section 544(a)(1) and (2) of the Bankruptcy Code provide that the trustee has, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of (1) a judgment lien creditor, and (2) a creditor with an execution order. Those rights and powers are separate and distinct from the trustee's power to avoid a transfer of property and those powers apply to all property of the debtor at the time the case is filed. The so-called "strong arm" powers of a trustee (or debtor-in-possession) under Section 544 are defined by state law. In re Weisman, 5 F.3d 417, 420 (9th Cir. 1993); In re Sale Guar. Corp., 220 B.R. 660, 669 (9th Cir. BAP 1998).

In this case, California law governs the perfection and priority of security interests in the Debtors' deposit accounts. Cal. Commercial Code Section 9304(a) ("The local law of a bank's jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in a deposit account maintained with that bank.") Here, the Debtors maintained three deposit accounts in California during the Chapter 11 cases: two accounts were maintained at Wells Fargo Bank and one account was maintained at Bridge Bank. Each of those banks accounts are located in California and both Wells Fargo and Bridge Bank are authorized depositories for the Northern District of California. By their Deed of Trust, the Debtors granted CIBC a security interest in, among other things, "all cash funds, deposit accounts and other rights and evidence of rights to cash, now or hereafter created or held by Lender pursuant to this Deed of Trust … including without limitation, all funds now or hereafter on deposit in the Impound Account … " Deed of Trust, paragraph 4.g.

13

"A security interest in a deposit account may be perfected only by control under [s]ection 9314." Cal. Commercial Code Section 9312, subd. (b)(1). Subdivision (b) of section 9314 provides that a "security interest in deposit accounts ... is perfected by control under" Section 9104. Under subdivision (a) of section 9104, "[a] secured party has control of a deposit account if any of the following conditions is satisfied: (1) The secured party is the bank with which the deposit account is maintained. (2) The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor. (3) The secured party becomes the bank's customer with respect to the deposit account." Cal. Comm. Code Section 9104; Full Throttle Films, Inc. v. National Mobile Television, Inc., 180 Cal.App.4th 1438, 1442 (2009).

Funds in a deposit account are subject to seizure by a secured lender unless specifically segregated. For example, the secured lender of a payroll processing company had a perfected security interest in the payroll company's general deposit accounts, into which the payroll company's film clients had deposited funds for their payrolls. Because the service agreements between the film clients and the payroll company did not establish limits on the payroll company's use of the payroll funds or create a trust, the film clients were unsecured creditors and the payroll funds were available for the secured lender's seizure on foreclosure of its loan. Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP, 201 Cal.App.4th 368 (2011).

Here, SJTC admits that its security interest in the Debtors' deposit accounts is unperfected due to the absence of a control agreement with the deposit banks. Reconsideration Motion, p. 5 ("The Debtors also noted (correctly) that CIBC did not perfect its rights in those [deposit] accounts by an account control agreement.") In contrast, the Trustee holds a perfected lien in the deposit accounts by virtue of his rights under Bankruptcy Code Section 544(a) as a hypothetical judicial lien creditor or executing creditor with lien unsatisfied.

Because SJTC's security interest in deposit accounts was never perfected by a control agreement, the funds in the deposit accounts could be reached by a secured creditor having a perfected lien in the funds. The Trustee holds a perfected lien in the deposit accounts as a hypothetical judicial creditor or executing creditor.

14

No avoidance action need be commenced for the Trustee or debtor-in-possession to obtain those Section 544 rights and powers because they are automatically granted upon commencement of the Debtors' cases under the express terms of the statute. As a matter of law, the Trustee's lien rights and powers under Section 544(a)(1) and (2) defeat any interest of SJTC in deposit accounts. See, In re SK Foods, L.P., 2013 WL 6488275 (9th Cir. BAP 2013) (trustee's strong arm powers under Bankruptcy Code Section 544(a)(1) and (2) defeated unperfected stock transfer); Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP, supra.

