1 | ADAM A. LEWIS (BAR NO. 88736)
ALewis@mofo.com
2 | VINCENT J. NOVAK (BAR NO. 233003)
VNovak@mofo.com
3 | KRISTIN A. HIENSCH (BAR NO. 275676)
KHiensch@mofo.com
4 | MORRISON & FOERSTER LLP
425 Market Street
5 | San Francisco, California 94105-2482
Telephone: (415) 268-7000
6 | Facsimile: (415) 268-7522

Attorneys for Secured Creditor
SAN JOSE TOWERS CORP.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re:* | Case No. 11-58944-SLJ-11 |
| Community Towers I, LLC, a Delaware limited liability company, Employer Tax I.D. No.: 75-2456729, | Case No. 11-58945-SLJ-11 |
| Community Towers II, LLC, a Delaware limited liability company, Employer Tax I.D. No.: 75-2560662, | Case No. 11-58948-SLJ-11 |
| Community Towers III, LLC, a Delaware limited liability company, Employer Tax I.D. No.: 32-0065635, | Case No. 11-58949-SLJ-11 |
| Community Towers IV, LLC, a Delaware limited liability company, Employer Tax I.D. No.: 77-0379075, | Cases Jointly Administered |
| | Chapter 7 |
| Debtor(s). | SAN JOSE TOWERS CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF AWARD IN ORDER RE: TURNOVER OF CASH COLLATERAL |
| 111 W. Saint John Street, Suite 705 San Jose, California 95113 | |
| | Date: April 9, 2014
Time: 2:00 p.m.
Place: Honorable Stephen L. Johnson
280 S. First Street, Room 3099
San Jose, CA 95113 |

SAN JOSE TOWERS CORP'S REPLY RE
MOTION FOR RECONSIDERATION
sf-3401207

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii
I. PRELIMINARY STATEMENT ............................................................................................. 1
II. STANDARD ............................................................................................................................ 2
III. ARGUMENTS ......................................................................................................................... 4
    A. SJTC's Arguments 1 and 2 Are Supported by the Record ......................................... 4
    B. Reconsideration of the Court's Calculations is Proper ............................................... 6
    C. The Trustee is Not Entitled to Surcharge SJTC's Collateral ...................................... 7
    D. SJTC is Entitled to Post-October 2013 Rent Collections .......................................... 9
    E. SJTC's Security Interest Is Enforceable ................................................................... 10
    F. The Equities Favor SJTC .......................................................................................... 12
IV. CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

Page

*Brady v. Andrew (In re Commercial W. Fin. Corp.)*,
761 F.2d 1329 (9th Cir. 1985) .................................................................................................. 10

*Fisher v. Hamilton (In re Teknek, LLC)*,
343 B.R. 850 (Bankr. N.D. Ill. 2006) ......................................................................................... 6

*Gen. Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*,
739 F.2d 73 (2d Cir. 1984) ........................................................................................................ 9

*Golden v. Chi. Title Ins. Co.(In re Choo)*,
273 B.R. 608 (B.A.P. 9th Cir. 2002) .......................................................................................... 8

*HSBC Bank, USA, Nat'l Ass'n v. United Airlines, Inc. (In re UAL Corp.)*,
360 B.R. 780 (Bankr. N.D. Ill. 2007) ......................................................................................... 6

*In re Dowco Petroleum, Inc.*,
137 B.R. 207 (Bankr. E.D. Tex. 1992) ...................................................................................... 5

*In re Greco*,
113 B.R. 658 (D. Haw. 1990),
*aff'd sub nom. Greco v. Troy*, 952 F.2d 406 (9th Cir. 1991) ................................................ 3, 5

*In re Kanarkis*,
341 B.R. 33 (Bankr. S.D. Cal. 2006) ....................................................................................... 11

*In re Mouzon Enters., Inc.*,
610 F.3d 1329 (11th Cir. 2010) ............................................................................................... 11

*Lonely Maiden Prods., LLC v. Goldentree Asset Mgmt., L.P.*,
201 Cal. App. 4th 368 (2011) .................................................................................................. 10

*Matter of Meredosia Harbor & Fleeting Serv., Inc.*,
545 F.2d 583 (7th Cir. 1976) ................................................................................................... 10

*Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.)*,
278 F.3d 890 (9th Cir. 2002) ..................................................................................................... 8

*Robinson v. Wix Filtration Corp. LLC*,
599 F.3d 403 (4th Cir. 2010) ..................................................................................................... 3

*SK PM Corp., Inc. v. Sharp (In re SK Foods, L.P.)*,
2013 WL 6488275 (B.A.P. 9th Cir. 2013) .............................................................................. 10

