

The following constitutes
the order of the court. Signed May 20, 2014

_____
Stephen L. Johnson
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re: | Chapter 11 |
|---|---|
| COMMUNITY TOWERS, I, LLC., <br> COMMUNITY TOWERS, II, LLC., <br> COMMUNITY TOWERS, III, LLC., <br> COMMUNITY TOWERS, IV, LLC., <br><br> Debtors. | Jointly administered under <br> 11-58944 SLJ |

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TURNOVER OF CASH COLLATERAL[1]**

San Jose Towers Corporation ("SJTC"), successor to CIBC, Inc. ("CIBC"), the foreclosing lender on real estate owned by Community Towers I through IV ("Debtors"), has filed a motion for the turnover of approximately $1 million in Debtors' bank account (the "Rents and Profits"). SJTC contends this money is the remainder of its cash collateral but Debtors disagree. Debtors contend that CIBC did not have an enforceable security interest in the Rents and Profits. The matter came on for hearing on December 18, 2013. John Conti, Esq.

---

[1] This amended order revised the amount of the turnover from $377,992.00 to $459,183.21, for reasons set forth in the Order Granting in Part and Denying in Part Motion for Reconsideration, entered on April 29, 2014.

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-1-

represented Debtors, and Adam Lewis, Esq. represented SJTC. For the reasons noted below, the court finds that SJTC is entitled to the Rents and Profits generated post-petition but not those generated pre-petition.

## I. FACTUAL BACKGROUND[2]

### A. Status of Case and Property

This case involved an office building in downtown San Jose, California. Debtors sought to confirm a chapter 11 plan to refinance the real property but the court denied confirmation. Thereafter, the court granted the lender (then, CIBC), relief from the automatic stay to foreclose on the property. On November 5, 2013, CIBC assignee, movant SJTC, foreclosed on the property, making a credit bid of $22.5 million. Because the original loan balance was $33.5 million, SJTC has a substantial deficiency balance owing. Following the foreclosure sale SJTC requested through counsel that Debtors turn over approximately $1 million in cash collateral in three separate Debtor In Possession bank accounts. Debtors refused to return the portion of the funds consisting of prepetition rents because they claimed the funds were not SJTC's cash collateral. Debtors would agree to return approximately $377,992, which Debtors contend is the cash generated post-petition by Debtors' building operations, net of expenses.

### B. Loan Documents

On June 5, 2006, Debtors borrowed $33,500,000 from CIBC. They signed a promissory note with interest payments at LIBOR plus 2%, with a floor of 7%. On the same date, Debtors gave CIBC a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Deed of Trust"). The Deed of Trust conveyed to First American Title Insurance Company, as Trustee, for the benefit of CIBC, Debtors' interests in Community Towers, the leases, rents generated by the property, and all personalty. The Deed of Trust was recorded, which granted CIBC an assignment of Debtors' interests in the leases at Community Towers, as well as the rents generated by those leases.

---

[2] This discussion represents the court's findings of fact and conclusions of law within the meaning of Federal Rule of Bankruptcy Procedure 7052(a).

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-2-

The Deed of Trust provided CIBC a security interest in the rents generated by the property. It stated at part H that CIBC's security interest included "[A]ll rents, royalties, issues, profits, revenue, income, claims, judgments, awards, settlements and other benefits (collectively, the "Rents and Profits") of the Real Estate Improvements … and all cash, securities, deposited to secure performance by the tenants, lessees, subtenants, sublessees or licensees, as applicable…." (emphasis added).

The Debtors' right to collect and use the Rents and Profits was addressed in § 1.9 of the Deed of Trust: It stated:

> Borrower hereby absolutely and presently assigns to Lender all existing and future Leases and future Rents and Profits. Borrower hereby grants to Lender the sole, exclusive and immediately right, without taking possession of the Property, to demand, collect (by suit or otherwise), receive and give valid and sufficient receipts for any and all Rents and Profits, for which purpose Borrower does irrevocably make, constitute and appoint Lender as its attorney-in-fact with full power to appoint substitutes …
>
> However, until the occurrence of an Event of Default under this Deed of Trust, Borrower shall have a license to collect and receive the Rents and Profits when due and prepayments thereof for not more than one month prior to the due date thereof. Upon the occurrence of an Event of Default, Borrower's license shall automatically terminate without notice to Borrower and Lender may thereafter, without taking possession of the Property, collect the Rents and Profits itself, by agent or receiver. From the termination of such license, Borrower shall be agent of Lender in collection of the Rents and Profits and all of the Rents and Profits so collected by Borrower shall be held in trust by Borrower for the sole and exclusive benefit of Lender and Borrower shall, within one (1) business day after receipt of any Rents and Profits, pay the same to Lender to be applied by Lender as hereinafter set forth.

