STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Administrative Creditor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| | Cases Jointly Administered |
| **COMMUNITY TOWERS I, LLC,** <br> A Delaware Limited Liability Company, <br> Employer Tax I.D. No. 75-2456729, | Case No. 11-58944-SLJ-7 |
| **COMMUNITY TOWERS II, LLC,** <br> A Delaware Limited Liability Company, <br> Employer Tax I.D. No. 75-2560662, | Case No. 11-58945-SLJ-7 |
| **COMMUNITY TOWERS III, LLC,** <br> A Delaware Limited Liability Company, <br> Employer Tax I.D. No. 32-0065635, | Case No. 11-58948-SLJ-7 |
| **COMMUNITY TOWERS IV, LLC,** <br> A Delaware Limited Liability Company, <br> Employer Tax I.D. No. 77-0379075, | Case No. 11-58949-SLJ-7 |
| Debtor(s). <br> 111 W. Saint John Street, Suite 705 <br> San Jose, California 95113 | Date: November 19, 2014 <br> Time: 2:00 p.m. <br> Place: United States Bankruptcy Court <br> 280 S. First Street, Room 3099 <br> San Jose, CA 95113 <br> Judge: Honorable Stephen L. Johnson |

## RESPONSE TO OBJECTION FILED BY DEBTORS TO FEE APPLICATIONS OF MURRAY & MURRAY AND DORSEY & WHITNEY

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

1

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 1 of 11

Dorsey & Whitney LLP ("Dorsey") filed its FIRST AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTORS (the "Dorsey Application") on August 21, 2014. Murray & Murray ("Murray") filed its THIRD AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEYS FOR DEBTORS (the "Murray Application") on August 21, 2014. On November 12, 2014, the Debtors[1] filed their DEBTORS' OBJECTION TO FEE APPLICATIONS BY MURRAY & MURRAY AND DORSEY & WHITNEY (the "Objection") in which the Debtors seek, among other things, disallowance of all of Murray's fees and costs incurred over those payments already made to Murray and all Dorsey's fees and costs incurred in the Chapter 11 Cases. The Objection is without merit.

## I. WAIVER OF ATTORNEY CLIENT PRIVILEGE

Both Dorsey's and Murray's engagement letters provide for the Debtors' waiver of the attorney client privilege in the event of an objection filed by the Debtors to any application for compensation filed by Dorsey and Murray. The applicable provision of the Murray engagement letter provides as follows:

> This will also confirm that the Company authorizes Murray & Murray to produce any writing or communication regarding Murray & Murray's representation of the Company, or any attorneys' fees and costs incurred relating thereto, to the Bankruptcy Court, the Office of the United States Trustee, any trustee appointed in the bankruptcy cases, and any committees appointed in the bankruptcy cases, and to the extent that any such writing or communication may be subject to the attorney-client or other privilege, the Company waives such privilege. This waiver shall inure solely to the benefit of Murray & Murray and no other party; i.e., no other party shall have the right to claim that the privilege has been waived, and such privilege shall continue to exist relative to all other parties.

The Dorsey engagement letter contains similar language. In addition, Murray and Dorsey have obtained a waiver of the privilege for such matters from the Trustee, the current holder of the privilege.

///

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them as in the Application.

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

2

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 2 of 11

## II. STATUS OF CASES

### A. November 19 Hearings

There are two matters set for hearing on November 19: (1) the MOTION FOR COMPROMISE OF CONTROVERSY (the "Compromise Motion") filed by the Chapter 7 trustee appointed in these cases (the "Trustee") and (2) the Fee Applications.

#### 1. Compromise of Controversy.

Pursuant to the Compromise Motion the Trustee seeks approval of a settlement entered into with Murray, Dorsey and the Law Offices of William Conti ("Conti") (collectively the "Released Parties") which releases certain claims asserted by the Trustee in exchange for subordination of any fees awarded to the Released Parties. Based on the information available, Dorsey estimates a distribution of approximately 68% of any fees awarded by the Court.

#### 2. The Fee Applications

The Dorsey Application seeks final approval and payment of Dorsey's fees and expenses incurred in these Chapter 11 cases from January 14, 2013, through January 24, 2014, in the amounts of $241,752.75 and $1,912.90, respectively. The Murray Application seeks final approval of all of its fees and costs incurred in the Chapter 11 Cases and payment of Murray's fees in the sum of $557,946.40 (comprised of $35,941.00 in fees, $1,957.17 in expense reimbursement, and the outstanding unpaid interim award of $520,048.23).