### 4. No Avoidance Action is Required Because the Funds Which Are Subject to SJTC's Unperfected Security Interest in Accounts are Already in the Trustee's Possession, Over Which the Bankruptcy Court Has Jurisdiction

Contrary to SJTC's contentions, the commencement of an avoidance action is not required for the Trustee to prevail over SJTC regarding deposit accounts since the Trustee is already in possession of those account funds and does not need to avoid a transfer in order to recover those funds and bring them within the Court's jurisdiction. See, In the Matter of Meredosia Harbor & Fleeting Service, Inc., 545 F.2d 583, 590, fn 15 (7th Cir. 1976) ("Of course, the trustee was not required to file a formal complaint to initiate the avoidance of the preference since the property in question was already within the bankruptcy court's jurisdiction." ) Meredosia Harbor involved bank reclamation demands regarding two ships, which the bankruptcy referee had sold and was holding the proceeds. The bankruptcy referee denied the reclamation demands, allowed the banks' claims only as general unsecured claims, and noted that one of the banks' mortgages was a voidable preference. On appeal, the bank with the preferential mortgage argued that an avoidance action was time barred. The Seventh Circuit observed, as had the bankruptcy referee, that the statute of limitations "does not come into play when [the trustee] defends money in his hands from creditors whose claims would be preferential if successful." Id., at 590. The Seventh Circuit also noted that the trustee's defense to the reclamation demands was in the nature of recoupment and therefore not barred by the applicable statute of limitations. Id.

Moreover, the absence of an avoidance action does not have the effect of transforming SJTC's unperfected security interest in deposit accounts into a perfected lien. Further, the absence of an

avoidance action does not preclude the Trustee from obtaining a judicial determination that the estate has a lien in the deposit accounts superior to SJTC.

### 5. Even if Avoidance Actions Were Time Barred, Section 544 Rights May Be Asserted Defensively

Lastly, it is well settled that Section 544 rights may be asserted defensively even when an avoidance action under Section 544 is time-barred under Section 546(a) of the Bankruptcy Code. See City of Saint Paul v. Evans, 344 F.3d 1029, 1033 (9th Cir. 2003) (courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred); In re KF Dairies, Inc., 143 B.R. 734 (9th Cir. BAP 1992) (time-barred cause of action for avoidance of postpetition transfer may furnish grounds for claim objection).

### F. Equities Warrant Limiting SJTC's Cash Collateral Award

Although Section 552(b) of the Bankruptcy Code creates the possibility that certain categories of property acquired post-petition may be subject to a prepetition security agreement, Section 522(b) also affords the court power to curtail or terminate the security interest if it finds such action to be just considering the "equities of the case."

The principal purpose of Section 552(b) "is to prevent secured creditors from reaping unjust benefits from an increase in the value of collateral during a bankruptcy case resulting from the debtor's use of other assets of the estate, or from the investment of non-estate assets." In re Toso, 2007 WL 7540985 (9th Cir. BAP). In Toso, the Ninth Circuit Bankruptcy Appellate Panel explained the meaning of "equities of the case" as used in Section 552(b) and noted that four courts of appeal have assigned a nearly identical meaning to this provisions, including the following:

> [T]he equities of the case proviso is a legislative attempt to address those instances where expenditures of the estate enhance the value of proceeds which, if not adjusted, would lead to an unjust improvement of the secured party's position. In such cases, Congress intended for courts to limit the secured party's interest in the proceeds according to the equities of the case so as to avoid prejudicing the unsecured creditors.

Id., citing New Hampshire Bus. Dev. Corp. v. Cross Baking Co., Inc. (In re Cross Baking Co., Inc.), 818 F.2d 1027, 1033 (1st Cir. 1987), emphasis added.

16

The Fifth Circuit and Seventh Circuits have described the equity exception as follows:

> The equity exception is meant for the case where the trustee or debtor-in-possession uses other assets of the bankruptcy estate (assets that would otherwise go to the general creditors) to increase the value of the collateral.... The proceeds ... would be added to the secured creditor's collateral unless the court decided that it would be inequitable to do so—as well it might, since the general creditors were in effect responsible for much or all of the increase in the value of the proceeds over the original collateral.

In re Toso, citing In re J. Catton Farms, Inc., 779 F.2d 1242-1246-47 (7th Cir. 1985), citing In re Village Properties, Ltd., 723 F.2d 441, 444 (5th Cir. 1984) (approving limitation of secured creditor's pre-bankruptcy lien "where raw materials are converted into inventory at the expense of the estate (which would thus deplete the fund available for the general unsecured creditors)"); accord United Va. Bank v. Slab Fork Coal Co., 784 F.2d 1188, 1191 (4th Cir. 1986).