*Toso v. Bank of Stockton (In re Toso)*,
2007 WL 7540985 (B.A.P. 9th Cir. 2007) .............................................................................. 12

*Venegas-Hernandez v. Sonolux Records*,
370 F.3d 183 (1st Cir. 2004) ..................................................................................................... 3

*Williams v. Poulos*,
11 F.3d 271 (1st Cir. 1993) ........................................................................................................ 6

**STATUTES**

11 U.S.C.
 § 502(d) .................................................................................................................. 11, 12
 § 506(c) ............................................................................................................ 7, 8, 9, 13
 § 544(a)(1) ................................................................................................................ 10, 11
 § 544(a)(3) ...................................................................................................................... 10
 § 550 .............................................................................................................................. 11
 § 552(b) .................................................................................................................. 12, 13

**OTHER AUTHORITIES**

Fed. R. Bankr. P.
 Rule 3007(a) ................................................................................................................ 11
 Rule 8002(b) .................................................................................................................. 2
 Rule 9014 ...................................................................................................................... 11
 Rule 9023 ........................................................................................................................ 1

Fed. R. Civ. P.
 Rule 59 ............................................................................................................................ 6
 Rule 59(e) .............................................................................................................. 1, 2, 3

Fed. R. Evid.
 Rule 1002 ........................................................................................................................ 9

LAWRENCE P. KING, COLLIER ON BANKRUPTCY (16th ed. 2014) at 9023.07 ................................ 2

Local Bankruptcy Rule 3007-1 ........................................................................................ 11

San Jose Towers Corp. ("SJTC"), successor-in-interest to the rights of CIBC Inc. ("CIBC") in connection with these cases, files this reply (this "Reply") in support of its *Motion for Reconsideration of Award in Order re: Turnover of Cash Collateral* (filed February 3, 2014, Dkt. No. 370) (the "Motion to Reconsider").[1] This Reply addresses the *Chapter 7 Trustee's Opposition to San Jose Towers Corp.'s Motion for Reconsideration of Order Granting in Part and Denying in Part Motion for Turnover of Cash Collateral* (filed March 26, 2014, Dkt No. 378) (the "Opposition").

## I. PRELIMINARY STATEMENT

By the Motion to Reconsider, SJTC sought reconsideration of this Court's *Order Granting in Part and Denying in Part Motion for Turnover of Cash Collateral* (entered January 21, 2014, Dkt. No. 360) (the "Order"), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, as incorporated by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Specifically, SJTC asked this Court to recalculate its award to SJTC of $377,992 in the Order based on manifest error of law or fact, and in order to avoid manifest injustice, on the grounds that (1) the Court did not rule on SJTC's argument that the Debtors' unencumbered cash should be presumed to have been spent first, (2) the Court did not rule on SJTC's argument that, at the very least, the Debtors' funds should be deemed spent in proportion to their respective shares of those funds, (3) the Court's award excluded certain additional funds, which were unknown at the time, that should have been deemed to be SJTC's cash collateral, and (4) SJTC's security interest, though unperfected, was no longer subject to avoidance.

In the Opposition, the Chapter 7 Trustee (the "Trustee") has urged this Court to deny the Motion to Reconsider on various grounds, advocating generically that the generalized interest in the finality of judgments outweighs any losses that SJTC may suffer as a result of the inadequate award. This appeal to finality plainly disregards the well-settled line of cases permitting a court to revisit its prior rulings whenever required in the interest of justice, and particularly where, as

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings given them in the Motion to Reconsider or the Opposition, as applicable.

SAN JOSE TOWERS CORP'S REPLY RE
MOTION FOR RECONSIDERATION
sf-3401207

1

here, there is a manifest error of fact or law that would prejudice a party's rights (not to mention that the Order is not yet final because of the filing of the Motion to Reconsider, per Bankruptcy Rule 8002(b)[2]).

As to SJTC's first two arguments above, the Trustee argued that the Court already "squarely addressed" the arguments and that there is insufficient evidence or law to support the arguments in any event. This is wrong for two reasons. First, there is ample support in the record for this Court to conclude that all of the Debtors' prepetition unencumbered funds were spent in the ordinary course of the Debtors' operations by as early as April 2013, and that all subsequent funds thus constituted SJTC's collateral. There is similar support for SJTC's proportionality argument. Second, the Court, by holding that it would not address the arguments, nevertheless *sub rosa* adopted the Trustee's (and Debtors') view.