(emphasis added).

"Events of Default" were defined at Article II of the Deed of Trust and included the failure to make payments on the promissory note when they came due. (§ 2.1(a)).

No one disputes that the Deed of Trust was properly recorded, nor that CIBC (and its successor SJTC) had a first-priority lien on Debtors' real and personal property, including rents received from tenants. No one disputes that the money in Debtors' accounts was generated

from lease revenue of the property pre-foreclosure, net of expenses.[3] Finally, no one seriously disputes that the cash generated by Debtors' property pre- and post-petition qualifies as "Rents and Profits" under the Deed of Trust, and that the "Rents and Profits" would—all things being equal—ordinarily constitute "cash collateral" within the meaning of 11 U.S.C. § 363(a).[4]

C. Circumstances of Default

Because of the law in this area, it is useful to understand the circumstances surrounding Debtors' default under the loan documents. The loan underlying this dispute matured without payment in 2011. On September 1, 2011, CIBC filed a Notice of Default and Election to Sell under Deed of Trust. On September 26, 2011, Debtors filed a voluntary petition commencing this chapter 11 proceeding. On September 30, 2011, CIBC filed in the bankruptcy case CIBC's Rents and Profits Notice, claiming a "duly-perfected, first priority interest in the rents, issues and profits, and the proceeds and product thereof" and further asserting that the rents were its cash collateral within the meaning of 11 U.S.C. §§ 363 and 552.

## II. THE PARTIES' LEGAL ARGUMENTS

A. SJTC

SJTC takes a purist approach to this case. It contends that any money held in Debtors' accounts is subject to its lien and should be turned over because (1) it held a valid, perfected lien on the Rents and Profits, (2) Debtors defaulted by failing to make payments due and, (3) it filed the Notice of Default.

B. Debtors

Debtors contend that SJTC has a security interest only in the net rents generated while the Debtors were in a chapter 11 proceeding, which they calculate at $377,992. Debtors

---

[3] The court entered several orders on Debtors' requests for use of cash collateral over the life of the case. These orders established budgets with projected income and expenses for Debtors' operations of the property. So far as the court can determine, no dispute exists about compliance with those orders.

[4] All section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless stated otherwise.

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-4-

contend that any Rents and Profits on hand at the time of the bankruptcy filing on September 26, 2011, are not subject to SJTC's lien. Debtors maintain they were entitled to collect and spend the Rents and Profits under the Deed of Trust prior to the bankruptcy filing. They argue that when a deed of trust permits a borrower to collect and spend rents this way in advance of a default, that if a default occurs, the lender must take an "enforcement step" to terminate the borrower's right to the funds. Debtors contend that after they defaulted on the loan, CIBC did not declare a default and did not take any enforcement steps. Instead, CIBC's only action after default was to file its Notice of Default. Debtors conclude that CIBC failed to enforce its rights and that Debtors' retain the right to the residual Rents and Profits collected prepetition.

### III. DISCUSSION

#### A. California Law Controls this Dispute

The question of whether CIBC/SJTC has an interest in the rents collected prepetition is governed by the law of California. *Butner v. United States,* 440 U.S. 48, 52 (1979). Decisions of the state's highest court with respect to state law are binding on federal courts. *Erie R. Co. v. Tompkins¸* 304 U.S. 64 (1938); *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n. 7 (9th Cir. 2000). Federal courts are required to give deference to state court interpretations of state law not only because interpreting state law is not a core function of the federal courts but because federal courts lack authority to rewrite or reinterpret state law. *BMW of N. Am., Inc., v. Gore*, 517 U.S. 559, 577 (1983)("only state courts may authoritatively construe state statutes."). If a decision from the state's highest court is not available, the "federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft,* 989 F.2d 1105, 1108 (9th Cir.1993). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237 (1940).