Conti filed a fee application on May 29, 2014, in these cases requesting approval of fees and expenses in the amounts of $166,532.00 and $10,739.51, respectively, and payment of those amounts from the "cash assets" held by the Debtors.[2] The Law Offices of Eric Mogensen filed a fee application on August 6, 2014, requesting approval of fees and expenses in the amount of $131,675.00.

/ / /

/ / /

---

[2] Mr. Conti chose to not disclose to the Court that he held $100,000 paid by Mr. Feece and held in Conti's trust account for the services he was to render to the estate. In Conti's employment application, he disclosed the retainer and represented that such retainer "is not, and shall not become, an obligation of the Debtors".

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

3

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944   Doc# 413   Filed: 11/17/14   Entered: 11/17/14 14:10:55   Page 3 of 11

## III. THE OBJECTION IS WITHOUT MERIT.

### 1. Murray & Murray

The Debtors seek a blanket denial of all of Murray's fees essentially because they were dissatisfied with the results. They first complain that John Murray told them to refuse pre-petition settlement offers from CIBC[3] and that Mr. Murray assured them a better deal in bankruptcy court. This is patently untrue. Messrs. Feece and Mogensen conducted the negotiations and reported to Mr. Murray that CIBC was negotiating in bad faith and that the offers were unacceptable. Based on the Debtors' representations that the value of the Debtors' real property, which was essentially their single asset in these cases (the "<u>Property</u>"), was at least $50 million with at least a $10 million equity cushion, Mr. Murray advised the Debtors that they had a good probability of success in the bankruptcy court[4]. However, the appraisal ultimately supplied by the Debtors valued the Property at $40 million. No assurances of success were given, and Mr. Murray discussed with the Debtors the cost/benefit/risk analysis of a bankruptcy filing as opposed to an acceptance of CIBC's final offer.

The Debtors next complain that despite Mr. Murray's assurances the Court refused Mr. Feece's request to be paid $40,000 from cash collateral to cover his living expenses. Again, when the request was presented to Mr. Murray, it was based on a $50 million Property value for which Mr. Feece ultimately could provide no support. Mr. Feece was advised of the potential that the request may be denied.

The Debtors also assert that $100,000 of the retainer paid to Murray was to be used for special litigation counsel to file a lender liability suit. While Mr. Murray doesn't specifically recall this, in any event, despite Murray's continuous advice and encouragement to seek such counsel, the Debtors never identified, and to Murray's knowledge, never searched for, such litigation counsel.

The Debtors then complain that they were never informed of the necessity of a "Till

---

[3] Capitalized terms not separately defined herein have the meanings ascribed to them in the Dorsey Application.

[4] The dichotomy between what the Debtors represented was the value of the Property and what the appraisals of CIBC and the Debtors reflected was a theme throughout the cases and was an immensely significant hurdle which Murray and Dorsey were tasked with surmounting. Thus, regardless of whether the issues were "straightforward" as the Debtors evidently now believe to be the case [Objection p. 12:6-7], this fact alone required substantial, ongoing in-depth legal and factual analysis and argument, in addition to creativity.

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

4

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 4 of 11

Analysis" until "just prior to the Confirmation hearing in October, 2012." This is simply false. The interest rate for the rewritten loan was always a critical component to the cases and was discussed thoroughly with the Debtors from the beginning of the Chapter 11 Cases. Murray identified a number of potential experts and presented them to the Debtors. These experts reviewed the Debtors' projections and expressed a variety of views and quoted various compensation rates. It was from among these candidates that the Debtors retained the expert in June 2012. The expert reported that he was having difficulty obtaining information from the Debtors necessary to complete his report. This is consistent with Murray's and Dorsey's experience.

The Debtors describe a meeting in October 2012. While Murray doesn't recall the date, during this meeting, Mr. Murray discussed the issues of the cases and the evidentiary problems with the cases, prompting Mr. Feece and Mr. Mogensen to suggest various alternatives, all to which Mr. Murray explained would not work. In frustration, Mr. Feece then yelled at Mr. Murray, "what's your solution Kemosabe!" to which Mr. Murray responded in kind. At the end of the meeting, Mr. Feece apologized for the incident.