The situation with SJTC presents the very type of situation for which Congress intended the bankruptcy court to have power to act to avoid a windfall or unjust enrichment of a secured creditor at the expense of general creditors. Here, the Debtors operated the Property during the Chapter 11 and generated over $10 million in post-petition rents. SJTC seeks the entire post-petition rents as its cash collateral award. It seeks to reap all of the benefits of the post-petition operations, but without having to pay the attendant costs of operating and preserving the Property which allowed those post-petition rents to be generated. Instead, SJTC seeks to have the estate's unencumbered cash applied to all post-petition costs of operating SJTC's collateral until that unencumbered cash is exhausted. That is not equitable. Further, CIBC/SJTC received $1,812,070 in adequate protection payments during the Chapter 11 cases. SJTC ultimately obtained the Property at foreclosure by a $22.5 million credit bid, even though CIBC's appraiser valued the Property at $34.1 million in 2012. Equity demands that SJTC's cash collateral turnover be limited to the remaining cash less the amount of unencumbered cash on the Petition Date.

## III.  CONCLUSION

SJTC has failed to meet its heavy burden under Rule 59(e) for amendment of the Order, as there has been no showing of manifest error or manifest injustice, and no newly-discovered evidence or change in controlling law.

17

The Court should reject SJTC's argument that the Debtors were required to use and exhaust prepetition rents in order to fund post-petition operations, as it would result in a windfall to SJTC at the expense of other creditors of the estate. SJTC's theory is also unsupported by any law and inconsistent with the equitable rights of the estate to prevent such a windfall, i.e., the right to surcharge SJTC for post-petition operating expenses under Bankruptcy Code Section 506(c) and the right to seek adjustment of SJTC's post-petition cash collateral based on the equities of the case under Bankruptcy Code Section 552(b).

With the exception of SJTC's argument that its cash collateral should also include post-October 2013 rent collections, all of SJTC's arguments on reconsideration should be rejected:

- SJTC rehashes its tracing argument by erroneously asserting that the Court failed to consider its argument that the Debtors were required to use and exhaust prepetition rents for post-petition operations. SJTC's tracing argument was duly considered by this Court but was found deficient in legal authority and evidence for a determination on the merits. Those deficiencies have not been remedied by the Reconsideration Motion.

- SJTC's attempt to use a lowest account balance calculation to determine its cash collateral does not remedy those tracing argument deficiencies either, because SJTC relies solely on the Debtors' monthly operating reports, which contain errors and accounting irregularities which prevent an accurate depiction of the Debtors' cash at specific points in time.

- SJTC's argument that its unperfected security interest in the Debtors' deposit accounts entitle it to all of the remaining cash in the estate because avoidance actions are now time-barred is procedurally defective because it is raised for the first time on reconsideration but could have been raised in the Turnover Motion. Moreover, the deposit account lien argument is devoid of any substantive merit because (a) the Trustee automatically has the rights of a hypothetical judicial lien creditor and executing creditor by operation of law under Bankruptcy Code Section 544(a), (b) those Section 544(a) rights are superior to SJTC's admittedly unperfected security

18

interest in the deposit accounts, (c) there is no need for the Trustee to file an avoidance action against SJTC regarding the deposit accounts since the Trustee is already in possession of the deposit account funds; and (d) even if avoidance actions are time-barred, the law is well-settled that the Trustee may assert avoidance rights defensively, as he does in this case.

The Trustee believes that if the cash collateral award is to be increased to include post-October 2013 rents, the amended award should be limited to $459,183.21, which is the <u>actual</u> amount turned over to the Trustee from the debtor-in-possession accounts (i.e., $1,312,856.60) less the <u>actual</u> amount of cash held by the Debtors at the commencement of the case (i.e., $853,673.30). The $459,183.21 amount thus includes all actual rents collected by the Debtors after October 31, 2013.

DATED: March 26, 2014

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation


By:     /s/ Katherine D. Ray
        Attorneys for Fred S. Hjelmeset, Trustee

19