The Trustee also contends, among other things, that the Court's various calculations should not be revisited, or if they are, that the Trustee's own calculations are more accurate than the Debtors' accounting reflected in the Debtors' monthly operating reports. However, as will be shown below, each of the Trustee's calculations either lacks support or otherwise second-guesses the Debtors' accounting in a way that conveniently benefits the Trustee. Furthermore, the Trustee makes various arguments about why he believes that SJTC's liens on the cash collateral should be invalidated. But, as shown below, these arguments must fail. SJTC thus urges this Court to reconsider its Order as set forth in the Motion to Reconsider.

## II. STANDARD

The Opposition makes much of the argument that Rule 59(e) is an "extraordinary remedy" to be granted only under "highly unusual circumstances," and that the generalized interest in finality of decisions should trump the losses that SJTC has suffered as a result of the calculation issues and other problems evident in the Order. (Opposition at 3-4.) To that end, the Opposition suggests that the relief SJTC has sought in the Motion to Reconsider would result in a "windfall

---

[2] *See also* LAWRENCE P. KING, COLLIER ON BANKRUPTCY (16th ed. 2014) at 9023.07 (a motion to reconsider "will suspend the finality of the judgment for the purposes of appeal").

or unjust benefit" for SJTC, contending that because CIBC, SJTC's predecessor, received adequate protection payments during the course of the bankruptcy case and foreclosed on property that CIBC valued at $34.1 million, SJTC has already received enough. But this line of argument turns a blind eye to the facts of this case.

The fact is that SJTC's claim against the Debtors' bankruptcy estate was for *at least* $39,883,466,[3] only $22.5 million of which was satisfied through SJTC's credit bid of its debt at the foreclosure sale of the Property, thereby leaving SJTC with a considerable deficiency claim. And even assuming that SJTC received additional value above and beyond the $22.5 million when it took title to the Property, and assuming that CIBC's prior appraisal of $34.1 million is still accurate (which remains to be seen and is entirely subject to market conditions), there nevertheless remains a considerable difference—potentially millions of dollars—between SJTC's claims and the value it has received. Moreover, the adequate protection payments were applied to debt or nondefault interest; they were not gifts. The argument that SJTC somehow would receive a "windfall" by receiving its due in additional cash collateral is specious at best.

In any event, the cases are clear that the interest in finality of judgments is to be "balance[d] . . . against ensuring a just decision." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 413 (4th Cir. 2010); *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 190 (1st Cir. 2004) (applying Rule 59(e)). Reconsideration of a prior order is appropriate to prevent "manifest injustice," which in this case means preventing SJTC from suffering hundreds of thousands of dollars in additional losses resulting from errors in the Order. *In re Greco*, 113 B.R. 658, 644 (D. Haw. 1990), *aff'd sub nom. Greco v. Troy*, 952 F.2d 406 (9th Cir. 1991). Reconsideration is thus clearly proper here.

---

[3] *See generally CIBC's Opposition to the Debtors' Brief in Support of Their Objection to Claim Nos. 4, 5, 6 and 7 (CIBC Inc.)* (filed October 30, 2013, Dkt. No. 328).

## III. ARGUMENTS

### A. SJTC's Arguments 1 and 2 Are Supported by the Record

The Trustee argues that the Court "squarely addressed" the "tracing argument" and expressly declined to rule on SJTC's contentions, due to a purported lack of supporting evidence and law, that (1) the Debtors' unencumbered cash should be presumed to have been spent first, and (2) at the very least, the Debtors' funds should be deemed to have been spent in proportion to their respective shares of those funds. This is insupportable.

Rather, by expressly declining to rule on SJTC's arguments, the Court actually (if unintentionally) implicitly adopted the contrary position—that the Debtors spent CIBC's money in the operation of their business *first* before resorting to unencumbered funds, an inequitable position for which there is no support. The Trustee has argued that this is the correct result, implying that SJTC has failed to satisfy its burden of "tracing" the encumbered and unencumbered funds in order to demonstrate which funds were spent when. This argument unnecessarily complicates the calculation before this Court, however.

Indeed, there is ample evidence in the record that all of the Debtors' original unencumbered cash should be deemed to be spent first, which the Court can conclude without conducting an unnecessarily complicated tracing analysis. The answer lies in the Debtors' Master Monthly Operating Reports ("MOR"). We know from the Debtors' December 2011 MOR (Dkt. No. 88) that the Debtors had spent $1,310,957 during the course of the cases through December 2011 (December 2011 MOR at 3, line item 3b, rightmost column). The evidence also shows that the Debtors had cash in accounts as of the petition date totaling $808,238 (October 2011 MOR, Dkt. No. 73 at 3, line 3d, rightmost column), which this Court ruled in the Order is unencumbered cash. Thus, the Debtors began the case with $808,238 and within three months had spent slightly more than that, $1,310,957. There is simply no evidentiary gap here—the evidence plainly demonstrates that, by December of 2011, the Debtors had spent at least an amount equal to the amount they had on the petition date.[4]

---

[4] Even if, as the Trustee contends, the Debtors instead had $853,673.39 in their accounts on the petition date rather than $808,238, or $807,474.48 as indicated in the Debtors' schedules
(Footnote continues on next page.)