B. The Deed of Trust and Assignment of Rents Defines the Parties' Rights

Under California law, the parties are entitled to agree in advance regarding the terms of any assignment of income from a property. *Kinnison v. Guar. Liquidating Corp.,* 18 Cal. 2d 256, 261-62 (1941)("Our decisions have indicated … that the parties to a mortgage or deed of trust may contract respecting the right to rentals and that such agreements will be enforced in accordance with the expressed intention of the parties."). The express terms of the Deed of Trust here assigned the Rents and Profits generated by the property to CIBC, as its collateral, and permitted Debtors to collect and use those funds up to the point of a default. At the point of default, Debtors' right to use the funds terminated automatically. Because Debtors' rights terminated automatically at default, CIBC was not obliged or required to give any notice, written or otherwise, to Debtors pursuant to the Deed of Trust.

C. California Civil Code § 2938

California Civil Code § 2938 is entitled "Assignment of rents; recordation; enforcement; demand; cash proceeds; application of section." Comprehensive in scope, the statute addresses the creation of a lien on rents, the perfection of that lien, and the means of collecting rents in the event of default.

Subsection (a) states, in material part:

> <u>A written assignment of an interest in leases, rents, issues, or profits of real property</u> made in connection with an obligation secured by real property, irrespective of whether the assignment is denoted as absolute, conditioned upon default, additional security for an obligation, or otherwise, <u>shall, upon execution and delivery by the assignor, be effective to create a present security interest in existing and future leases, rents, issues, or profits of that real property</u>.

(emphasis added).

Subsection (b) states that when an assignment of rents is duly recorded, the interest granted by the assignment is deemed fully perfected at the time of recordation, "notwithstanding a provision of the assignment or a provision of law that would otherwise preclude or defer enforcement of the rights granted the assignee under the assignment until the occurrence of a subsequent event, including, but not limited to, a subsequent default of the

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-6-

assignor, or the assignee's obtaining possession of the real property or the appointment of a receiver."

Subsection (c) states, in material part:

<u>Upon default of the assignor</u> under the obligation secured by the assignment of leases, rents, issues, and profits, <u>the assignee shall be entitled to enforce the assignment in accordance with the terms of this section. On and after the date the assignee takes one or more of the enforcement steps described in this subdivision, the assignee shall be entitled to collect and receive all rents, issues, and profits that have accrued but remain unpaid</u> and uncollected by the assignor or its agent or for the assignor's benefit on that date, and all rents, issues, and profits that accrue on or after that date. The assignment shall be enforced by one of the following:

(1) The appointment of a receiver.
(2) Obtaining possession of the rents, issues, or profits.
(3) [Delivery of a written demand to tenants to pay the assignee directly].
(4) [Delivery to the assignor of a written demand to pay over rents and profits].

Cal.Civ.Code. § 2938(a)-(c) (emphasis added).

D.  <u>CIBC/SJTC has a security interest in the Rents and Profits</u>

Debtors argue that CIBC does not have any interest in the prepetition rents because Debtors had the right to collect and receive rents until a default was declared under the Deed of Trust and CIBC did not make a demand for rents under Civil Code § 2938(c). This argument ignores § 2938(a) and (b). Pursuant to § 2938(a), a written assignment of rents, "upon execution and delivery by the assignor," is effective "to create a present security interest in existing and future rents." Cal. Civ. Code § 2938(a). And, under subsection (b), the assignment of rents is deemed perfected at the time of recordation. Cal. Civ. Code § 2938(b).

The Deed of Trust here was executed on June 2, 2006, and recorded on June 6, 2006, with the Santa Clara County Recorder. Accordingly, the Deed of Trust created a present security interest in all existing and future rents which was perfected as of June 6, 2006, in favor of CIBC.

When Debtors filed their bankruptcy petitions on September 26, 2011, any Rents and Profits collected by Debtors and held in bank accounts were cash collateral of CIBC. *See* 11 U.S.C. § 363(a); *In re Scottsdale Med. Pavilion*, 159 B.R. 295, 298 (B.A.P. 9th Cir. 1993)("if

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-7-

[creditor] has any legally cognizable interest in the funds at issue they are cash collateral. To constitute cash collateral, it is not necessary that [creditor] show it is entitled to immediate possession of the funds or that the interest is perfected."). In other words, whether CIBC exercised its enforcement rights under § 2938(c) does not impact its interest in the rents under § 2938(a), and by extension, under 11 U.S.C. § 363(a).