While the trial ultimately did not result in a favorable decision for the Debtors[5], it was not for any lack of preparedness, skill and advocacy of Murray. The Debtors' expert was seriously undermined by testimony of the Debtors' witnesses, some of which was contradictory to their declarations submitted under direct testimony. In reviewing the Court's decision, the cases were not decided on the basis of the Till formula; it was a matter of credibility of the Debtors' projections which were severely undermined by testimony from the Debtors' leasing agent and Mr. Feece, such that the Court found that the plan was not feasible. Indeed, the Court complimented counsel on their preparation and presentation of the case.

The Debtors' closing argument was professionally delivered. Murray prepared an exhaustive post-trial brief addressing all the issues. Indeed, the Court ultimately determined for purposes of the confirmation trial that the CIBC debt was $37 million, thereby eliminating $7 million in default

---

[5] However, as noted below, the Court did eliminate $7 million of default interest from CIBC's claim for purposes of the confirmation trial.

interest[6]. Again, the Court expressed its appreciation for counsel's performance and written briefs

**2.     Dorsey**

On January 13, 2014, attorneys John Murray, Robert Franklin and Thomas Hwang, among other Murray attorneys, moved to Dorsey.  The Debtors complain that they were not apprised of this move and its impact on the cases.  There was no impact on the cases.  The final argument was completed, and the parties were awaiting the decision of the Court.  Dorsey was willing to continue representation of the Debtors and did represent the Debtors ably and ethically, without assurance of the payment of any of its fees going forward.  On January 25, 2013, the Court entered its order denying confirmation of the Plan (the "<u>Confirmation Denial Order</u>").  The Confirmation Denial Order also found that, for purposes of confirmation, CIBC was not entitled to default interest on its claims in these bankruptcy cases, and estimated such claims at $37,234,279.20.

The Debtors complain that Mr. Murray wouldn't take Mr. Feece's calls and provided no suggestions on how to proceed following the issuance of the Confirmation Denial Order.  Given the tension between Mr. Feece and Mr. Murray, it was decided that Mr. Franklin should take the lead although Mr. Murray continued to remain active in the cases.  Mr. Franklin responded to all of the contacts from the Debtors and discussed alternatives.  These alternatives included seeking additional time to pursue refinance and sale opportunities pursuant to which the Debtors would satisfy CIBC's allowed secured claim through a sale or a debt/equity transaction.  Dorsey was assured on numerous occasions throughout its engagement that such financing and sale opportunities were being pursued and that at various times the Debtors were "close" to receiving a term sheet, first for debt financing and then for equity financing.  However, none of these opportunities ever materialized, and, to Dorsey's knowledge, at no time was the Property put up for sale.

Shortly after the Confirmation Denial Order was entered, on February 19, 2013, CIBC filed its SECOND MOTION FOR STAY RELIEF requesting that the Court lift the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(3) so that it may "proceed with its rights and remedies as a secured creditor of the Debtors."  In response, Dorsey prepared and filed the Debtors' opposition to CIBC's

---

[6] The Objection falsely claims that "[n]othing was done to establish the amount of the CIBC debt at or prior to the hearing." [Objection p. 12:13-14].

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

6

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 6 of 11

request for stay relief contending, *inter alia*, that sec. 362(d)(3) was inapplicable as the Debtors had fully complied with the statute and that there was no "cause" to lift the automatic stay because CIBC remained adequately protected by an equity cushion of at least $4 million as the value of the Subject Property continued to increase.[7]

As part of the strategy to gain more time for the Debtors and in part because of CIBC's contentions that the Debtors could not propose a confirmable plan, had no prospect of reorganization, and were not diligently prosecuting the Chapter 11 cases, and based on, among other things, the valuation of CIBC's claim in the Confirmation Denial Order, the Debtors' belief that the Property had increased in value and the Debtors' representations of discussions with and interest received from potential lenders and equity investors, Dorsey prepared and filed the DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION (DATED MARCH 4, 2013).

As a result of Dorsey's efforts, the Court entered its order on March 5, 2013, granting CIBC's motion, but also granting a six month stay conditioned on payment of increased adequate protection payments, to allow the Debtors more time to reach a solution. The Court expressed its hope in no uncertain terms that the Debtors would use the time to pursue refinancing or sale opportunities and discouraged any further attempts to confirm a plan.