SAN JOSE TOWERS CORP'S REPLY RE
MOTION FOR RECONSIDERATION

4

The Debtors previously argued that the cash collateral stipulation that the Debtors entered into with CIBC (Dkt. No. 56-1), which permitted the Debtors to use CIBC's cash collateral subject to various budgetary and other constraints, demonstrates that the cash the Debtors used in their operations actually consisted of CIBC's cash rather than their own. However, the stipulation very plainly provided that the Debtors were merely "authorized" to use CIBC's cash collateral—nowhere in the stipulation did it require the exhaustion of CIBC's cash collateral prior to spending unencumbered funds.[5] (*Id.* at 2.)

In light of this Court's ruling in the Order that the Debtors' prepetition funds were not subject to CIBC's (and now SJTC's) lien, however—and if the Court rejects SJTC's argument that it continues to have an enforceable lien on the prepetition funds as discussed in Section III.E., *infra*—then the only proper conclusion is that those unencumbered funds will have been used first prior to tapping into CIBC's cash. This is supported by simple logic, if nothing else; after all, the spent funds must be *someone's* (if indeed there is an unencumbered component), and equity dictates that the unencumbered funds must have been spent first. *See, e.g.*, *In re Dowco Petroleum, Inc.*, 137 B.R. 207, 210 (Bankr. E.D. Tex. 1992) ("If the estate contains enough unencumbered funds to satisfy administrative claims, no justification exists for priming a taxing entity's otherwise valid lien") (illustrating comparable principle codified in connection with tax liens). Any contrary result would be improper, and indeed neither the Trustee nor the Debtors have advanced any support, either in the form of case law or even persuasive reasoning, for another result. SJTC's proportionality argument is offered as an equitable compromise as an alternative, but that too is supported by ample evidence in the record. (*See* Motion to Reconsider at 4.)

---

(Footnote continued from previous page.)

(Opposition at 11), the outcome remains the same. This minor discrepancy, if indeed it is valid, does not change the calculus—all prepetition funds were spent by the end of the first year.

[5] In any event, CIBC took the position at that time that *all* of the Debtors' existing cash was subject to its lien. Had the Debtors contended that any cash existing at as of the petition date was unencumbered, CIBC surely would have made crystal clear that the Debtors were required to exhaust those funds first before using CIBC's cash.

SAN JOSE TOWERS CORP'S REPLY RE
MOTION FOR RECONSIDERATION
sf-3401207

5

Case: 11-58944   Doc# 379   Filed: 04/02/14   Entered: 04/02/14 17:34:56   Page 9 of 19

### B. Reconsideration of the Court's Calculations is Proper

In the Motion to Reconsider, SJTC demonstrated that the MOR for June of 2013 (Dkt. No. 295) shows a month-ending cash balance of $668,109 and that, notwithstanding the arguments stated above, this demonstrates with clarity the absolute maximum amount that could have constituted the Debtors' unencumbered funds.

The Trustee has advanced a number of arguments why this simple logic should be rejected. First, the Trustee asserts that this argument is somehow "new" and thus cannot be asserted under the circumstances. (Opposition at 7-8.) In so arguing, however, the Trustee is modifying a general principle that remains wholly subject to this Court's discretion. As noted in the Motion to Reconsider, a motion for reconsideration may indeed seek relief based upon evidence already in the record even if the moving party did not make that argument at trial. *See, e.g., HSBC Bank, USA, Nat'l Ass'n v. United Airlines, Inc. (In re UAL Corp.)*, 360 B.R. 780, 784 (Bankr. N.D. Ill. 2007); *Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 865 (Bankr. N.D. Ill. 2006). *See also Williams v. Poulos*, 11 F.3d 271, 289 (1st Cir. 1993) ("The decision to grant or deny a Rule 59 motion is committed to the wide discretion of the district court . . . . [T]his discretion attaches to a court's decision on whether to allow a party to argue new material or a new theory under Rule 59."). In any event, this is not a "new" argument—SJTC's original reply brief (filed December 18, 2013, Dkt. No. 347) (the "Turnover Reply") in support of its *Motion for Turnover of Cash Collateral and Accounting* (filed November 22, 213, Dkt. No. 334) (the "Turnover Motion") extensively discussed the question of how much unencumbered funds remained and when they had been spent. (*See* Turnover Reply at 3-4.)