Debtors' argument at the hearing that the Rents and Profits became "cash" upon receipt by Debtors and CIBC had no security interest in "cash" and "bank accounts" was rejected by the BAP in *Scottsdale Med. Pavilion*. In that case, the debtor made a similar argument that once the rents were deposited in debtor's bank account, they no longer constituted rents covered by the assignment. The BAP addressed this argument as follow: "That argument is unpersuasive. All 'rents' are converted into a different form upon payment. For example, a rent payment represented by a check becomes an "instrument," but is nonetheless covered by a security interest in the rent. If the debtor's argument were accepted, then all assignments of rents would be illusory, as the funds would no longer be rents once paid. We therefore conclude that because all the funds in the account are directly attributable to rents they are rents within the scope of the assignment of rents provisions." *Scottsdale Med. Pavilion,* 159 B.R. at 298.

Therefore, CIBC/STJC has a security interest in all rents collected by Debtors.

E.     CIBC/SJTC's Security Interest was Inchoate

The analysis does not end here, however. The court must address Debtors' argument that CIBC must take an "enforcement step" order to collect or "receive" the rents, which is an argument based on California Civil Code § 2938 and decisions of the state courts.

Before beginning a discussion of California law, it is important to note that as a general matter, perfection of a security interest and enforcement of that interest, at least as far as rents are concerned, are two different things. Perfection is "a concept involving the relative interests of the lien-holder and an intervening third party. It does not deal with the relationship between the debtor and the secured party, or between the secured party and the collateral property." *In re Park at Dash Point L.P.*, 121 B.R. 850, 853 (Bankr. W.D. Wash. 1990). On the other hand, "[t]he relationship between the timing of enforcement, and the specific rents to which the

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-8-

mortgagee is entitled, has engendered the description of security interests in rents as either 'choate' or 'inchoate.' Functionally, these designations have depended on whether a security interest in rents had been enforced by one of the permitted enforcement mechanisms (possession or the appointment of a receiver); the interest was termed "inchoate" if it was as yet unenforced, and therefore the mortgagee's interest in the rents remained prospective, not yet having risen to the level of the actual right to collect the rents. The mortgagor is entitled to any rents paid while the assignment remains unenforced, or 'inchoate.'" *Id.,* at 855 (citations omitted). To summarize, *perfection* provides a security interest holder with protection against an intervening third party whereas *enforcement* of an assignment of rents makes that interest choate and enables the actual right by the lender to collect the rents. *In re GOCO Realty Fund I*, 151 B.R. 241, 248 (Bankr. N.D. Cal. 1993)(emphasis added).

      Prior to the enactment of § 2938, California cases consistently held that even when an assignment is absolute, an affirmative enforcement step must be taken upon default for the lender to take possession of the rents. *Mortgage Guarantee Co. v. Sampsell,* 51 Cal. App. 2d 180, 187–89 (1942); *Title Guarantee & Trust Co. v. Monson,* 11 Cal. 2d 621, 627 (1938); *Bank of America v. Bank of Amador County,* 135 Cal. App. 714, 721 (1933). As the *GOCO Realty Fund I* court noted, "[n]o California court has interpreted an absolute assignment of rents to be self-executing with respect to enforcement upon default by the borrower." *GOCO Realty Fund I*, 151 B.R. at 248.

      The current version of § 2938, which has been in effect since 1997, clearly contemplates the necessity of an enforcement step.[5] In *Fed. Nat'l Mortgage Assoc. v. Bugna*, 57 Cal.App.4th 529 (1997), Federal National Mortgage Association ("FNMA") lent money to Bugna to finance real property. FNMA took a security interest in the rents and profits generated by the property under a trust deed. The trust deed assigned the rents to FNMA "absolutely and unconditionally" but authorized Bugna to "collect and receive all rents and revenues of the

---

[5] The former version of § 2938 appeared to have eliminated the need for an enforcement step but judicial interpretation is inconsistent on this point. *Compare MDFC Loan Corp.*, 21 Cal.App.4th 1045 (1994) *and Fed. Nat'l Mortgage Assoc. v. Bugna*, 57 Cal.App.4th 529 (1997)