In June 2013, the Debtors informed Dorsey that they wanted to retain Mr. Conti as special litigation counsel to pursue confirmation of a plan. Mr. Feece paid Mr. Conti a $100,000 retainer which Mr. Conti represented to the Court in his employment application would not become an obligation of the Debtors. The Debtors also complain that Dorsey did not properly support litigation counsel and left him to his own devices.[8] Nothing could be further from the truth.

Recognizing that the Debtors had waited almost two months to make this decision and that there was insufficient time to confirm a plan that would surely be hotly contested by CIBC, Dorsey conferred extensively with the Debtors and their professionals regarding the Debtors' options and

---

[7] Despite their insistence that the Property's value had increased significantly, the Debtors' appraisal showed a value of $42 million.

[8] The Debtors also complain that Mr. Conti became "lead counsel" due to a lack of support from Mr. Murray. Not so. The Debtors specifically hired Mr. Conti as litigation counsel. Recognizing the Court's admonishment to avoid duplication of services, Dorsey deferred to Mr. Conti on litigation matters while providing all necessary support and assistance and all necessary input and expertise with respect to bankruptcy issues.

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

7

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 7 of 11

the information and evidence necessary to support an extension of the automatic stay, and responded to the Debtors' questions and concepts regarding potential scenarios and paths to effect a successful reorganization. Ultimately, the Debtors decided to file their motion to extend the automatic stay (the "<u>Motion to Extend Stay</u>"). As set forth more fully in the Dorsey Application, Dorsey engaged in extensive discussions with Mr. Conti to advise him on case-specific facts and the bankruptcy-related issues. Due to the complexity and number of such bankruptcy issues, Dorsey provided substantial input in the preparation of the Motion to Extend Stay and all related pleadings.

Notably, the Motion to Extend Stay was necessarily intertwined with the Debtors' proposed DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION (DATED AUGUST 16, 2013) (THE "<u>Second Amended Plan</u>"), which Dorsey prepared and through a Herculean effort filed prior to the hearing on the Motion to Extend Stay. Dorsey engaged in comprehensive analysis of factual and legal issues in order to demonstrate that the Debtors' Second Amended Plan was feasible and achievable based on then-current operations and recent performance history, therefore supporting extension of the stay. Dorsey also reviewed and collected evidence, including communicating with the Debtors' real estate appraiser, to support the Motion to Extend Stay. In addition to the Motion to Extend Stay, Dorsey contributed and filed on behalf of the Debtors, four (4) supporting declarations, a notice of hearing and a reply to CIBC's opposition.

Debtors also complain that Dorsey did nothing to advance the objection to CIBC's claim. Not so. As set forth more fully in the Dorsey Application, Dorsey conferred extensively with the Debtors and their professionals, drafted and assisted (with respect to bankruptcy-related matters) with drafting various pleadings related to CIBC's motion to dismiss the Debtors' objection, communicated with CIBC's counsel, prepared legal memoranda and appeared at three hearings. The Court determined that, in light of the Confirmation Denial Order and SJTC's foreclosure of the Property, the objection was moot and unnecessary to any bankruptcy issue remaining in the Chapter 11 Cases.

As was the case during the period in which Murray represented the Debtors, Dorsey and Mr. Conti were hampered by the Debtors' failure to timely provide evidence for their assertions, resulting in many late nights in preparing documents and increased fees.

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

8

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 8 of 11

As a result of the foreclosure, among other reasons, on December 16, 2013, the United States Trustee filed its MOTION BY UNITED STATES TRUSTEE TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 (the "Conversion Motion") which the Debtors opposed. After hearing on January 22, 2014, the Court granted the Conversion Motion, converting the Debtors' cases to cases proceeding under chapter 7.

The Debtors next complain that it was only through Conti's efforts that the Debtors retained possession of funds which were the subject of the SJTC's Turnover Motion. The evidence produced by the Debtors does not support this allegation. In fact, the Debtors produced a "redacted" version of an email string identified as Exhibit 6 of the Mr. Conti's Declaration submitted in support of the Objection. One redacted portion in an email on December 10, 2013, consists of Mr. Murray's responses to Mr. Mogensen's apparent comment that the Debtors would not pursue these funds unless there was some "net benefit" to Mr. Feece. Italicized below is the redacted language.