Next, the Trustee has argued that the Debtors' MORs are unreliable because they conflict with calculations made by the Trustee's accountant. Specifically, the Trustee argued that the cash balance at the end of June 2013 was not $668,109, as represented to the Court by the Debtors in the June 2013 MOR. Instead, the Trustee argues, the ending cash balances in the Debtors' bank accounts purportedly totaled $926,738.35 at that time, and that the Debtors had improperly adjusted the accounts downward due to the issuance of outstanding, uncashed checks totaling $249,507.24. (Opposition at 8.) This attempt by the Trustee to second-guess the Debtors'

accounting decisions and to add back in the amounts represented by the uncashed checks is flawed, however, because the checks could have been cashed at any time and the funds represented by those checks were committed to the third-party recipients of those checks. The Debtors' MOR thus represented a more realistic picture of the Debtors' finances at the time.

The Trustee further argues that the amounts turned over to the Trustee from the Debtors upon conversion of the case totaled $1,312,856.60, which the Trustee argued is more accurate than the $1,338,730 appearing in the December 2013 MOR. This argument, too, is flawed. The December 2013 MOR serves as a reasonable reference point for purposes of this calculation (incidentally, a reference point close in time to the time of the issuance of the Order, entered December 13, 2013). By contrast, the Trustee has argued that the calculation of the turnover amount should be as of the time of *conversion* of the case, which occurred on January 24, 2014 (*see* Dkt. No. 364). The difference between the Trustee's figure and that reflected in the MOR is that the Trustee's figure reflects the subtraction of $32,699.99 in various fees and a check issued to the Debtors' management company, all deducted prior to the Debtors turning over the funds to the Trustee. (*See* Crom Decl. ¶ 4.) The Trustee's selection of an arbitrary date over a month after the issuance of the Order, after further expenditure of fees and expenses (all of which, notably, were paid from *SJTC's own cash collateral*), and long after the Debtors no longer had the right to use CIBC's cash collateral once it foreclosed on November 5, 2013, should not affect this Court's calculation. After all, what is to stop the Trustee from deducting even further expenses post-conversion incurred by the Trustee? Should the Trustee select a snapshot date as of, say, April 1, or May 1, when the amounts in the Trustee's bank accounts (containing SJTC's cash collateral) will surely be even lower then? SJTC submits that the proper date for purposes of this Court's calculation is the December MOR and not the date of conversion.

### C. The Trustee is Not Entitled to Surcharge SJTC's Collateral

The Trustee further argued that he may surcharge SJTC's collateral under section 506(c) for expenses incurred in operating and preserving the Property, arguing that the expenses incurred were reasonable, necessary, and benefited CIBC/SJTC. (Opposition at 9-10.) This argument too is meritless. First and foremost, CIBC (and, thus SJTC) has already effectively been surcharged

for the preservation and protection of the collateral throughout the case through the cash collateral stipulations with the Debtors (*see, e.g.*, Dkt. No. 56). Pursuant to the stipulations, CIBC agreed to permit the Debtors to use CIBC's cash collateral throughout the bankruptcy case, foregoing CIBC's bargained-for contractual interest rate and other benefits negotiated in the underlying loan documents. By this arrangement, CIBC and the Debtors agreed upon a way for the Debtors to remain in operation for the benefit of creditors generally, at significant cost to CIBC. In short, CIBC/SJTC itself already largely paid for the Debtors' operations through its cash collateral. To attempt to surcharge SJTC's collateral now would deprive it of the benefit of its bargain, and disregards any losses that CIBC may already have suffered while it permitted the Debtors to continue using its cash collateral.

Additionally, while SJTC certainly preferred that the Debtors maintain ordinary-course operations rather than delivering an empty building upon foreclosure, the expenses that the Debtors incurred in operating the business were certainly not for the *exclusive* benefit of CIBC— all of the creditor constituencies (and, indeed, the Debtors' insiders) benefited from the Debtors continuing to maintain operations and continuing to generate income. By the Trustee's logic, any time a debtor spends funds keeping its business afloat, each and every charge incurred in the course of its operations would arguably benefit a lender with a blanket lien on the business. The Trustee goes too far with this argument. In any event, it is clear that the case was not filed for the benefit of CIBC, but solely for the potential benefit of unsecured creditors (and the Debtors' equity holders). Furthermore, it is important to note that the Trustee has not moved for a surcharge under section 506(c), but simply argued that he *can*.