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-9-

Property" so long as Bugna was in compliance with the loan documents. Upon "written notice" by FNMA in the event of default, Bugna's right to collect and receive rents terminated and FNMA was entitled to the rents. Bugna defaulted but FNMA stipulated it never made a written demand on Bugna regarding the rents. *See Id.*, at 534 n. 2. Later, Bugna transferred the property to his wife for no consideration. After creditors filed an involuntary chapter 7 petition against Bugna, the trustee obtained a judgment nullifying the transfer, thereby revesting the property in the bankruptcy estate. The bankruptcy trustee then took control of the property and collected the rents. Subsequently, the trustee abandoned the property, and FNMA caused a state court receiver to be appointed. The trustee transferred the rents collected to the receiver, and the property was eventually foreclosed, when FNMA obtained the property by a credit bid. FNMA then moved in state court for an order directing the receiver to turn over all the rents he received, including the amounts from the trustee, to cover the deficiency. Bugna objected, contending that FNMA's failure to make a "written demand" as required by the trust deed meant it was not entitled to the rents.

The Court of Appeal agreed with Bugna for two reasons. It found that FNMA failed to comply with the express terms of the deed of trust by failing to make a written demand. It also determined that under the former version of Civil Code § 2938, a lender must take an "enforcement step" to maintain its interest in rents. The Court of Appeal determined that an assignment of rents permits a creditor to collect rents accruing after "but not before a creditor has made demand for those rents." Id., at 538.

Because the trust deed in *Bugna* was executed in 1986, the court of appeal was analyzing the former version of Civil Code §2938 applied. *See* Cal.Civ.Code § 2938(i)(the new version of § 2938 applies to contracts entered into on or after January 1, 1997). However, the court referenced the new version of § 2938 and commented that the analysis would have been the same under the new version of § 2938. *Id.*, at 538 fn 6.

Commentators support this interpretation. *See* Miller & Starr, CALIFORNIA REAL ESTATE (3d ed. 2013), Deeds of Trust and Mortgages, § 10:60 ("the mere recordation of the assignment does not give the beneficiary any right to recover rents until the trustor is in default

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-10-

and the beneficiary has taken some action to enforce the security interest. Prior to an act of enforcement, the trustor is entitled to collect and retain the rents."); The Rutter Group, CALIFORNIA PRACTICE GUIDE: REAL PROPERTY TRANSACTIONS (2013), § 6:433.5 ("The assignee's right to collect the assigned rents is *conditioned* on its taking one of the statutory enforcement steps. Notwithstanding 'perfection' of the assignment, postdefault rents collected *before* the assignee (lender) takes one of the enforcement steps belong to the *borrower* (assignor)." (emphasis in original)); Note, FNMA v. Bugna: California Assignment of Rents Provision and the Impact of the Bankruptcy Reform Act of 1994, 31 LOYOLA OF LOS ANGELES L. REV. 1454, 1486 (1998)("New section 2938 eliminated any ambiguities that existed in prior statutes by definitively stating that an assignment of rents does not entitle lenders to rents collected after default but before demand.").

Given the unambiguous language in § 2938 and California common law, *e.g. Title Guarantee & Trust Co. v. Monson,* 11 Cal. 2d 621, the court is not convinced that the California Supreme Court would interpret § 2938 differently from *Bugna.* This court must follow the reasoning in *Bugna*.

Courts in other states with similar statutes have likewise held that a perfected security interest may be inchoate as to the rents at issue because the secured party did not take some affirmative enforcement step as required by statute. *See, e.g. In re Johnson*, 62 B.R. 24 (B.A.P. 9th Cir. 1986)(Washington law); *Investors Syndicate v. Smith*, 105 F.2d 611 (9th Cir. 1939)(Oregon law).

Turning to the facts of this case, there is no dispute that CIBC duly recorded the Deed of Trust. The recordation perfected CIBC's security interest in the Rents and Profits, which gave CIBC the right to enforce its interest in the Rents and Profits upon default. Pursuant to the Deed of Trust, that right arose when Debtors failed to make payments when due. Nonetheless, pursuant to *Bugna*, CIBC had no rights to any specific Rents and Profits until it initiated one of the enforcement actions provided by § 2938(c) after an event of default occurred. Regardless of when the default occurred, the specific amount of Rents and Profits CIBC was entitled to receive began accruing only when it initiated an enforcement action.