> Eric,
>
> *As counsel for the Chapter 11 debtors, our firm represents the bankruptcy estate. See In re Perez, attached. As such and as explained in our engagement letter, we do not represent Mr. Feece, a non-debtor, in his personal capacity*
>
> *This bankruptcy estate has a number of unpaid creditors including pre-petition unsecured creditors and administrative expense creditors (your firm and mine).*
>
> *It is the duty and responsibility of the Debtors, and John Feece as their responsible individual representative, to take those actions necessary and appropriate to protect the interests of all parties in interest in the case. We trust that Mr. Feece will be supportive of the Debtors' efforts relative to the remaining cash collateral issues.*
>
> We have provided an analysis of the bankruptcy issues (also attached) and understand that you and/or Bill Conti believe that state law may afford a legal basis to support a contention that CIBC is not entitled to the cash collateral. We have inquired of Mr. Conti as to whether he will be filing a brief in opposition to CIBC's turnover motion, but have not received a response. Please advise.

Murray Declaration, Exhibit "A".

A second redacted portion in an email on November 22, 2013, consists of Mr. Mogensen's

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

9

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944   Doc# 413   Filed: 11/17/14   Entered: 11/17/14 14:10:55   Page 9 of 11

request that Dorsey and Murray forgo collection of their fees and costs incurred in the bankruptcy cases in order to maximize the return to Mr. Feece, personally.

> Bob/John:
>
> I spoke with Bill regarding the claims on the DIP account. In Bob's e-mail correspondence to me, he had indicated in his opinion, CIBC was entitled to the DIP account. If that's the case, there would be no assets remaining in the bankruptcy estate, and no further claims could be made. My understanding is that Bob also indicated to Bill at one point that there was no intention for Murray & Murray and/or Dorsey to attempt to collect any remaining fees beyond the substantial retainer which was originally paid.
>
> *We believe that we may have some arguments which would convince CIBC to relinquish at least some of its claim against the DIP account. While certainly nothing is certain in this regard, I believe that if John relinquishes any claims and agrees not to pursue certain courses of action which could prolong this and process (including, potentially, rescinding the foreclosure sale and forcing CIBC to go through that process again), CIBC may agree that it's had enough of this and will allow some of the DIP account to be retained. If that occurs, it could provide some limited dollars to John Feece, personally, to attempt to pay at least some of the substantial tax liability which he may be subject to as a result of the foreclosure sale. If, however, any recovery ends up being claimed by the Murray and/or Dorsey law firm for claimed fees, I'm not sure it makes any sense to contest it, particularly in light of your opinion that CIBC's claim to the DIP account is valid.*
>
> *Before expending additional sums on trying to obtain some of the DIP account for John Feece's benefit, we'd like your assurance that the Murray firm and/or the Dorsey firm will not simply seek to take any recovery we may be able to acquire to satisfy any fees it/they may claim in excess of the retainer already paid and collected. Please let me know prior to anybody expending additional time and money in this regard. I'd appreciate you letting me know promptly.*

Murray Declaration, Exhibit "A".

In any event, Dorsey assisted Mr. Conti and, at his request, reviewed the Debtors' brief in opposition to the Turnover Motion, provided its edits, input, and suggestions, and finalized and filed the opposition brief.

Finally, the Debtors complain that Mr. Murray's performance at oral argument of the Conversion Motion was half-hearted and apologetic. Not so. The argument was made in a professional manner and was consistent with Dorsey's duty to the estates.

/ / /

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

10

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 10 of 11

## IV. REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence as incorporated in these proceedings by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Murray and Dorsey hereby request that the Court take judicial notice of the docket entries, papers filed and proceedings conducted in these cases.

## V. CONCLUSION

For the foregoing reasons, the Objection should be overruled.

Dated: November 17, 2014	**DORSEY & WHITNEY LLP**

By: */s/ Robert A. Franklin*
Robert A. Franklin
Attorneys for Dorsey & Whitney LLP and
specially appearing for Murray & Murray

RAF:sb
H:\Client Matters\- F&R\CommTowers\Pld\Fees\Final\Resp\App v3.docx

11

RESPONSE TO OBJECTION FILED BY DEBTORS
TO FEE APPLICATIONS OF MURRAY & MURRAY
AND DORSEY & WHITNEY

Case: 11-58944    Doc# 413    Filed: 11/17/14    Entered: 11/17/14 14:10:55    Page 11 of 11