Finally, on the indisputable facts of these cases, it is clear that even were the estates to retain all of the prepetition funds, there will not be enough money even to pay the expenses of administration, which are and will be primarily professionals' fees in the chapter 7 and 11 phases of the cases. To recover under section 506(c), the Trustee must prove that the underlying costs were "incurred for the benefit of the secured creditor and be reasonable and necessary." *Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.)*, 278 F.3d 890, 893 (9th Cir. 2002). Moreover, the benefit to the secured creditor must be direct and quantifiable. *Golden v. Chi. Title Ins. Co.*

*(In re Choo)*, 273 B.R. 608, 611-13 (B.A.P. 9th Cir. 2002). Fees and costs of the Debtors' professionals (and of the Trustee's, for that matter) are not recoverable under section 506(c), particularly when they have been incurred at loggerheads with CIBC, and now SJTC, because they do not benefit such a secured creditor. *Gen. Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76-77 (2d Cir. 1984). Since the only parties that stand a chance of being paid in these cases are the expenses of administration of the professionals (and perhaps some other administrative expenses, if any, that the Trustee can show benefited CIBC/SJTC), it follows that the Trustee cannot use section 506(c) to surcharge SJTC's collateral.

### D. SJTC is Entitled to Post-October 2013 Rent Collections

As set forth in the Motion for Reconsideration, the Order mistakenly omitted from its calculation of SJTC's award cash flow arising from the Debtors' operations in November and December. Here the Trustee does not contest SJTC's theory—effectively conceding the point—but merely offers an alternate calculation of those figures. The Trustee first argues that the Debtors' cash at the petition date of $808,238, as reflected on the October 2011 MOR,[6] was actually $853,673.39 as purportedly reflected in the Debtors' bank statements. (*See* Crom Decl. ¶3.) However, the Trustee relies solely on an unsupported statement by his accountant, Jay Crom, who failed to attach to his declaration a copy of the referenced account statement for this Court's consideration and otherwise made no attempt to reconcile or explain the difference. Nowhere does Mr. Crom attempt to provide any further information about his calculation of the $853,673.39 other than ask this Court to take his word that this is what the "Debtors' bank statements confirm." (*Id.*)

To the extent that the Trustee expects this Court to adopt Mr. Crom's assertion of the Debtors' cash balance as of the Petition Date over what is reflected in the Debtors' MOR or schedules, which were filed before this Court, SJTC submits that Mr. Crom's assertion is objectionable under Rule 1002 of the Federal Rules of Evidence in that the best evidence of what

---

[6] The Trustee notes that the Debtors' Amended Schedule B reflected cash at the Petition Date of $807,474.48, a negligible difference.

the Debtors' account statements reflect is copies of the account statements themselves. As to the Trustee's reliance on the $1,312,856.60 figure in his calculations, *see* Section III.B. above.

Accordingly, taking into account the post-October 2013 rent collection, SJTC's award should be at least $530,492 ($1,338,730 less $808,238), and not $459,183.21 as the Trustee advocates (which is itself an admission that the $377,992 award was too low).

### E. SJTC's Security Interest Is Enforceable

The Trustee argues that CIBC's lien was unperfected prepetition, that the estate therefore has the power to avoid the lien under section 544(a)(1), and that it need not actually avoid the lien because its rights are superior without a judicial adjudication. (Opposition at 13:6-15:7.) Although the Trustee may be right about the first two propositions above, he is wrong about the third. Unperfected liens are voidable but not void *ab initio* under section 544(a)(1). *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1337-38 (9th Cir. 1985). The Trustee must therefore avoid the lien under section 544(a)(1). Moreover, to do this, he must file an adversary proceeding. *Id*. But he cannot do so because, as noted in the Motion to Reconsider, it is too late for him to bring an action under that Code provision.

The cases cited by the Trustee are not to the contrary. In *SK PM Corp., Inc. v. Sharp (In re SK Foods, L.P.)*, 2013 WL 6488275 (B.A.P. 9th Cir. 2013), an opinion that the issuing court expressly declared on its first page was not for publication and therefore had no precedential value, one of the very issues in the case was whether the stock transfer at issue was unperfected and therefore avoidable under section 544(a)(3). This is the polar opposite of asserting that an avoiding action is not required. Thus, even if it involved section 544(a)(1), it is inapplicable to the current issue. And *Lonely Maiden Prods., LLC v. Goldentree Asset Mgmt., L.P.*, 201 Cal. App. 4th 368 (2011), is a state court case addressing only state law. It does not discuss section 544(a)(1) and what procedures may be necessary to enforce the rights it grants at all.