Despite the occurrence of default, CIBC did not take any enforcement action as described in § 2938(c). The Notice of Default, recorded on September 1, 2011, did not demand any Rents and Profits. At the hearing, SJTC asserted that the enforcement action it took was to file a Rents and Profits Notice in the bankruptcy case on September 30, 2011, but it was unable to take any of the enumerated enforcement action in § 2938(c) without violating the automatic stay.[6] By implication, CIBC/SJTC admitted that it did not undertake any of the enforcement steps in § 2938(c) prior to the bankruptcy filing. SJTC argued that once enforcement has been taken, it is entitled to all the Rents and Profits in Debtors' accounts, even those collected prior to the act of enforcement. However, as the above authorities show, a creditor may only make demand of rents prospectively. SJTC also did not argue that § 2938 is inapplicable. Thus, CIBC/SJTC's interest in the prepetition Rents and Profits was inchoate and it is not entitled to them.

F. <u>Section 552 of the Bankruptcy Code is Irrelevant to Prepetition Rents</u>

Section 552(b)(2) provides an exception to the general rule of § 552(a) that prepetition liens do not cover property of the estate acquired postpetition. It provides that if a prepetition security agreement includes security interest in rents, then such security interest extends to rents generated postpetition to the extent provided in the security agreement, except the court, based on the equities of the case, orders otherwise. 11 U.S.C. § 552(b)(2).

SJTC argues that § 552(b)(2) supports its view that its security interest extends to the "Cash Collateral." This argument is not persuasive for several reasons. First, cash collateral is bankruptcy-specific term defined by 11 U.S.C. § 363(a) and does not distinguish between prepetition and postpetition rents. As the court discussed above, CIBC does have a security interest in prepetition rents. Second, § 552(b)(2) addresses postpetition rents only, and it is irrelevant to determine CIBC's interest in the prepetition rents. Third, and most important,

---

[6] The court makes no determination whether the Rents and Profits Notice satisfies Civil Code § 2938 because Debtors concede that SJTC is entitled to the postpetition rents.

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-12-

Case: 11-58944   Doc# 383   Filed: 05/20/14   Entered: 05/21/14 11:30:09   Page 12 of 15

Debtors do not dispute that CIBC/SJTC is entitled to the postpetition rents, net of expenses, making any analysis of § 552(b)(2) unnecessary.

### G. Sources of Cash Used by Debtors in the Case

SJTC's last argument is that the court should find that the cash collateral used by Debtors for operations under Chapter 11 consists of the prepetition rents and Debtors' unencumbered cash first, before deducting such expenses from the postpetition rents for which Debtors agree belong to SJTC.

The parties did not provide the court with any evidence or much law to make this determination. In effect, this argument raises the issue of tracing and would require evidence as to the amounts of Debtors' unencumbered cash, amounts of the total rents collected by Debtors postpetition, as well as tracing the source of Debtors' use of cash during Chapter 11 operations. Given the lack of evidence and law on this point, the court makes no determination on the issue.

### H. The Court does not Find Reason to Alter SJTC's Security Interest

Both parties contended that the equities of this case merit an adjustment of SJTC's lien on the Rents and Profits. The court has considered these arguments and does not find any basis for adjusting the lien pursuant to § 552(b)(1). This case involved a typical dispute between a lender and a building owner and no facts support a conclusion that the lien ought to be adjusted based on "the equities of the case."

## IV. CONCLUSION

For the foregoing reasons, court finds that SJTC is entitled to $459,183.21[7], representing the balance of postpetition rents net expenses, and Debtors/Trustee shall turnover this amount to SJTC within fourteen (14) days from the entry of this order.

The motion is denied as to prepetition Rents and Profits.

---

[7] *See* Order Granting in Part and Denying in Part Motion for Reconsideration, entered on April 29, 2014, for the calculation of the amount.

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-13-

1         To the extent SJTC disputes the amount of expenses deducted from the postpetition
2 rents, it may contact the courtroom deputy to schedule a status conference, at which time the
3 court will consider setting a briefing schedule and/or evidentiary hearing.
4         IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

**COURT SERVICE LIST**

[ECF Recipients]

AMENDED ORDER RE MOTION FOR TURNOVER OF CASH COLLATERAL
-15-