In a related argument, the Trustee asserts based on *Matter of Meredosia Harbor & Fleeting Serv., Inc.*, 545 F.2d 583, 590 n.15 (7th Cir. 1976), that he does not have to bring an avoidance action because he already has the funds in this hands. (Opposition at 15:8-16:2.) But *Meredosia Harbor* is inapropos for two reasons. First, it is simply a case of the bankruptcy

trustee employing the predecessor of Code section 502(d) (*see infra*) as an affirmative defense to a proof of claim. Second, even if the case stood for what the Trustee claims, it should not be followed. As interpreted by the Trustee, it confuses the concepts of avoidance under section 544(a)(1) and recovery of an avoided transfer under Code section 550. Clearly, the Trustee need not *recover* property already in his possession, but he must still first *avoid* the transfer of the security interest in that property.

The Trustee contends that he can raise the alleged avoidability of the CIBC lien on the account as an affirmative defense even though the limitations period for an action under section 544(a)(1) has expired. This he can do, he says, because case law allows him to employ section 502(d) to disallow a claim on the grounds that CIBC and as successor, SJTC, have failed to return an avoidable transfer under section 544(a)(1). (Opposition at 16:3-10.) But the problem with that is that section 502(d) is a defense to the allowance of a claim, by its own terms. It expressly provides that when the creditor has failed to return an avoidable transfer, "the court shall *disallow*" that creditor's claim. (Emphasis added.)

But this is not a claim objection proceeding at which the allowance or disallowance of SJTC's claim is at issue. Such a proceeding is commenced by motion under Bankruptcy Rules 3007(a) and 9014, and Local Bankruptcy Rule 3007-1. *See, e.g.*, *In re Mouzon Enters.*, *Inc.*, 610 F.3d 1329, 1334 (11th Cir. 2010) (claim objection proceeding is contested matter under Rule 9014). And indeed, there is such a proceeding pending in these cases, but section 502(d) has not made any appearance in them. (*See* Dkt. Nos. 325, 329 (Debtors' claim objections and reply).)[7] Instead, the Motion to Reconsider is the outgrowth of *CIBC's Second Motion for Stay Relief* (filed February 19, 2013, Dkt. No. 258) (the "Stay Relief Motion"), the result of which the Turnover Motion sought to enforce. (*See, e.g.*, Dkt. No. 334-1 at 1:6-17 (describing genesis of

---

[7] In any case, an unavoidable lien rides through the bankruptcy. *See, e.g.*, *In re Kanarkis*, 341 B.R. 33, 35 (Bankr. S.D. Cal. 2006) (citing to *Dewsnup v. Timm,* 502 U.S. 410 (1992)). Here, SJTC's lien on the bank account is unavoidable because the Trustee cannot bring an action to avoid it now. Hence, SJTC's lien will survive even disallowance of its claim, the only effect of the latter being to prevent SJTC from sharing in the estate's unencumbered assets, something SJTC is not trying to do.

Turnover Motion as being the Debtors' refusal to turn over the cash collateral notwithstanding stay relief).) The Stay Relief Motion clearly sought stay relief with respect to the rents and profits and other cash held by the Debtors. (*See* Stay Relief Motion at 1:1-8.) The resulting order just as plainly granted that relief. (*See* Dkt. No. 267.) And once again, incidentally, section 502(d) did not arise in the Stay Relief Motion proceedings. (*See* Dkt. No. 264 (Debtors' opposition).) In short, section 502(d) simply is inapplicable to the present matter.

### F. The Equities Favor SJTC

Citing to *Toso v. Bank of Stockton (In re Toso)*, 2007 WL 7540985 (B.A.P. 9th Cir. 2007) and cases from the Fifth and Seventh Circuits, the Trustee argues that the "equities of the case" language of Code section 552(b) permits a court to deny a secured creditor the postpetition collateral section 552(b) otherwise created when awarding the collateral to a secured creditor would be a windfall for it at the expense of the unsecured creditors. (Opposition at 16:11-17:24.) The Trustee urges, "It [SJTC] seeks to reap all the benefits of the [Debtors'] post-petition operations, but without having to pay the attendant costs of operating and preserving the Property which allowed those post-petition rents to be generated." (Opposition at 17:16-18.) Accordingly, the Trustee concludes, the Court should limit SJTC's recovery of even post-petition rents.

There are two glaring weaknesses in this theory. The first is that given the financial circumstances of the estates, there is no chance that the unsecured creditors, whose interests the Trustee is purporting to protect with this argument, will see a penny. Already the expenses of administration of just the chapter 11 phase of the cases far exceed what is left in the estates without regard to the outcome of the Motion for Reconsideration. On top of that will be the Trustee's chapter 7 expenses of administration. The beneficiaries of this theory will not be the general unsecured creditors, but the expense of administration claimants alone. The second, even more profound infirmity with the Trustee's section 552(b) argument is its very premise: that assets that "belonged" to the unsecured creditors were used for the benefit of CIBC and SJTC. That is, of course, totally false. This Property was run on cash collateral stipulations with CIBC.

It was CIBC's collateral that was used to preserve and protect the Property.[8]  Indeed, if anything is inequitable, as SJTC has argued, it is finding that the Debtors used CIBC's cash collateral when they had their own unencumbered funds to use first.

## IV. CONCLUSION

Accordingly, SJTC respectfully requests that this Court overrule the Opposition and reconsider and correct the amount of cash collateral it awarded in the Order in accordance with the Motion to Reconsider.

Dated: April 2, 2014

ADAM A. LEWIS
VINCENT J. NOVAK
KRISTIN A. HIENSCH
MORRISON & FOERSTER LLP

By: /s/ Vincent J. Novak
VINCENT J. NOVAK

Attorneys for Secured Creditor
SAN JOSE TOWERS CORP.

---

[8] Implicit in a portion of the argument is the notion that SJTC has already more than recovered the amount of its claim so it is inequitable for SJTC to obtain the cash collateral that is otherwise its. (*See* Opposition at 17:19-24.)  But aside from the Trustee not having established the facts he asserts, this argument overlooks a fundamental reality.  Nothing in section 552(b) authorizes the Court to take away SJTC's property to do what it may see as equity.  As the Trustee's own authorities reflect, the Court's power under section 552(b) is limited to making the secured creditor pay for what benefited it at the expenses of general unsecured creditors (making section 552(b) somewhat akin to section 506(c) on surcharging collateral); and as SJTC has just shown, that concern is not present in these cases.

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 425 Market Street, San Francisco, California 94105-2482. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on April 2, 2014, I caused to be served a copy of:

**SAN JOSE TOWERS CORP.'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF AWARD IN ORDER RE: TURNOVER OF CASH COLLATERAL**

☒ **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. 5(b)]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure 5(b).

| **Chapter 7 Trustee**<br>Fred Hjelmeset<br><br>fhtrustee@gmail.com<br>CA90@ecfcbis.com | **United States Trustee**<br>**Office of the United States Trustee (SJ)**<br>Edwina E. Dowell<br><br>Edwina.e.dowell@usdoj.gov |
|---|---|
| **Counsel for Chapter 7 Trustee**<br>Daniel M. Linchey<br><br>dlinchey@gsdllaw.com, jrose@gsdllaw.com;<br>gsdlecf@gmail.com | **Attorneys for Debtors**<br>John Walshe Murray<br>Robert A. Franklin<br>Thomas T. Hwang<br><br>Robert A. Franklin:<br>Franklin.Robert@Dorsey.com,<br>bobf_94303@yahoo.com<br>Thomas T. Hwang:<br>Hwang.Thomas@Dorsey.com<br>John Walshe Murray:<br>murray.john@dorsey.com,<br>jwmurray@murraylaw.com,<br>johnwalshemurray@hotmail.com |

///

///

///

///

///

///

Certificate of Service

| | |
|---|---|
| 1 | ☒ **BY U.S. MAIL [Fed. Rule Civ. Proc. 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows, for collection and mailing at Morrison & Foerster LLP, 425 Market Street, San Francisco, California 94105-2482 in accordance with Morrison & Foerster LLP's ordinary business practices. I am readily familiar with Morrison & Foerster LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service, and know that in the ordinary course of Morrison & Foerster LLP's business practice the document(s) described above will be deposited with the United States Postal Service on the same date that it (they) is (are) placed at Morrison & Foerster LLP with postage thereon fully prepaid for collection and mailing. |

**Counsel for Debtors**
William L. Conti
Law Offices of William L. Conti
100 E. San Marcos Blvd #404
San Marcos, CA 92069

**Counsel for Debtors**
Eric Mogensen
Miller, Morton, Caillat and Nevis
50 W San Fernando St #1300
San Jose, CA 95113-2413

I declare under penalty of perjury that the above is true and correct.

Executed at San Francisco, California, April 2, 2014.

| John Kline | /s/ John Kline |
|---|---|
| (typed) | (signature) |